UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| ANTOINE RICHARD, DARRELL RICHARD, CHRIS MECHE, DERBY DOUCET, SR., KEVIN RABEAUX, and MARK LOUVIERE, individually and on behalf of all similarly situated individuals,<br><br>     Plaintiffs,<br><br>VERSUS<br><br>FLOWERS FOODS, INC.; FLOWERS BAKING COMPANY OF LAFAYETTE, LLC; FLOWERS BAKING COMPANY OF BATON ROUGE, LLC; FLOWERS BAKING COMPANY OF ALEXANDRIA, LLC; FLOWERS BAKING COMPANY OF NEW ORLEANS, LLC; and FLOWERS BAKING COMPANY OF TYLER, LLC,<br><br>     Defendants. | CIVIL ACTION NO. 15-cv-2557<br><br>DISTRICT JUDGE S. MAURICE HICKS<br><br>MAGISTRATE JUDGE CAROL B. WHITEHURST |

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR
APPROVAL OF PROPOSED PRE-CERTIFICATION COMMUNICATIONS
<u>TO PUTATIVE CLASS AND COLLECTIVE ACTION MEMBERS</u>

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................... i

I. BACKGROUND AND THE PROPOSED COMMUNICATIONS ........................................ 1

   A. About The Parties ............................................................................................................ 1

   B. The Flowers Bakeries Are Offering Voluntary Proposed Amendments to Distributor Agreements .................................................................................................... 2

   C. The Flowers Bakeries Intend To Communicate the Voluntary Amendments Along With Detailed Notice And Disclosure To Distributors Regarding The Potential Consequences Of Accepting The Amendment ................................................................. 3

II. THE COURT SHOULD APPROVE THE PROPOSED COMMUNICATIONS TO PUTATIVE CLASS MEMBERS ............................................................................................. 5

   A. Court Approval Is Not Necessary .................................................................................... 5

   B. The FAA Encourages The Arbitration of Disputes, Even If The Arbitration Agreement Is Executed After The Start Of Litigation ..................................................... 6

   C. Courts Routinely Approve Communications to Putative Class Members Regarding the Implementation of Arbitration Agreements and Class Waivers ................ 8

   D. The Proposed Communications Should Be Approved By the Court ............................. 10

III. CONCLUSION ................................................................................................................... 11

**TABLE OF AUTHORITIES**

**CASES**                                                                                                                              **PAGES**

*Alford v. Dean Witter Reynolds, Inc.*,
   939 F.2d 229 (5th Cir. 1999) ...............................................................................................7

*Almon v. Higbee Co.*,
   No. 07-7063, 2008 WL 79956 (E.D. La. Jan. 4, 2008)............................................................10

*Brown v. Mustang Sally's Spirits & Grill, Inc.*,
   No. 12–CV–529S, 2012 WL 4764585 (W.D.N.Y. Oct. 5, 2012).............................................5

*Carey v. 24 Hour Fitness USA, Inc.*,
   No. CIV.A. H-10-3009, 2012 WL 4754726 (S.D. Tex. Oct. 4, 2012) .....................................5

*Carson v. Higbee Co.*,
   149 Fed. Appx. 289 (5th Cir. 2005).........................................................................................7

*Carter v. Countrywide Credit Indus., Inc.*,
   189 F. Supp. 2d 606 (N.D. Tex. 2002), *dismissed on appeal*, 57 F. App'x 212
   (5th Cir. 2003)..........................................................................................................................6

*Circuit City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001).................................................................................................................7

*Conners v. Gusano's Chicago Style Pizzeria*,
   779 F.3d 835 (8th Cir. 2015) ................................................................................................8, 9

*Doctor's Associates, Inc. v. Casarotto*,
   517 U.S. 681 (1996)...............................................................................................................10

*Garcia v. TWC Admin., LLC*,
   No. SA:14-CV-985-DAE, 2015 WL 1737932 (W.D. Tex. Apr. 16, 2015).............................5

*Gilmer v. Johnston/Interstate Lane Corp.*,
   500 U.S. 20 (1991)...................................................................................................................6

*Green v. Plantation of La., LLC*,
   No. CIV. 2:10-0364, 2012 WL 4829328 (W.D. La. Sept. 17, 2012) .........................7, 8, 9, 10

*Gulf Oil v. Bernard*,
   452 U.S. 89 (1981)...................................................................................................................5

