```
                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF LOUISIANA
                         LAFAYETTE DIVISION


ANTOINE RICHARD, ET AL.,            :    Docket No. 15-02557
                                    :
                 Plaintiffs,        :
vs.                                 :    September 21, 2016
                                    :
FLOWERS FOODS, INC., ET AL.,        :
                                    :
                 Defendants.        :    Lafayette, Louisiana
_____
```

REPORTER'S OFFICIAL TRANSCRIPT OF THE HEARING

BEFORE THE HONORABLE CAROL B. WHITEHURST

UNITED STATES MAGISTRATE JUDGE

LARAE E. BOURQUE, RMR, CRR
Federal Official Court Reporter
800 Lafayette Street, Ste. 3103
Lafayette, LA  70501

A P P E A R A N C E S

FOR THE PLAINTIFFS:     RYAN M. GOUDELOCKE
                        STEVEN G. DURIO
                        Durio McGoffin, et al.
                        P.O. Box 1308
                        Lafayette, LA   70505

FOR THE DEFENDANTS:     MICHAEL D. RAY
                        Ogletree Deakins, et al.
                        155 N. Wacker Dr., Ste. 4300
                        Chicago, IL   60606

```
 1                    P R O C E E D I N G S
 2              THE COURT:  All right.  So we will take up Richard vs.
 3    Flowers.
 4              MR. RAY:  Good morning, Your Honor.
 5              Michael Ray on behalf of the Flowers defendants.
 6              MR. GOUDELOCKE:  Good morning, Your Honor.
 7              Ryan Goudelocke for the plaintiffs, along with
 8    Buzz Durio.
 9              THE COURT:  Okay.  Mr. Ray.
10              MR. RAY:  Your Honor, this is our motion to dismiss on
11    behalf of two entities, Flowers Baking Company of New Orleans and
12    Flowers Baking Company of Alexandria, on the basis that none of
13    the plaintiffs in this case, either the named plaintiffs
14    themselves or the people who have opted into this case under the
15    FLSA, have any standing.
16              THE COURT:  Let me ask you a quick question.
17              I know the motion is to dismiss the Flowers Alexandria
18    entity and the New Orleans entity and you have not moved to
19    dismiss the Lafayette entity.  Is that because some of the
20    contracts were originally with Lafayette and then transferred?
21              MR. RAY:  That's correct, Your Honor.
22              So there's a sliver of Lafayette.  For example, we'll
23    take the named plaintiff, Mr. Richard.  He had a contract
24    originally with Lafayette that was transferred to Baton Rouge.
25    So it's a very small sliver.  But given that issue, frankly, we
```

1  didn't think it was prudent to include them.
2  THE COURT: I just wanted to clarify that.
3  MR. RAY: Yes.
4  Your Honor, the upshot of our motion in a nutshell is
5  that the plaintiffs in this case cannot assert claims against
6  these two entities based on Article III. There's no dispute,
7  especially based on the briefing, that they do not have
8  constitutional standing themselves and they have zero relation
9  to these entities. They're not claiming they were, quote,
10 unquote, employed by them under the FLSA or the Louisiana wage
11 laws.
12 Their only claim is to rely, instead, on a bit of a
13 novel concept called the Juridical Link Doctrine, Your Honor, and
14 for a variety of reasons, we don't think that that doctrine
15 applies in this case. We don't believe that the named plaintiffs
16 before Your Honor in this case can stand on the shoulders of
17 putative class members and assert claims against entities that
18 everybody acknowledges they did not contract with, don't even
19 claim that they were employed by, et cetera.
20 Your Honor, that particular concept, the Juridical Link
21 Doctrine, was originally derived from a 1973 Ninth Circuit
22 opinion, and, in application, including the Fifth Circuit's
23 *Audler* decision, they cited a Seventh Circuit case called *Payton*.
24 Where that doctrine came from was claims against public
25 actors and statutes of common application. In that context, for

