# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

Richard, et al                                  Civil Action No. 15-02557

versus                                          Judge S. Maurice Hicks

Flowers Foods Inc., et al                       Magistrate Judge Carol B. Whitehurst


## REPORT AND RECOMMENDATION

Currently pending before the Court is a Motion To Dismiss, pursuant to Rule 12(c) or, in the alternative, Rule 12(b)(1) of the Federal Rules of Civil Procedure, filed by Defendants, Flowers Baking Co. Of New Orleans, LLC ("FBC-New Orleans") and Flowers Baking Co. Of Alexandria, LLC ("FBC-Alexandria") ("Defendants") [Rec. Doc. 83], a Memorandum in Opposition filed by Plaintiffs [Rec. Doc. 98] and Defendants' Reply thereto [Rec. Doc. 104]. The Court conducted oral argument on the Motion and opposition on September 21, 2016. *R. 112.* For the reasons that follow, the Court will recommend that Defendants' Motion be granted.

### I. Factual and Procedural Background

This is a collective action for violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq* ("FLSA"), and the Louisiana Wage Payment Act. La. R.S. § 23:631 ("Wage Act"). Plaintiffs allege they entered into Distributor Agreements with certain of Flowers Foods, Inc.'s subsidiary bakeries to serve as Distributors of various

baked goods and related products—Flowers Baking Co. of Lafayette, LLC ("FBC-Lafayette")[1]; or FBC of Baton Rouge, LLC ("FBC-Baton Rouge"); or FBC of Alexandria, LLC ("FBC-Alexandria"); FBC of New Orleans, LLC ("FBC-New Orleans"); or FBC of Tyler, LLC ("FBC-Tyler") (collectively "Flowers"). *R. 5, ¶¶ 1, 17.* Plaintiffs further allege they were mis-classified as independent contractors and seek to assert their claims on behalf of "all individuals who, through a contract with Defendants or otherwise, distribute or distributed for Defendants under agreements with [Flowers Bakery] or any other affiliates or subsidiaries of Flowers Foods, Inc. which employ distributors working within the state or Louisiana; and who were classified by Defendants as "independent contractors[.]" *R. 5, ¶ 17.*

Defendants state that, as of the date of filing this Motion, there were six (6) named Plaintiffs and seventeen (17) Opt-in Plaintiffs who filed consents to joint this action, for a total of twenty-three (23) Plaintiffs. Defendants represent that twelve (12) Plaintiffs held contracts with FBC-Baton Rouge and eleven (11) of them held contracts with FBC- Tyler. None of the named or opt-in plaintiffs contracted with FBC-New Orleans or FBC-Alexandria. *R. 83, Exh. A, Decl. Of Embry; Exh. B, Decl. Of Tillman.* Defendants argue that the Court should dismiss FBC-New Orleans and

---

[1] Some of the plaintiffs initially had agreements with FBC-Lafayette but those agreements were subsequently transferred and assigned to FBC-Baton Rouge. None of the plaintiffs contracted with Flowers Foods, Inc.

FBC-Alexandria from this law suit because Plaintiffs lack standing and the Court lacks subject matter jurisdiction to consider their claims against Defendants.

## II. The Parties' Contentions

Defendants, FBC-New Orleans and FBC-Alexandria, moved for dismissal of Plaintiffs' claims against them because Plaintiffs lack standing to sue them. Defendants assert that Plaintiffs cannot satisfy the case-or-controversy requirement of Article III of the Constitution because they cannot establish an employer-employee relationship with either Defendant, and therefore, cannot show that they have "suffered injury in fact" or standing—an inherent prerequisite to the class certification inquiry.

In opposition, Plaintiffs argue that under the "juridical link" doctrine the Court considers the class, not the class representative, for the purpose of Article III justiciability. Thus, under the juridical link doctrine, standing is determined by whether or not the *collective group* was employed by the defendants—not whether any particular plaintiff was employed by the defendants. Plaintiffs further argue that the conditional certification determination has not yet occurred and it is therefore premature to find that no *potential* plaintiff was employed by Defendants.

In their reply, Defendants argue that the applicable jurisprudence has established that the Juridical Link doctrine does not supply standing under Article III.

Therefore, the "theoretical claims of putative class or collective action members" are insufficient to confer standing in this case.

### III. Legal Standards

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." *Id.*   "The central issue [in a 12(c) motion] is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002).  A motion for judgment on the pleadings pursuant to  Rule 12(c) is therefore subject to the same standard as a motion to dismiss under Rule 12(b)(6). *See Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2008).