*Jimenez v. Menzies Aviation, Inc.*,
   No. 15-cv-2392, 2015 WL 4914727 (N.D. Cal. Aug. 17, 2015) .............................................3

*Jones v. Judge Tech. Services, Inc.*,
   2014 WL 3887733 (E.D. Penn. Aug. 7, 2014) ........................................................................3

*LaChapelle v. Owens–Illinois, Inc.*,
    513 F.2d 286 (5th Cir.1975) ..................................................................................................6

*Marino v. Dillards, Inc.*,
    413 F.3d 530 (5th Cir. 2005) ................................................................................................7

*May v. Higbee Co.*,
    372 F.3d 757 (5th Cir. 2004) ................................................................................................7

*Morisky v. Public Serv. Elec. & Gas Co.*,
    191 F.R.D 419 (D.N.J. 2000)................................................................................................5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)...............................................................................................................6, 7

*Palmer v. Priority Healthcare, Inc.*,
    No. 3:13CV480TSL-JMR, 2013 WL 5771662 (S.D. Miss. Oct. 24, 2013) ..............................6

*Primerica Life Ins. Co. v. Brown*,
    304 F.3d 469 (5th Cir. 2002) ................................................................................................7

*Ross v. S.W. La. Hosp. Ass'n*,
    No. 2:12-CV-1250, 2013 WL 1818331 (W.D. La. Apr. 29, 2013) ..........................................5

*Shearson/American Express, Inc. v. McMahon*,
    482 U.S. 220 (1987)..............................................................................................................7

*Slavinski v. Columbia Ass'n*,
    No. CCB-08-890, 2011 WL 1310256 (D. Md. Mar. 30, 2011) ..............................................5

*Southland Corp. v. Keating*,
    465 U.S. 1 (1984)..................................................................................................................7

*Spence v. Irving Holdings, Inc.*,
    No. 3:10-CV-142, 2010 WL 5609023 (N.D. Tex. Dec. 15, 2010) ..........................................5

*Stevenson v. Great Am. Dream, Inc.*,
    2014 WL 3519184 (N.D. Ga. July 15, 2014).........................................................................8

*Terrebonne v. K–Sea Transp. Corp.*,
    477 F.3d 271 (5th Cir. 2007) ................................................................................................7

*Truitt v. DirecTV, Inc.*,
    No. 08-3782, 2008 WL 5054570 (E.D. La. Nov. 21, 2008) ..................................................10

*Turkmen v. Ashcroft*,
    No. 02-CV-2307 (JG), 2010 WL 3398965 (E.D.N.Y. June 30, 2010) ....................................6

*Vallone v. CNA Fin. Corp.*,
   No. 98-C-7108, 2002 WL 1726524 (N.D. Ill. Mar. 19, 2002) ..................................................5

*Walton v. Rose Mobile Homes*,
   LLC. 298 F.3d 470 (5th Cir. 2002) .......................................................................................10

## **STATUTES**

Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ..............................................................................6, 7

Fair Labor Standards Act, 29 U.S.C. § 16(b)..........................................................................6, 7, 9

## **OTHER AUTHORITIES**

ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 07-445 ..............................................6

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR
APPROVAL OF PROPOSED PRE-CERTIFICATION COMMUNICATIONS
TO PUTATIVE CLASS AND COLLECTIVE ACTION MEMBERS**

Prior to the commencement of this action, Defendants, Flowers Baking. Co. of Baton Rouge, LLC, Flowers Baking Co. of New Orleans, LLC and Flowers Baking Co. of Tyler, LLC (collectively "Flowers Bakeries") planned to offer their independent contractor Distributors, on a voluntary basis, a proposed amendment to their Distributor Agreements. The proposed amendment offers Distributors additional incentives and a mutual and streamlined alternative dispute resolution process.  Similarly, the Flowers Bakeries are implementing a new Distributor Agreement for future Distributors containing like provisions, which will not apply to existing Distributors or current putative plaintiffs in this action. Although the Flowers Bakeries believe they are free to engage in appropriate communications with their Distributors and prospective Distributors, out of an abundance of caution the Flowers Bakeries move this Court for approval—to the extent the Court determines approval is necessary—prior to offering the amendment to putative class members in this action. The Flowers Bakeries' proposed communications are appropriate, non-coercive, and candid.  Accordingly, the Flowers Bakeries respectfully request that the Court approve their proposed communications with putative class members.[1]

I.   **BACKGROUND AND THE PROPOSED COMMUNICATIONS**

  A.   **About The Parties**

Plaintiffs entered into Distributor Agreements with certain of the Flowers Bakeries to serve as Distributors for various baked goods and related products. (Compl. ¶¶ 1, 17.) The

---

[1]  Defendant Flowers Foods, Inc. joins in this motion.  However, Flowers Foods is not a party to the Distributor Agreements and will not be engaged in any communications with the Distributors regarding the Notice or proposed Amendment.