1  example, if we look at the *Payton* case, the courts have said
2  there may be some economy in allowing these claims to proceed in
3  the aggregate as opposed to having a match on every side, in
4  other words, having a plaintiff with direct claims against each
5  defendant.
6           THE COURT:  Let me ask you a question, too, about the
7  affidavit of Stephanie Tillman.
8           With regard to Flowers Alexandria, even if the
9  plaintiffs had standing to assert a claim for the putative
10 claimants, this affidavit seems to say that Alexandria didn't
11 employ -- did not have any distributors at all.
12          MR. RAY:  That's right, Judge.  They don't distribute.
13 We view that, frankly, to be settled, because when we look at
14 even putative class members, Alexandria wouldn't have putative
15 class members that distributed Flowers products in the state of
16 Louisiana.
17          THE COURT:  That's a little different from the
18 statement regarding New Orleans because New Orleans basically is
19 saying we didn't employ independent contractors meaning -- in
20 essence, they're saying they were independent contractors.  They
21 weren't our employees.  That's the general situation from
22 Alexandria.
23          MR. RAY:  It is.  They're distinct arguments.  FBC of
24 New Orleans does have independent contractors who distribute
25 Flowers products in the state of Louisiana.  Alexandria does not.

1  So even putative class members, at least as we look at
2  Alexandria, there just wouldn't be any within the scope of the
3  class definition.
4          THE COURT:  Okay.
5          MR. RAY:  Now, with respect to New Orleans, we
6  certainly don't believe that the Juridical Link Doctrine supplies
7  standing here because there's no plaintiff who contracted with or
8  contends that they were employed by that entity.
9          And, again, the Juridical Link Doctrine was intended
10 for public actors, for suits where there's reasons of judicial
11 economy why the Court should decide these issues as a matter of
12 public interest.
13         You know, if we look at that *Payton* decision, that
14 talks about a bail statute.  The *Lakey* decision that the
15 plaintiff cited in their briefing, that was challenging a
16 particular Texas abortion law.  Those are the circumstances when
17 courts have actually applied this doctrine.
18         When we look under the FLSA, and particularly with the
19 Louisiana wage statutes, these statutes have words of limitation
20 in them.  For example, under the FLSA and Louisiana wage law, you
21 can only assert a claim against an employer, you know, for
22 purposes of standing and Article III and even to state a claim
23 against them.  Those statutes specifically limit claims under
24 those statutes to employers.  And there's no debate in this case,
25 Judge, that Flowers of New Orleans did not even allegedly employ

```
 1   or serve as an employer as to any of the named or opt-in
 2   plaintiffs in this case.
 3              THE COURT:  Have there been -- and I didn't see any
 4   cited, but has there ever been -- most of the cases that you have
 5   cited show that the Juridical Link Doctrine has not been applied
 6   in FLSA-type collective action cases.
 7              MR. RAY:  That's correct, Judge.
 8              THE COURT:  Okay.
 9              MR. RAY:  Yeah.  The great weight of authority, both in
10   cases -- district courts within the Fifth Circuit, for example,
11   *Lucas* and the *Joaquin* cases stated in our brief, they did not
12   allow a named plaintiff to stand on the shoulders of a putative
13   class member to assert claims against some other entity.  And
14   when we expand that search more globally to courts across the
15   country, various courts have directly rejected this concept.
16              For example, there's two cases out of the Northern
17   District of Illinois, the *Wilkins* case and the *Brunner* case, and
18   in both of those cases they confronted this exact argument,
19   whether the Juridical Link Doctrine can supply standing in a wage
20   and hour class collective action.  In both of those cases the
21   court said, no, that's not what this doctrine was intended for.
22   This is a doctrine to serve the courts when there are interests
23   of the public.  We have state actors.  We have a statute of
24   common application.  That's not what we have here.
25              You know, what the plaintiff asks this Court to do is
```