A motion to dismiss filed pursuant to  Rule 12(b)(1) of the Federal Rules of Civil Procedure "allow[s] a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "At the outset [the Court] must emphasize a crucial distinction, often overlooked, between 12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); *see also* 5B Wright & Miller, Federal Practice and Procedure §

4

1350 (3d ed. 2013) ("As many judicial decisions make clear, a motion under Rule 12(b)(1) may be used to attack two different types of jurisdiction defects."). The Fifth Circuit has explained:

> A motion to dismiss for lack of subject matter jurisdiction, Rule 12(b)(1), can be based on the lack of jurisdiction on the face of the complaint. If so, the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised—the court must consider the allegations in the plaintiff's complaint as true. But the two motions are treated quite differently when a matter outside the complaint is the basis of the attack.

*Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981). The court further explained by quoting the Third Circuit:

> The facial attack [on subject matter jurisdiction] does offer similar safeguards to the plaintiff: the court must consider the allegations of the complaint as true. The factual attack, however, differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Id*. at 412-13.

"The district court consequently has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the

5

complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id*. at 413.  "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Edwards v.* Burwell, 2016 WL 4073298, at *1 (5th Cir. 2016) (quoting *Mortensen* 549 F.2d at 891).

## IV. Law And Analysis

Defendants filed this motion under Rule 12(c) for judgment on the pleadings or alternatively Rule 12(b)(1) for lack of subject matter jurisdiction based on standing. A court must always address a motion to dismiss for lack of jurisdiction before considering other challenges or reaching the merits of any case because without jurisdiction, the court has no power to entertain the case. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994); see also *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."). The Court will therefore address the Motion under Rule 12(b)(1).

## 1. FLSA Standing

Defendants argue the Court should dismiss them from this lawsuit because Plaintiffs lack standing under Article III to sue them. In particular, they contend that none of the named plaintiffs or even the opt-in plaintiffs, were ever employees of

6

Defendants under either the FLSA or the Wage Act. They further contend that the Complaint does not allege or imply that Defendants exercised control over Plaintiffs' compensation. Rather, the Complaint merely alleges that "Defendants were and are uniform in all respects" and Plaintiffs "were subject to the same policies and practices." *R. 5, Am. Compl. ¶¶ 28, 61.*[2]

Defendants attach to their Motion the Declarations of John Embry, the Plant President of FBC-New Orleans, and Stephanie Tillman, the Assistant Secretary of FBC-Alexandria. Embry states that as of July 15, 2016, none of the named plaintiffs (nor even any of the opt-in plaintiffs) have ever been under contract with FBC-New Orleans as a contractor or employee. *R. 83-2.* Tillman states that since its formation, "FBC-Alexandria has not engaged in distribution of any Flowers products through any employees or independent contractors." *R. 83-3.* Defendants argue, Plaintiffs cannot establish Article III standing to bring suit against Defendants where there is no employer–employee relationship with Plaintiffs.

To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. *Crane v.*

---

[2] Plaintiffs allege that  Flowers "operated under a scheme to deprive [Plaintiffs] of overtime compensation...." *R. 5, ¶ 21.*

*Johnson*, 783 F.3d 244, 251 (5th Cir. 2015). The requirement of standing is not lessened for an individual plaintiff where that plaintiff files a class action complaint, "even if the persons described in the class definition would have standing themselves to sue. If the plaintiff has no standing individually, no case or controversy arises." *Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir. Unit A July 1981), *superceded by statute*.

To demonstrate that they have standing, the named plaintiffs in a class action must meet every element of standing as to each defendant, including alleging that they were injured by each defendant named in the suit. *See In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 570 F. Supp. 2d 851, 856 (E.D. La. 2008); *In re Taxable Mun. Bonds Litigation*, 1993 WL 302619, at *3 (E.D.La. 1993) ("It is settled law that a single plaintiff lacks standing to assert class claims against defendants with whom the plaintiff has not dealt, even though unnamed individuals that the plaintiff seeks to represent may have direct claims against those defendants."). Thus, Plaintiffs cannot establish standing by pointing to an  injury that a defendant caused to a putative class member. *See Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 248 (5th Cir.2008) ("Without the prospect of class certification, [plaintiff's] claims against the Class Defendants are nothing more than attempts to assert the injuries of others and therefore must be dismissed for lack of standing.").  The standing issue must be resolved before a class is certified. *Rivera v. Wyeth–Ayerst Labs.*, 283 F.3d 315, 319

(5ᵗʰ Cir. 2002).