1

Distributor Agreements define the Plaintiffs' relationships with the Flowers Bakeries as that of independent contractors. (Compl. ¶¶ 12, 17.)  Plaintiffs allege that they were misclassified as independent contractors under federal law. (Compl. ¶¶ 17, 52.)  Plaintiffs seek to assert their claims on behalf of "all individuals who, through a contract with Defendants or otherwise, distribute or distributed for Defendants under agreements with [the Flowers Bakeries] or any other affiliates or subsidiaries of Flowers Foods, Inc. which employ distributors working within the state of Louisiana; and who were classified by Defendants as "independent contractors[.]" (Compl. ¶ 17.)

### B. The Flowers Bakeries Are Offering Voluntary Proposed Amendments to Distributor Agreements

Prior to the filing of the Complaint, the Flowers Bakeries were planning to offer a proposed amendment to their Distributor Agreements to all of their Distributors (the "Amendment").[2]  The Flowers Bakeries desire to move forward and offer the Amendment to their Distributors, and each Distributor is free to accept or reject the proposed Amendment.  If a Distributor accepts the offer, the Amendment provides the Distributor with incentives, including lowering the transfer fees to be paid in the event the Distributor sells his or her business, and the removal or revision of various other existing contractual covenants. (Exh. A, Amendment at 1-3.)  In addition, if the Amendment is accepted, the parties would be required to arbitrate any disputes between them on an individual basis and participation in any class, collective, or representative proceedings would be prohibited. (*Id.*)

As noted above, the proposed Amendment is voluntary. If a Distributor rejects the Amendment, the Distributor continues operating under the terms of its existing distributor

---

[2] A copy of the proposed Amendment to Distributor Agreement, along with its incorporated Arbitration Agreement, is attached hereto as **Exhibit A**.

agreement. Further, even after executing the Amendment, a Distributor may revoke the Amendment by giving written notice within seven (7) days of execution. (Exh. A, at ¶ 16.)[3]

### C. The Flowers Bakeries Intend To Communicate the Voluntary Amendments Along With Detailed Notice And Disclosure To Distributors Regarding The Potential Consequences Of Accepting The Amendment

At the same time the Amendment is offered, the Flowers Bakeries intend to provide their Distributors (including putative class members in this action) with a written explanation of the Amendment (the "Notice").[4] The Flowers Bakeries will issue the Notice and proposed Amendment by e-mail and/or regular mail.

In addition to providing an overview of the terms and conditions of the Amendment, the Notice will state that there are pending lawsuits (including the present action) in which plaintiffs are seeking to have the cases certified as a class or collective action, that the Distributor may be a putative class member in such action(s), and that signing the Amendment may waive or affect the Distributor's rights to participate in such action(s). The Notice also outlines the arbitration procedure and the consequences of executing the Amendment, and it further provides the following safeguards and disclosures:

1. Revocation period/procedure:

**If you sign the Amendment but then change your mind, you may revoke the Amendment by sending a written notice of your decision to revoke the**

---

[3] The Flowers Bakeries intend to include like arbitration provisions in their Distributor Agreement for potential *new* Distributors going forward. Because prospective Distributors are not members of the putative class and have no present right to participate in this action, approval of communications with potential new Distributors is not required. *See*, *e.g., Jimenez v. Menzies Aviation, Inc.*, No. 15-cv-2392, 2015 WL 4914727, at *6 (N.D. Cal. Aug. 17, 2015) (noting that the court's holding regarding communications with putative class members "does not affect the enforceability of the [arbitration agreement] as to new employees who are not class members"); *Jones v. Judge Tech. Services, Inc.*, 2014 WL 3887733, at *7 (E.D. Penn. Aug. 7, 2014) (similar).