1  something quite remarkable.  One, the Fifth Circuit has not
2  endorsed the Juridical Link Doctrine.  They have mentioned it,
3  they have acknowledged its existence, but the Fifth Circuit has
4  never actually applied it in any case.  So that's the first
5  issue.
6          The second issue is the district courts within the
7  Fifth Circuit have not held the point that the plaintiffs ask you
8  to do, Your Honor, which is that a named plaintiff in a class or
9  collective action can assert claims against someone that even
10 allegedly did not employ that entity based on the jurisdictional
11 principle of standing.
12         And then the third one, we expand our search, you know,
13 to courts across the country.  Those courts, most, if not all of
14 them, have rejected exactly what the plaintiffs seek to do here,
15 that is, where there is not a named plaintiff with Article III
16 standing relative to any of those entities, then there's simply
17 no basis for holding them in the case.  It basically serves as a
18 fishing expedition or a means for them to solicit extra
19 plaintiffs when they don't meet the jurisdictional threshold of
20 standing in the first place.
21         THE COURT:  Okay.  Let me hear from the plaintiff.  I
22 do understand your arguments, and if I have any other questions,
23 I'll speak to you after they make their argument.
24         MR. RAY:  Thank you, Your Honor.
25         MR. GOUDELOCKE:  Good morning, Your Honor.

```
 1              THE COURT:  Good morning.
 2              MR. GOUDELOCKE:  Ryan Goudelocke for Antoine Richard
 3   and the other named plaintiffs in the collective action of
 4   similarly situated employees.
 5              THE COURT:  Okay.  Let me ask you first about the same
 6   thing I asked him about, the Alexandria Flowers Bakery.  They did
 7   not have any distributors?
 8              MR. GOUDELOCKE:  Our understanding from the affidavit
 9   attached to the opposition to the motion is the same as yours,
10   Your Honor, that they did not.  However, we need to make the
11   Court aware that we propounded discovery on Alexandria and
12   New Orleans back in, I think, March.  It was at the same time we
13   did on all the other defendants.
14              Alexandria and New Orleans declined to answer that
15   discovery, which included a request to please identify any
16   distributors you may have contracted with, employed, whatever
17   verbiage you want to use.  Both of those entities represented to
18   us that they did not feel they were proper party defendants and
19   so they declined to answer that discovery at all, ever.
20              So we don't have any actual independent -- we sought
21   discovery that may have determined that there weren't any
22   distributors employed by Alexandria, but we don't have anything
23   except the affidavit in opposition to this -- or in support of
24   this motion that says so.  So we have attempted to discover facts
25   that would disclose that.
```