The standing requirement is no different in a collective action suit. "[A] named plaintiff in a collective action adequately pleads standing against a particular defendant only if the plaintiff has alleged an injury that the defendant caused to him." *Lucas v. BMS Enterprises*, 2010 WL 2671305 *2–3 (N.D. Tex. 2010). Thus, Plaintiffs have clearly alleged a sufficient injury-in-fact: the failure to be properly compensated for hours worked. At issue is whether those injuries can be traced to the conduct of the Defendants and can be redressed by a favorable decision.

## 2. Juridical Link Doctrine

Neither party disputes that liability in the FLSA and the Wage Act context require the existence of an employer-employee relationship.[3] *See* 29 U.S.C. § 206(a) ("Every employer shall pay to each of his employees ... wages at the following rates"); La. Rev. Stat. § 23:631 (making the Wage Act applicable to "employers"). Here, it is undisputed that Defendants did not employ any of the named plaintiffs, nor even any of the putative plaintiffs who have opted-into this suit. Plaintiffs argue that these requirements do not prevent them from asserting claims against Defendants on

---

[3] The Act defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). An "employee," in turn, is defined as "any individual employed by an employer," *id*. § 203(e)(1), and "employ" means "to suffer or permit to work." *Id*. § 203(g).

9

behalf of the potential class members who may opt-in because of the "juridical link" doctrine. "This doctrine is premised on the notion that the class, not the class representative, is the relevant legal entity for the purpose of Article III justiciability concerns." *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 248 (5th Cir. 2008) (citing *Patton v. County of Kane*, 308 F.3d 673, 679 (7th Cir.2002).

The juridical link doctrine arose out of the Ninth Circuit's decision in *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir.1973). *La Mar* was a case where standing was not at issue because the Ninth Circuit assumed it to exist. *See id.* at 464. Rather, the juridical link doctrine was used to determine whether named plaintiffs were typical of the class and could fairly and adequately protect class interests as required by Rule 23. *See id.* at 465–66. The crux of the doctrine is that "a plaintiff who has no cause of action against the defendant can not [represent] those who do have such causes of action." *Id.* at 466. Relying on class certification requirements under Rule 23(a) of the Federal Rules of Civil Procedure, the court concluded that the named plaintiffs in the cases before it could not bring a class action against defendants that did not injure them because they could not satisfy Rule 23's "typicality" and "adequacy of representation" requirements. *Id.* at 465-66.

The Ninth Circuit, however, suggested that there were two exceptions to this rule (neither "exception" was applicable in the case before it). One exception covers

cases in which the named plaintiff's injuries "are the result of a conspiracy or concerted schemes between the defendants." The other exception—the one which gave rise to the so-called juridical link doctrine—covers cases in which the defendants are "juridically related in a manner that suggests a single resolution of the dispute would be expeditious." *Id*. at 466. The court did not discuss the scope of these two exceptions; and the court did not apply either exception. *Id*. at 464.

The Fifth Circuit has never adopted the juridical link doctrine for standing and has continued to require plaintiffs to assert direct claims against each defendant in order to satisfy the Article III standing requirement. *See Audler v. CBC Innovis, Inc*., 519 F.3d 239 (5th Cir. 2008). Both parties cite the Fifth Circuit's ruling in *Audler*. There, a homeowner whose property was damaged by Hurricane Katrina brought a class action on behalf of the owners of properties mistakenly determined to be outside of a flood hazard area. *Id*. at 245. The defendants included multiple companies that had not caused injury to Audler. *Id*. at 247. Appealing dismissal of the lawsuit, Audler argued that the juridical link doctrine conferred standing on him. *Id*. at 248. The court declined Audler's invitation to adopt the doctrine, holding that his claims against the defendants who were not alleged to have harmed him "are nothing more than attempts to assert the injuries of others and therefore must be dismissed for lack of standing." *Id*. Though Plaintiffs argue that *Audler* leaves the door open to use the

juridical link doctrine to establish standing, the *Audler* court effectively upheld its unequivocal and longstanding requirement that a class action plaintiff must have standing to assert a claim against each defendant.

The majority of district courts within the Fifth Circuit have likewise held that the juridical link doctrine cannot establish Article III standing. *See, e.g.,Hopkins v. Green Dot Corporation*, 2016 WL 4468272, at *4 (W.D.Tex., 2016) (Juridical link doctrine has not been adopted by the Fifth Circuit, and is not a legally sound method by which plaintiff may establish standing); *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 570 F. Supp. 2d 851, 856 (E.D. La. 2008) ("[T]he Constitutional requirement of Article III standing should not be trumped by a judge-made doctrine."); *Matte v. Sunshine Mobile Homes, Inc.*, 270 F.Supp.2d 805, 826-28 (W.D.La.2003) (finding the doctrine not relevant to the issue of standing).