[4] Copies of the proposed Notices from each of the Flowers Bakeries are attached hereto as **Exhibit B** *in globo.*

3

**Amendment to the Company's Human Resources Director within 7 days of your signing the Amendment.**

      2.      Reference to pending litigation:

**THESE CASES NOW INCLUDE, FOR EXAMPLE, *MORROW V. FLOWERS FOODS, ET AL.*, CASE NO. 3:07-CV-00617-MHT-TFM, WHICH IS PENDING IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA; AND *RICHARD V. FLOWERS FOODS, INC., ET AL.*, CASE NO. 6:15-CV-02557-SMH-CBW, WHICH IS PENDING IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF LOUISIANA.**

      3.      Description of the claims and defenses raised in this action:

**In *Richard*, a group of distributors in Louisiana has sued the Company and its affiliates on behalf of other distributors in Louisiana, alleging violations of the Fair Labor Standards Act and the Louisiana Wage Payment Act, La. Rev. Stat. 23:631, *et seq.*. There, the plaintiffs contend that distributors have been improperly classified as independent contractors and are entitled to minimum wage and overtime compensation under federal law, and that certain deductions from distributors' compensation are improper under Louisiana law. The Company denies these allegations.**

      4.      Anti-retaliation statement:

**IF YOU DECIDE NOT TO SIGN, THERE WILL BE NO RETALIATION AGAINST YOU IN ANY WAY.**

      5.      Disclosure that the distributor may be a member of the potential class:

**IMPORTANT:** <u>***THERE ARE NOW, AND MAY BE IN THE FUTURE, LAWSUITS AGAINST THE COMPANY AND/OR ITS AFFILIATES ALLEGING CLASS, COLLECTIVE, AND/OR REPRESENTATIVE CLAIMS ON YOUR BEHALF INCLUDING BUT NOT LIMITED TO CLAIMS FOR EMPLOYMENT STATUS AND OVERTIME. SUCH CLAIMS, IF SUCCESSFUL, COULD RESULT IN SOME MONETARY RECOVERY TO YOU.***</u>

      6.      Explanation regarding the nature and intended consequences of executing the class action waiver:

**Under the terms of the Amendment, arbitration is limited to individual claims, and does not permit any class, collective, or representative claims. This means that, if you sign the Amendment, both you and the Company will be limited to relief on an individual basis and cannot bring claims on behalf of others or participate in such actions.**

4

\* \* \*

> **The mere existence of such class, collective, and/or representative lawsuits, however, does not mean that such lawsuits will ultimately succeed. <u>But if you agree to arbitration with the Company, you are agreeing in advance that you will not participate in and, therefore, will not seek to recover monetary or other relief under any such class, collective, and/or representative lawsuit.</u>**

The Notice also cautions putative class members to "carefully review [the] Notice and consult with [a] financial, tax, and/or legal advisor" before deciding whether to sign the Amendment. (Exh. B, Notice at 1.)

## II. THE COURT SHOULD APPROVE THE PROPOSED COMMUNICATIONS TO PUTATIVE CLASS MEMBERS

### A. Court Approval Is Not Necessary

It is well settled that, prior to class certification, a defendant may communicate with members of a putative class without court approval. *Gulf Oil v. Bernard*, 452 U.S. 89, 101 (1981); *see also Garcia v. TWC Admin., LLC*, No. SA:14-CV-985-DAE, 2015 WL 1737932, at \*3 (W.D. Tex. Apr. 16, 2015); *Ross v. S.W. La. Hosp. Ass'n*, No. 2:12-CV-1250, 2013 WL 1818331, at \*4 (W.D. La. Apr. 29, 2013); *Carey v. 24 Hour Fitness USA, Inc.*, No. CIV.A. H-10-3009, 2012 WL 4754726, at \*3 (S.D. Tex. Oct. 4, 2012); *Spence v. Irving Holdings, Inc.*, No. 3:10-CV-142, 2010 WL 5609023, at \*3 (N.D. Tex. Dec. 15, 2010).[5] This is because putative class members have no attorney-client relationship with class counsel until the class if certified.