1    And if that's true, after we see Alexandria is not a
2    proper party defendant, we'll acknowledge that. We have
3    attempted to discern facts that would support or deny that
4    contention, but we've actually been stymied in discovery from
5    doing so. So we don't have an alternative but to oppose their
6    motion to dismiss.
7    THE COURT: Okay.
8    MR. GOUDELOCKE: So, you know, the affidavit obviously
9    speaks for itself, but it is a self-serving affidavit in support
10   of a motion to dismiss after that same entity, which seeks the
11   dismissal, has affirmatively -- and I have the correspondence,
12   should the Court seek to have it brought into the record, where
13   FBC Alexandria represents that we are not a proper party
14   defendant and we're not going to answer this discovery, which
15   would include evidence tending to establish whether or not they
16   did, in fact, have any contractors delivering product.
17   As for both New Orleans and Alexandria, though --
18   THE COURT: The only issue is juridical link, right?
19   It's whether or not -- I know the defendants have
20   raised issues of joint employer, but really your argument is that
21   based on the theory of juridical link, that the plaintiffs should
22   be able to bring claims against the defendants. Even though the
23   named plaintiffs were not employed by the defendants, potential
24   putative class members may have standing.
25   MR. GOUDELOCKE: It's really twofold, Your Honor. That

```
 1   is certainly the first prong and that's the area to which we
 2   devoted most of our talking in our briefing, as well as Flowers
 3   did, too, but the other issue, and we mentioned this in our
 4   brief, too, is practicality.
 5            I was on the phone -- and this is not in evidence, of
 6   course, but I was on the phone with a New Orleans distributor
 7   last week who said, should I opt in today?  I said, well, it's up
 8   to you.  It doesn't really matter.  You know, assuming we get
 9   certification, and it is a very low hurdle as the jurisprudence
10   says, then you'll get a notice and you'll have a chance to then.
11   When that happens, that guy presumably will opt in.  There will
12   be others who opt in.  New Orleans has a large number of
13   warehouses under its agents.  So New Orleans is going to come
14   right back in.
15            So as a matter of practicality, dismissing New Orleans
16   right now, it simply delays their being brought back into the
17   case.  It simply delays them having to answer the discovery that
18   they've so far refused to.  So it really serves no judicial or
19   party efficiency purpose to dismiss, especially New Orleans,
20   right now, which has never denied that it does contract with
21   drivers to distribute product.
22            So in the unlikely event that literally no one from
23   New Orleans were to opt in, well, maybe this would make sense,
24   but that's just not -- that's just not going to happen.  So when
25   New Orleans comes back in, when its people come back in, this
```

```
 1   will have been moot, except for Alexandria, which we already
 2   could have acknowledged could be dismissed had we gotten
 3   discovery from Alexandria showing that, in fact, they don't
 4   employ anybody.  So that's the second prong, and it may be, as
 5   far as practicality is concerned, the more important one.
 6              Legally speaking, though, you know, Mr. Ray pointed out
 7   that the Juridical Link Doctrine has never been applied in an
 8   FLSA case in the Fifth Circuit.  What he didn't mention is
 9   there's never been a Fifth Circuit case saying you can't use it
10   in the FLSA.
11              In fact, there's a Fifth Circuit case -- and it's
12   Reyes, and they try to distinguish it in their reply -- that does
13   apply the Juridical Link Doctrine by private actors in a class
14   action context.  The only thing they could say to that is, well,
15   Reyes is wrong.  Well, that may be, but that's the weight of
16   authority.
17              And, oddly, the Fifth Circuit case that acknowledged
18   the Juridical Link Doctrine was not a public actors case.  It was
19   a private actors case.  And the Fifth Circuit didn't reach that
20   question because the named -- the principal plaintiff, the named
21   plaintiff, he didn't have a claim himself, so they didn't need to
22   go there, but they acknowledged that it existed and said we don't
23   need to look at this.  They never said, well, even if we had, it
24   would have been dicta anyway, but they never said this is only
25   for public actors.
```

1            And in *Reyes*, it's very clear the Eastern District said
2    this is actually for private actors.  It's for collective groups.
3    It's for class actions.
4            THE COURT:  What about the *Joaquin* and the *Lucas* case?
5            MR. GOUDELOCKE:  The *Lucas* case is a little bit of a
6    strange animal.  We, of course -- you know, we attempted to
7    distinguish it, and I think we did a decent job of pointing out
8    its distinctions from where we stand here.
9            In *Lucas*, there was -- Blackmon Mooring was the moving
10   party, and Blackmon Mooring pointed out that, look, no one -- we
11   didn't even have a -- we never had a contract with anyone who
12   might be a putative plaintiff.  And the plaintiffs didn't -- they
13   didn't -- they didn't deny that.  What they said instead was that
14   Blackmon Mooring and all of these other groups were part of more
15   a single business enterprise-type joint undertaking, where even
16   if there was never any contractual privity between any of the
17   plaintiffs in Blackmon Mooring, Blackmon Mooring was still a
18   proper party defendant because they were closely connected.  They
19   were part of a -- "conspiracy" is actually the word that most of
20   the courts have used with the Juridical Link Doctrine, and it's
21   in our complaint for that reason.  They alleged that Blackmon
22   Mooring was part of a conspiracy to deny them appropriate, you
23   know, compensation.  But Blackmon Mooring, the plaintiffs, never
24   said that we actually -- any of us ever had a contract.  They
25   never said that any of the putative plaintiffs had a contract.

```
 1   They just said there's this relationship between the defendants
 2   that makes them a proper party defendant.
 3           We're not saying that.  We're saying there is a
 4   relationship between putative plaintiffs and FBC New Orleans, and
 5   maybe Alexandria, too, for all we know, and that there was
 6   contractual privity.  New Orleans has never denied that.  And
 7   once those folks -- once a single one of those folks opts in,
 8   New Orleans is automatically a proper party defendant.
 9           So we don't feel *Lucas* is applicable because it never
10   -- no one ever claimed that it had a contract with any of the
11   plaintiffs.  That's not the case here.  These putative plaintiffs
12   do have contracts with New Orleans.
13           So that's how we address *Lucas*.  There's no contracts
14   there where there are here.
15           THE COURT:  I tend to agree with the defense, that the
16   Juridical Link Doctrine may not apply, but I do like your
17   practicality argument, because that -- you know, what's your
18   response to that?
19           MR. RAY:  Your Honor, this is the first we've heard of
20   it.  You know, at this point we have the conversation from
21   counsel that in the event that a Flowers Baking Company of New
22   Orleans individual opts in to this action, then I think we would
23   certainly evaluate our motion to dismiss, but up until the point
24   that there's an opt-in, which, again --
25           THE COURT:  So at this point there's no -- we have a
```