Plaintiffs cite *Reyes v. Julia Place Condominiums Homeowners Ass'n*, 2013 WL 442524, at *3-4 (E.D. La. Feb. 5, 2013), which is non-binding on this Court. In *Reyes*, the plaintiff filed suit as a class representative and alleged the defendants engaged in a conspiracy to charge usurious interest upon its members in violation of the Louisiana Condominium Act. Applying Rule 12(b)(1) under a facial attack, the court found the factual allegations in the complaint had to be taken as true. The court stated that *class certification* should be addressed before Article III standing to sue

and held the juridical link doctrine provided standing to the plaintiff based on the conspiracy allegations between the defendants. *See Reyes*, 2013 WL 442524, at *3-4. The court's holding in *Reyes* is contradicted by Fifth Circuit jurisprudence. *See Rivera v. Wyeth–Ayerst Labs*., 283 F.3d 315, 319 (5th Cir. 2002), *supra*; *Cole v. General Motors Corp.*, 484 F.3d 717, 721(5th Cir. 2007) ("Before we reach the questions regarding the class certification, we must resolve the standing question as a threshold matter of jurisdiction.").

Plaintiffs assert that the Sixth, Seventh, Ninth and Eleventh Circuits "have explicitly accepted the doctrine." While Plaintiffs provide no jurisprudence to support this contention, according to most authorities, if the juridical link doctrine applies at all, its application is limited to class certification requirements and not standing. *See, e.g.*, Newberg on Class Actions § 3:49 (5th ed. 2014) ("Some courts initially applied the juridical-link exception in the context of standing; however, most courts now hold that [the] juridical-link doctrine applies only in the context of a typicality/commonality inquiry under Rule 23.").

For example, the Second Circuit has stated, "whether or not Rule 23 would permit a plaintiff to represent a class against non-injurious defendants cannot affect the plaintiff's Article III standing to sue the non-injurious defendants. A federal rule cannot alter a constitutional requirement." *Mahon v. Ticor Title Ins. Co*., 683 F.3d 59,

64 (2d Cir. 2012).  Also, the Fourth Circuit tangentially addressed the juridical link doctrine in *Faircloth v. Fin. Asset Sec. Corp. Mego Mortgage Home Owner Loan Trust*, 87 Fed.Appx. 314 (4th Cir.2004), finding that, "even were we to recognize the juridical link doctrine as a basis for standing, [plaintiff] could not invoke it successfully." *See also*, *Forsythe v. Sun Life Fin., Inc*., 417 F. Supp. 2d 100, 119 n.19 (D. Mass. 2006) ("[The juridical link] doctrine, developed in the context of class certification analysis under Fed. R. Civ. P. 23, should properly remain in the analysis of adequacy and typicality of plaintiffs for which it was originally conceived."); *Siemers v. Wells Fargo & Co.*,  2006 WL 3041090, at *6 (N.D. Cal. Oct. 24, 2006) (same); *Popoola v. MD-Individual Practice Ass'n, Inc*., 230 F.R.D. 424, 431 (D. Md. 2005) (same); *In re Franklin Mut. Funds Fee Litig*., 388 F. Supp. 2d 451, 462 n.7 (D.N.J. 2005) (same); *Matte v. Sunshine Mobile Homes, Inc*., 270 F. Supp. 2d 805, 822, 828 (W.D. La. 2003) (same)).

Likewise, this Court has serious reservations about adding the "juridical link" doctrine into its Article III standing analysis, and agrees that the Constitutional requirement of Article III standing should not be trumped by a judge-made doctrine (*i.e*., the "juridical link" doctrine) that has never been adopted by this Circuit. "The short answer to this argument is that the juridical link doctrine has no bearing on the issue of standing. Instead, it provides an exception to the Rule 23(a) requirement of

typicality and/or adequacy of representation in class actions against multiple defendants." *Matte*, 270 F.Supp.2d at 822.

## *V. Conclusion*

For the reasons provided in the foregoing, the undersigned recommends that the Motion To Dismiss filed by Defendants, Flowers Baking Co. Of New Orleans, LLC and Flowers Baking Co. Of Alexandria, LLC [Rec. Doc. 83] be GRANTED and Plaintiffs' claims against Defendants be DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds

of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415

(5th  Cir.1996).

THUS DONE AND SIGNED this 13th  day of October, 2016.

_____
**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**