---

[5] *See also Morisky v. Public Serv. Elec. & Gas Co.*, 191 F.R.D 419, 424 (D.N.J. 2000) (rejecting argument that plaintiffs' counsel could assert attorney-client privilege to protect putative class members from communications and noting that putative class members could not "be considered clients of [plaintiffs' counsel's] firm."); *Slavinski v. Columbia Ass'n*, No. CCB-08-890, 2011 WL 1310256, at \*3 (D. Md. Mar. 30, 2011) (the employees had not opted-in yet, and there was no court order limiting contact, so defense counsel was not required to inform plaintiff's counsel or invite him to participate in the communication); *Brown v. Mustang Sally's Spirits & Grill, Inc*., No. 12–CV–529S, 2012 WL 4764585, at \*2 (W.D.N.Y. Oct. 5, 2012) ("There is nothing inherently improper about a party's communication with potential class members prior to certification[.]"; *Vallone v. CNA Fin. Corp.*, No. 98-C-7108, 2002 WL 1726524, at \*1 (N.D. Ill. Mar. 19, 2002) (holding that the attorney-client privilege did not attach between putative class counsel and putative class members).

*See LaChapelle v. Owens–Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir.1975) (stating that "[u]nder § 16(b) of FLSA . . . no person can become a party plaintiff and no person will be bound by or may benefit from judgment unless he has affirmatively 'opted into' the class; that is, given his written, filed consent"); *Palmer v. Priority Healthcare, Inc.*, No. 3:13CV480TSL-JMR, 2013 WL 5771662, at *3 (S.D. Miss. Oct. 24, 2013) (holding that until a person gives written, filed consent to opt into an FLSA collective action, he or she has no rights in the action); *Turkmen v. Ashcroft,* No. 02-CV-2307 (JG), 2010 WL 3398965, at *3 (E.D.N.Y. June 30, 2010) ("[T]he general rule is that a limited attorney-client relationship arises between potential class members and class counsel *upon class certification*." (emphasis in original).[6]

### B. The FAA Encourages The Arbitration of Disputes, Even If The Arbitration Agreement Is Executed After The Start Of Litigation

There is nothing improper in proposing that Distributors agree to an arbitration clause or class waiver in exchange for valuable consideration. To the contrary, arbitration agreements are governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"), which embodies a congressionally mandated "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). As a result, the FAA encourages the practice of parties agreeing to arbitrate, rather than litigate, their rights. *See Carter v. Countrywide Credit Indus., Inc.*, 189 F. Supp. 2d 606, 616 (N.D. Tex. 2002), *dismissed on appeal*, 57 F. App'x 212 (5th Cir. 2003) (citing *Gilmer v. Johnston/Interstate Lane Corp.*, 500 U.S. 20 (1991)).

---

[6]  *See also* ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 07-445, at 1- 3 (2007) (A client-lawyer relationship with a potential member of the class does not begin until the class has been certified and the time for opting out by a potential member of the class has expired.").

Both the Supreme Court and the Fifth Circuit have consistently permitted employers to make mandatory arbitration a condition of continued or future employment.[7] *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001), *Marino v. Dillards, Inc.*, 413 F.3d 530 (5th Cir. 2005), *Carson v. Higbee Co.*, 149 Fed. Appx. 289 (5th Cir. 2005), *May v. Higbee Co.*, 372 F.3d 757 (5th Cir. 2004); *Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229 (5th Cir. 1999). Given the strong federal policy favoring arbitration of disputes, there is a presumption that these types of arbitration agreements are not coercive or abusive, and the burden is on the party opposing enforcement to provide substantial evidence to the contrary. *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002); *Terrebonne v. K–Sea Transp. Corp.*, 477 F.3d 271, 285 (5th Cir. 2007).

Thus, there is nothing inherently coercive, misleading or deceptive about an arbitration agreement that is executed after the start of litigation. *See Green v. Plantation of La., LLC*, No. CIV. 2:10-0364, 2012 WL 4829328, at *2–3 (W.D. La. Sept. 17, 2012), *report and recommendation adopted*, No. CIV. 2:10-0364, 2012 WL 4829319 (W.D. La. Oct. 10, 2012). In fact, the FAA expressly applies to agreements to arbitrate existing disputes. 9 U.S.C. § 2 ("an agreement in writing to submit to arbitration an existing controversy . . . shall be valid, irrevocable, and enforceable[.]"). As one court recently noted:

> Regardless of whether there is a pre-existing collective action, the effect of the arbitration agreement is the same: it prevents the signatory from litigating her

---

[7] Defendants' position is that the Distributors who are Plaintiffs and putative plaintiffs in this action are not employees for purposes of the FLSA, but rather are independent contractors, as stated in their Distributor Agreements. However, Defendants note these decisions to make clear that, even if Plaintiffs and putative plaintiffs are determined to be employees of Defendants, the communications and Amendment to their Distributor Agreements discussed herein are nevertheless proper under Fifth Circuit precedent.