1  conversation that there may be a New Orleans opt-in.  We don't
2  have the opt-in.  We're still at the point where we have to
3  decide whether there's standing and the Juridical Link Doctrine
4  may not supply that.
5          MR. RAY:  Yes, Your Honor.
6          If I could indulge the Court just to address counsel's
7  statement about the *Reyes* case, if you actually look at footnote
8  one -- I'm sorry, the *Lucas* case.  If you look at footnote one,
9  that case is exactly the same as this one.  There's six
10 defendants in that case, each of which had employees, and their
11 argument was, well, we weren't employed by this entity.  Somebody
12 else was in their putative class.  So it's exactly the same as
13 this case.
14         And the distinction with *Reyes*, of course, is the *Reyes*
15 case that counsel cited, certainly that decision does go the
16 other way.  It's not a wage and hour case.  And there's actually
17 a fundamental defect in that opinion, and that is they say in the
18 First Circuit -- I'm sorry, in the Fifth Circuit, the courts may
19 defer the standing question until class certification, and under
20 *Rivera*, that's simply not true, Your Honor.
21         MR. GOUDELOCKE:  And if I may speak to that issue,
22 Your Honor.
23         This is not a class certification.  This is a
24 collective action.  We're not looking at Rule 23 certification.
25 The motion that we have pending right now for certification is

1   not under Rule 23.  It's not a -- it does not -- imposed on the
2   plaintiffs at this stage are not all of the typical Rule 23
3   requirements.  The FLSA imposes a two-stage -- and I don't think
4   we have any argument about this.  There's a two-stage process
5   where we have a very low hurdle to certification of a collective
6   action, not a class action.
7           So *Rivera* does indicate that in a class action context,
8   you have to evaluate standing before you certify a class, because
9   that's it.  That's the end of the analysis.  In a collective
10  group certification, it's not the end of the analysis.
11          Moreover, just in closing, Mr. Ray just mentioned --
12  this is the first we've heard of this practicality.  It's not.
13  It's in our opposition.  We write -- and if I may cite a brief
14  quote:  Defendants don't claim their employers are not members of
15  the alleged collective action.  They simply complain they have
16  not yet joined the suit.  There's every reason to believe that
17  even if these movers are dismissed, they will simply be brought
18  right back in upon certification.
19          It just doesn't serve anybody's efficiency to do this
20  right now, aside from the juridical link arguments that we've
21  already discussed.
22          THE COURT:  Okay.  I understand your arguments.  I've
23  read the briefs.  I've read the cases.  I'm going to take this
24  under advisement, and we'll issue a report and recommendation to
25  Judge Hicks who I believe this case is assigned to.

```
 1              MR. GOUDELOCKE:  Thank you, Your Honor.
 2              MR. RAY:  Thank you, Judge.
 3                          _ _ _
```

```
 1                           Certificate
 2   I hereby certify this 29th day of September, 2016, that the
 3   foregoing is, to the best of my ability and understanding, a true
 4   and correct transcript from the record of proceedings in the
 5   above-entitled matter.
 6
 7                                   /s/ LaRae E. Bourque
 8                                   Federal Official Court Reporter
```