7

> FLSA claim in a judicial forum. In her Motion for Reconsideration, the Plaintiff does not deny that—in *Caley v. Gulfstream Aerospace Corp.*, [428 F.3d 1359 (11th Cir. 2005)]— the Eleventh Circuit stated that a compulsory arbitration agreement issued to an employee is not *per se* unconscionable. The Plaintiff similarly concedes that—according to *Caley*—an arbitration agreement is not unconscionable simply because it requires a party to forfeit her right to take part in a collective action. It is thus unclear why, for the unconscionability analysis, it makes any difference when the collective action was initiated.

*Stevenson v. Great Am. Dream, Inc.*, 2014 WL 3519184, *1 (N.D. Ga. July 15, 2014) (slip copy) (rejecting plaintiff's argument that an "otherwise permissible arbitration agreement is unconscionable if it was executed during the pendency of a collective action for which the signatory may potentially have been a participant"). Thus, the issue of timing with respect to when an arbitration agreement is implemented is immaterial.

### C. Courts Routinely Approve Communications to Putative Class Members Regarding the Implementation of Arbitration Agreements and Class Waivers

Given that parties have broad leeway to communicate with putative class members prior to class certification, along with the strong federal policy in favor of arbitration agreements, it should be no surprise that courts routinely approve communications with putative class members regarding the implementation of arbitration agreements or class waivers – and courts enforce the resulting agreements. *See, e.g., Conners v. Gusano's Chicago Style Pizzeria,* 779 F.3d 835 (8th Cir. 2015) (reversing the district court's injunction against the implementation of arbitration agreements executed with putative collective action members where defendant provided an explanatory memorandum explicitly outlining terms and conditions of the agreement); *Green*, 2012 WL 4829328, at *1 (granting defendant's motion to compel arbitration where plaintiffs had submitted no record evidence of any abusive communications between the defendants and putative plaintiffs in connection with their execution of arbitration agreements); *Stevenson v. Great Am. Dream, Inc.*, No. 1:12-CV-3359-TWT, 2014 WL 3519184, at *2 (N.D. Ga. July 15, 2014) (denying plaintiff's motion for reconsideration where the "text of the arbitration agreement

made it clear" that plaintiff could not participate in an FLSA collective action suit and there was "nothing else that [plaintiff] believe[d] was suspect about the manner in which the agreement was executed").

In *Conners*, the Court of Appeals for the Eighth Circuit reversed the district court's injunction barring the implementation and enforcement of an arbitration agreement entered into with putative collective action members after the action had been filed. *Conners*, 770 F.3d at 840-41. There, the defendant rolled out a new arbitration agreement for existing employees a month after a collective action was filed. *Id*. at 837. While the Eighth Circuit ultimately reversed the district court on standing grounds, holding that former employees lack standing to challenge arbitration agreements offered to current and prospective employees, the court took particular notice of the procedural safeguards and disclosures used by the defendant in implementing the agreements. *Id.* at 837-40.

The agreement explained (1) the scope of claims covered; (2) required procedures for invoking arbitration; (3) the effect the agreement would have on the employee's ability to pursue relief in court; (4) the right of every employee to opt-out of the agreement free of retaliation; and (5) how to opt out of the agreement. *Id*. at 838. In enforcing the arbitration agreement, the Eighth Circuit specifically noted:

> Along with the arbitration agreement, each employee received an opt-out form and an explanatory memorandum from the restaurant's general manager. The memorandum is a two-page document, describing the agreement's fundamental terms in plain English. The memorandum specifically explains that one effect of the agreement, should an employee not opt out, is to prevent the employee from joining [plaintiff] in the present collective action.

*Id.*

Similarly, in *Green*, defendants moved to compel six of the opt-ins in an FLSA collective action to arbitrate their claims, pointing to agreements signed after the institution of the lawsuit

9

but prior to the date they opted into the case. *Green*, 2012 WL 4829328, at *1. Noting that "prior to a decision on the conditional certification question, each side has the right to communicate with potential class members," this Court recognized that, because the arbitration agreements were signed before the plaintiffs' opted-in to the lawsuit, they could "properly be approached by their employer without usurping this Court's authority." *Id.* at *3. Moreover, this Court found that the plaintiffs had submitted no record evidence of any abusive communications by the defendants in connection with the opt-ins' execution of the arbitration agreements. *Id.* at *4. Ultimately, this Court granted defendants motion and compelled arbitration. *Id.*

By contrast, courts have invalidated arbitration agreements only where there are sufficient grounds under applicable state-law contract principles such as fraud, duress or unconscionability. *Id.* at *4 (citing *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 686–687 (1996)). It is the burden of the part seeking invalidation to prove that consent has been vitiated by one of these causes, and this burden cannot be met by stating that the employee believed or was informed that failure to sign would result in termination, or that the employee did not fully read or understand the agreement. *Id.; see also Walton v. Rose Mobile Homes*, LLC. 298 F.3d 470, 473 (5th Cir. 2002); *Truitt v. DirecTV, Inc.*, No. 08-3782, 2008 WL 5054570, *2 (E.D. La. Nov. 21, 2008); *Almon v. Higbee Co.*, No. 07-7063, 2008 WL 79956, at *2 (E.D. La. Jan. 4, 2008)).

### D. The Proposed Communications Should Be Approved By the Court

Here, the Flowers Bakeries' proposed communications are neither misleading nor coercive, and thus should be approved by this Court. The proposed communications provide clear and candid disclosures about the effects of a distributor's decision to enter into the Amendment and the effects of the arbitration agreement and class waiver, and it makes clear that a distributor is free to reject the Amendment without consequence.

On its face, the Notice presents a reasonable, accurate, and neutral explanation of the terms and conditions of the Amendment and its incorporated arbitration agreement, and the Notice carefully explains in plain English the consequences of executing the Amendment. (Exh. B, Notice.) The Notice explicitly advises Distributors that they have the right to consult with an attorney or other advisor prior to deciding whether to sign the Amendment. Moreover, the Notice:

(1) describes the revocation rights and procedure provided for in the Amendment;

(2) discloses the relevant pending action(s) in which the Distributors may have interests, including the instant case before this Court;

(3) describes the pertinent claims and defenses raised in this case and similar pending actions;

(4) assures Distributors they will not be retaliated against should they elect not to sign the Amendment; and

(5) discloses that the distributor is or may be a potential class member in this action or other similar lawsuit(s) and clearly explains the potential consequences of signing the Amendment with respect to the claims asserted.

In short, the proposed communications to putative class members are neither misleading nor coercive.

## III. CONCLUSION

The Flowers Bakeries are preemptively seeking this Court's approval of their proposed communications in the event that this Court deems such approval necessary. As discussed above, the proposed communications provide clear, neutral, and candid disclosures and ensure putative class members have an opportunity to make an informed and *voluntary* decision regarding whether to execute the proposed Amendment. Therefore, the Flowers Bakeries

respectfully request that this Court issue an Order approving its proposed communications with putative class members.

        Respectfully submitted,

        */s/ Matthew M. McCluer*
        Gregory Guidry, La. Bar No. 06489
        Matthew M. McCluer, La. Bar No. 33970
        OGLETREE, DEAKINS, NASH, SMOAK
          & STEWART, P.C.
        603 Silverstone Road, Suite 102A
        Lafayette, LA 70508
        701 Poydras Street, Suite 3500
        New Orleans, LA 70139
        Telephone: 337.769.6583 / 504.648.3840
        Facsimile: 504.648.3859
        Email: gregory.guidry@ogletreedeakins.com
        Email: matthew.mccluer@ogletreedeakins.com

        *AND*

        * Kevin P. Hishta, Ga. Bar No. 357410
        * Margaret S. Hanrahan, Ga. Bar No. 578314
        * C. Garner Sanford, Ga. Bar No. 005020
        OGLETREE, DEAKINS, NASH, SMOAK
          & STEWART, P.C.
        One Ninety One Peachtree Tower
        191 Peachtree Street, N.E., Suite 4800
        Atlanta, GA 30303
        Telephone: 404.870.1743
        Facsimile: 404.870.1732
        Email: kevin.hishta@ogletreedeakins.com
              margaret.hanrahan@ogletreedeakins.com
              garner.sanford@ogletreedeakins.com

        *\* Admitted Pro Hac Vice by Court Orders dated*
        *Apr. 1, 2016 (R. Doc. 45– 47)*

        **ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Memorandum in Support of Motion for Approval of Proposed Pre-Certification Communications to Putative Class and Collective Action Members has been filed via the Court's ECF/CM System, which will provide notice to all counsel of record.

This 4th day of April, 2016.

/s/ Matthew M. McCluer
Matthew M. McCluer

24395770.1

13