# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

Antoine Richard, et al.                        Civil Action No. 6:15-cv-2557

versus                                         Judge S. Maurice Hicks, Jr.

Flower Foods, Inc., et al..                    Magistrate Judge Carol B. Whitehurst

## ORDER ON CONDITIONAL CERTIFICATION

Before the Court are the following: (1) a Motion for Conditional Class Certification pursuant to 29 U.S.C. § 216(b), filed by Plaintiffs Antoine Richard, Darrell Richard, Chris Meche, Derby Doucet, Sr., Kevin Rabeaux, and Mark Louviere, on behalf of themselves and all others similarly situated, (Doc. 105); (2) Memorandum in Opposition, filed by Defendants Flower Foods, Inc. ("Flower Foods"), Flowers Baking Company of Lafayette, LLC ("FBC-Lafayette"), Flowers Baking Company of Baton Rouge, LLC ("FBC-Baton Rouge"), and Flowers Baking Company of Tyler, LLC ("FBC-Tyler") (collectively "Defendants")[1] (Doc. 118); (3) Plaintiffs' Reply (Doc. 127); and (4) Defendants' Sur-Reply (Doc. 135). For the following reasons,  Plaintiffs' Motion for Conditional Class Certification (Doc. 105) will be granted.

---

[1]  Defendant Flowers Baking Company of Alexandria, LLC ("FBC-Alexandria") joined in the Memorandum in Opposition.  The court, however, recently dismissed without prejudice Plaintiff's claims against both FBC-Alexandria and Defendant Flowers Baking Company of New Orleans for lack of subject matter jurisdiction.  (Doc. 133)

## I.  Background

This is a collective action for violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq* ("FLSA"), and the Louisiana Wage Payment Act. La. R.S. § 23:631 ("Wage Act").  Flowers Foods manufactures, sells, and distributes bakery and snack food products to retail customers.  (Doc. 5 at ¶ 32.)  Plaintiffs assert that they entered into Distributor Agreements with Flowers Foods' subsidiary bakeries—including FBC-Lafayette, FBC-Baton Rouge, and FBC-Tyler—to serve as distributors of the various baked goods and related products.  (Doc. 5 at ¶¶ 1, 17.)

Plaintiffs consist of six-named distributors that deliver Defendants' bakery products from Defendants' local warehouses to their local retailers of bakery and bread products at the time and place specified by Defendants.  (Doc. 5 at §§ 5-10, 34).  These Plaintiffs have been joined in this action so far by numerous other former and current distributors.  Plaintiffs state they were improperly classified as independent contractors and seek to assert their claims on behalf of:

> all individuals who, through a contract with Defendants or otherwise, distribute or distributed for Defendants under agreements with [the subsidiary bakeries] or any other affiliates or subsidiaries of Flowers Foods, Inc. which employ distributors working within the State of Louisiana; and who were classified by Defendants as "independent contractors" . . . anywhere at any time in the United States from the date that is three years preceding the commencement of this action

through the close of the Court-determined opt-in period and who file a consent to join this action pursuant to 29 U.S.C. § 216(b).

(Doc. 5 at ¶¶ 1,17.)   Thus, this collective action is limited to distributors in Louisiana and seeks compensation and a declaration that the employees are entitled to protections of the FLSA and the Wage Act.   (Doc. 5 at ¶¶ 57, 66, 73, Prayer for Relief.)

## II. Motion for Conditional Class Certification

Plaintiffs move to conditionally certify a collective action under 29 U.S.C. § 216(b) of the FLSA, (Doc. 105.)  Plaintiffs assert that they can show that the class of people working for Defendants as distributors is similar-situated. (Doc. 105-1 at p. 17.) Specifically, Plaintiffs assert that their "allegations along with the supporting evidence are sufficient to show that all Distributors working for Defendants were subject to a common illegal pay policy – Defendants misclassify them as independent contractors, control virtually all aspects of their work, but did not (and do not) pay them the premium overtime wages they are due." (Doc. 105 at p. 18.)

As part of their motion, Plaintiffs ask that judicially-approved notice be mailed to all Putative Class Members.  (Doc. 105-1 at p. 20.).  If granted conditional certification, they ask the Court to order the Defendants to provide

3

them with certain contact information relating to past and current distributors in order to facilitate notice of this class action. (Doc. 105-1 at pp. 20-21.) In addition to seeking a 90-day notice period for collective action members to join, Plaintiffs also seek Court approval "to send Reminder Notices to an any collective-action members who have not responded 45 days and 75 days after the mailing of initial notice. (Doc. 105-1 at p. 21.) Lastly, Plaintiffs "request that the court order Defendants to post the same notification . . . at all of Defendants' warehouses in the same areas in which they are required to post FLSA notices." (Doc. 105-1 at p. 21.)

Defendants deny Plaintiffs' allegations and oppose collective action certification under 29 U.S.C. § 216(b). (Doc. 118.) Their primary position is that the plaintiffs are not "similarly situated" for purposes of maintaining a collective action. (Doc. 118 at pp. 7-8.) Even if the court were inclined to grant conditional certification, Defendants contend that such certification must be limited to the seven warehouses from which the named and opt-in Plaintiffs operated. (Doc. 118 at p. 30-34.)

Defendants further urge the Court to "require the parties to meet and confer regarding the terms of the notice." (Doc. 118 at p. 34.) They cite three non-exhaustive defects in Plaintiffs' Proposed Notice. First, because the proposed 90-

day notice period is too long, Defendants ask the Court to approve a shorter 45-day notice period.  (Doc. 118 at p. 34.)  Second, Defendants argue that the reminder notices sought by Plaintiffs are not justified.  (Doc. 118 at p. 35.)  Lastly, Defendants contend that it would be inappropriate to require posting of the notice on the workplace as no evidence has been presented to show that mailing the notice alone is insufficient.  (Doc. 118 at pp. 35-36.)

In reply, Plaintiffs reiterate that they have provided substantial allegations that the putative class members were the victims of a single decision, policy, or plan.  (Doc. 127 at p. 5-14.)  According to Plaintiffs, individualized inquiries are not necessary at this stage in the proceedings and potential affirmative defenses are inappropriately raised at this time to defeat conditional certification.  (Doc. 127 at p. 16-18.)  They further urge that the evidence submitted warrants a state-wide class certification.  (Doc. 127 at p. 14-16.)  Lastly, Plaintiffs contend that it is unnecessary to direct the parties to meet and confer regarding the contents of the notice.  (Doc. 127 at p. 18.)  Plaintiffs concede that a 60-day notice period is sufficient but maintain that reminder postcards and posted notices in the warehouses are appropriate in this case.  (Doc. 127 at pp. 18-19.)

5

# III.  Discussion

## A.    *Legal Standard*

The Fair Labor Standards Act ("FLSA") sets a general minimum wage for employees engaged in commerce. 29 U.S.C. § 206(a)(1). Section 207(a) requires covered employers to compensate nonexempt employees at overtime rates for time worked in excess of statutorily defined maximum hours. 29 U.S.C. § 207(a). Section 216(b) creates a cause of action for employees against employers violating the overtime compensation requirements. 29 U.S.C. § 216(b).  This section provides:

> An action . . . may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id.*

The FLSA affords workers the right to sue collectively on behalf of themselves and others "similarly situated" for violations of the Act's minimum wage provisions and overtime protections.  29 U.S.C. § 216(b).  "Unlike class actions governed by Rule 23 of the Federal Rules of Civil Procedure, in which potential class members may choose to opt out of the action, FLSA collective actions require potential class members to notify the court of their desire to opt-in

6

to the action." *In re Katrina Canal Breaches Consolidated Litigation*, 2009 WL 1649501, at *5 (E.D. La. 2009).  Courts are provided with discretionary power to implement the collective action procedure through the sending of notice to potential plaintiffs. *Lentz v. Spanky's Restaurant II, Inc*., 491 F. Supp. 2d 663, 667 (N.D. Tex. 2007) (citing *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).  Notice must be "timely, accurate and informative." *Hoffmann–La Roche*, 493 U.S. at 172.

Courts recognize two methods to determine when making the "similarly situated" inquiry and determining whether notice should be given.  These methods are the two-step *Lusardi* approach and the class-action based *Shushan* approach. *See Lusardi v. Xerox Corp*., 118 F.R.D. 351 (D. N.J. 1987); *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D. Colo. 1990).  In *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1216 (5th Cir.1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), the Fifth Circuit found it unnecessary to determine which method is most appropriate. *Id.*  The prevailing method, however, seems to be the "two-step" approach. *See, e.g., Lang v. DirecTV, Inc*., 735 F. Supp. 2d 421, 435 (E.D. La. 2010); *Lachapelle v. Owens-Illinois, Inc*., 513 F.2d 286, 288 (5th Cir.1975) (finding a "fundamental" difference between Rule 23 class actions and FLSA collective actions). Based on the foregoing, the undersigned finds that

7

the "two-step" method is the preferred method in the Fifth Circuit for the analysis

and will be used by this Court.

> The Fifth Circuit described the "two stage" *Lusardi* approach in detail:

> The first determination is made at the so-called "notice stage."  At the notice stage, the district court makes a decision-usually based only on the pleading and any affidavits which have been submitted whether notice of the action should be given to potential class members.

> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class.   If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in."   The action proceeds as a representative action throughout discovery.

> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial.  At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question.  If the claimants are similarly situated, the district court allows the representative action to proceed to trial.  If the claimants are not similarly situated, the district court decertifies the class, and the opt in plaintiffs   are   dismissed   without   prejudice.      The   class representatives—i.e. the original plaintiffs—proceed to trial on their individual claims . . . .

*Mooney*, 54 F.3d at 1213–14.

As this case is presently at the "notice stage," the Court must make a

decision whether conditional certification should be granted and whether notice of

the action and right to opt-in should be given to potential class members.  "At the

notice stage, the plaintiff bears the burden of making a preliminary factual showing that at least a few similarly situated individuals exist.  The plaintiff may satisfy his or her burden through submission of evidence in the form of pleadings, affidavits and other supporting documentation."  *Lima v. International Catastrophe Solutions, Inc.*, 493 F. Supp. 2d 793, 798 (E.D. La. 2007).

"At the notice stage, 'courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination.'"  *Mooney*, 54 F.3d at 1214 n. 8.  "'Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class' where potential class members receive notice and the opportunity to opt-in."  *Melson v. Directech Southwest, Inc.*, 2008 WL 2598988, at *3 (E.D. La. 2008) (quoting *Mooney*, 54 F.3d at 1214).  The lenient standard requires only substantial allegations that potential members "were together the victims of a single decision, policy, or plan . . . ."  *Mooney* at 1214 n. 8.

**B.    *Analysis***

**1.    *Conditional Class Certification***

To support their assertion that conditional class certification is appropriate, Plaintiffs allege that each distributor has entered into a Distributor Agreement with

Flowers Foods, which sets forth the terms of the relationship, has no specific end date, and can be terminated by either party at any time with limited notice.  (Doc. 5 at ¶ 35).   Several Plaintiffs describe the initial working relationship under the Distributor Agreement as follows:

> At the time I became a Distributor for Flowers, I purchased from Flowers the right to sell and distribute certain product brands to Flowers customers within a specific geographic territory defined by Flowers.  For my services, Flowers pays me a percentage of the amount of bakery products Flowers customers purchase within my specific geographic area.  Flowers pays a portion of my social security tax and medicare tax.  I have been issued a W-2 form each year I have been employed by Flowers.  My primary job is to deliver Flowers' products to Flowers's customers.  As a Distributor, I am required to pay all costs associated with the delivery of the bakery products to customers, including delivery vehicles, gas and some equipment.

(*See* Doc. 105-3 at pp. 338-39, 342-43, 346-47, 350-51, 354-55).

Plaintiffs further allege that distributors work for Defendants pursuant to substantially similar  Distributor Agreements that outline certain compensation and job performance expectations.  (*See* Doc. 105-2 at pp. 10-220.)  Pursuant to these agreements, Distributors purchase from Defendants the right to sell and distribute certain product brands within a specific geographic territory as defined by Defendants.  (Doc. 105-2 at pp. 11, 27.)

The Distribution Agreements generally provide Defendants the ability to negotiate directly with its retail customers, set pricing terms, and control essentially

all facets of the customer relationship.  (Doc. 5 at ¶ 36.)  As distributors, Plaintiffs

"must strictly follow Defendants' instructions and adhere to the pricing, policies,

and procedures negotiated between Defendants and their retail customers."  (Doc.

5 at ¶ 40.)  According to Plaintiffs, the distributor's "job duties and ability to

control to earn income is tied directly to the sale and promotion of products outside

of their control."  (Doc. 5 at ¶ 38.)  Plaintiffs have submitted a document entitled

"Distributor Checklist," which all distributors must sign, indicating that distributors

perform their job duties in a uniform fashion.  (Doc. 127-1 at pp. 20-21.)

Plaintiffs state in their affidavits that they all worked in excess of 40 hours

per week in order to fulfill their job duties, which includes (1) arriving at Flowers

Foods warehouses early in the morning to load the delivery vehicles with products;

(2) driving to Flowers Foods' various customers in order to stock the customer's

shelves with product; (3) working seven days a week; (4) restocking and

organizing shelves; and (5) performing call backs for the purpose of delivering

fresh products to stores.  (Doc. 5 at ¶¶ 5-10, 55; Doc. 105-3 at pp. 339, 343, 347,

351, 355, 359, 363, 367, 371, 375, 379, 383, 387.)  Each Plaintiff explains that:

> I am required to use Flowers' hand held computer and utilize Flowers'
> computer system which Flowers provides to me.  The hand held
> computer system tells me the price I must charge for the products, the
> quantity to deliver, whether I have made all of my required stops,
> historical sales and similar information.  Flowers monitors my

> activities by using the hand held computer system. All of this information is maintained in a central computer system controlled by Flowers. I also use the hand held system to place orders and products from Flowers. Flowers reserves the right to change the orders I place without my consent and Flowers has historically made changes to my orders without my consent. I pay an administrative fee and warehouse fee to Flowers which is deducted from my weekly settlement checks.

(*Id.*)   Despite working overtime, none of the distributors received overtime premium wages.  (*Id.*)

Defendants oppose the motion for conditional class certification, contending that: (1) Plaintiffs' allegations are based solely on conclusory allegations that lack personal knowledge; (2) no common proof exists that the Plaintiffs are "employees" as a matter of "economic reality" under the FLSA; (3) Plaintiffs' evidence is insufficient and contradicted by their own deposition testimonies; (4) Plaintiffs openly admit in their depositions that they have no personal knowledge of how distributors operate in other warehouses or even in their own warehouses; (5) the common classification of each distributor as an "independent contractor" is insufficient to constitute a "common plan" that justifies conditional certification; (6) numerous individualized determinations are required for each Plaintiff to opt in; and (7) individualized inquiries necessary to adjudicate multiple defenses preclude conditional certification.  (Doc. 118 at pp. 17-30.)  As discussed below, none of the

contentions advanced by Defendants persuades the undersigned to deny conditional class certification.

At the outset, the Court recognizes that Plaintiffs have submitted affidavits containing similar language regarding the nature of their duties and relationship with defendants under the distributor agreements.  "However, simply because a declaration employs boilerplate language does not mean that the statements do not reflect personal knowledge."  *Lang v. DirecTV, Inc.*, No. 10-1085, 2011 WL 6934607, at *9 (E.D. La. 2011).  "There is no rule that requires plaintiffs to compose affidavits in their own words, without the assistance of counsel, and common declarations may be reasonable where there is great similarity."  *Id.* (internal quotations and citation omitted).  Each of the affidavits submitted by Plaintiffs is based on personal knowledge and presents allegations indicating that all distributors were subjected to a common decision, policy, or plan – their mis-classification as independent contractors.

Defendants vigorously contend, however, that individualized factual and legal inquiries are required to adjudicate Plaintiffs' claims, which is inconsistent with collective class treatment.  (Doc. 118 at pp. 25-26.)  Defendants further argue that Plaintiffs' evidence regarding a common policy or plan is contradicted by the deposition testimony of several putative class Plaintiffs.  Defendants cite testimony

in these depositions as: (1) contradicting statements proffered in Plaintiffs' affidavits; (2) establishing that Plaintiffs operate their distributorships in materially different ways; and (3) showing Plaintiffs' lack of personal knowledge as to the practices at other warehouses.  (Doc. 118 at pp. 7, 12-17, 22-25).

In arguing that highly individualized inquiries are necessary to adjudicate Plaintiffs' FLSA claims, Defendants ask the Court utilize the "economics reality test."  (Doc. 118 at pp. 119-21.)  Pursuant to FLSA, overtime protections only apply to employees.  To determine whether a plaintiff designated as an independent contractor may be deemed an FLSA employee, courts inquire into the "economic realities" between plaintiffs and defendants.  *Thibault v. Bellsouth Telecomm., Inc.*, 612 F.3d 843, 845 (5th Cir. 2010).  A non-exhaustive list of five factors is considered when examining the economic realities of this relationship: (1) the permanency of the relationship; (2) the degree of control exercised by the alleged employer; (3) the skill and initiative required to perform the job; (4) the extent of relative investments of the worker and the alleged employer; and (5) the degree to which the worker's opportunity for profit and loss is determined by the alleged employer." *Id.* at 846.

Courts are split as to whether the "economic realities test" may be utilized to determine whether to conditionally certify an FLSA class involving improper

14

independent contractor designation. *Prejean v. O'Brien's Response Management, Inc.*, Nos. 12-1045, 12-1716, 12-1533, 2013 WL 5960674, at *7 (E.D. La. Nov. 6, 2013). Some courts have held that the "economic realities test" only is appropriate at the decertification stage. *See, e.g. Gonzalez v. Tier One Sec., Inc.*, No. SA–12–CV–806–XR, 2013 WL 1455587, at *2 (W.D.Tex. Apr.8, 2013) ("Defendants' argument that their classification of the [plaintiffs] as independent contractors (and not employees) wholly dictates that conditional certification is inappropriate is without merit."); *Jones v. JGC Dallas LLC*, No. 3:11–CV–2743–O, 2012 WL 6928101, at *4 (N.D.Tex. Nov. 29, 2012) ("Defendants argue that this case is not appropriate for adjudication as a collective action because Plaintiffs cannot demonstrate the requisite employer/employee relationship. This is a merits-based argument, and courts are not to engage in merits-based analysis at the notice stage of a collective action."); *Walker v. Honghua America, LLC*, 870 F. Supp. 2d 462, 471 (S.D. Tex. May 7, 2012) ("The Court believes that the economic factors test is likely not appropriate for determination at the first stage of FLSA class certification.").

Other district courts have held that the "economic realities test" should be utilized to assess whether class members are similar enough to warrant conditional class certification. *See, e.g., Christianson v. NewPark Drilling Fluids, LLC*, No.

15

CIV.A. H–14–3235, 2015 WL 1268259, at *4 (S.D. Tex. Mar.19, 2015) (holding that conditional certification requires members of the putative class to be "similarly situated for purposes of applying the economic realities test at the appropriate phase of [the] case in the future"); *Andel v. Patterson–UTI Drilling Co., LLC*, 280 F.R.D. 287, 289 (S.D. Tex. 2012) (holding that "a court 'must analyze whether the [putative collective action members] are similarly situated with respect to the analysis it would engage in to determine whether the workers are employees or independent contractors.'").

In this case, Defendants have submitted evidence raising questions about whether the putative class plaintiffs may ultimately be deemed independent contractors as opposed to employees for FLSA purposes.  The undersigned agrees, however, with those courts that find such inquiry as to the true employment status of Plaintiffs should be addressed at the decertification stage after discovery has occurred.  The issues raised by Defendants essentially go to the merits of this case, which this Court is not faced with resolving at this time.[2]  *McKnight v. D. Houston,*

---

[2]  The Court further notes that it is not required to consider the deposition testimony cited by Defendants in connection with the motion for conditional class certification.  *White v. Integrated Electronic Section Technologies, Inc.*, Nos. 11-2186, 12-359, 2013 WL 2903070, at *6 (E.D. La. June 13, 2013).  *See also Mooney*, 54 F.3d at 1213-14 (explaining that, at the notice stage under *Lusardi*, a court's determination of whether notice should be given is usually made on the basis of "only . . . the pleadings and affidavits which have been submitted").

*Inc.*, 756 F. Supp. 2d 794, 802 (S.D. Tex. 2010) (explaining that the conditional class certification stage is not "an opportunity for the court to assess the merits of the claim by deciding factual disputes or making credibility determinations").

Defendants further contend that individualized inquiries are necessary at this stage in the proceedings to adjudicate multiple defenses, which precludes conditional class certification.  (Doc. 118 at p. 29.)   Defendants specifically reference (1) the Motor Carrier Act exemption; (2) the outside sales exemption; and (3) the fact that some distributors have signed arbitration agreements precluding their ability to opt into the class.  (Doc. 118 at pp. 29-30.)  Whether any or all of the putative plaintiffs are subject to one of more of the exemptions cited by Defendants, however, cannot be determined on the limited record before the Court prior to discovery. *See Jirak v. Abbott Laboratories, Inc.*, 566 F. Supp. 2d 845, 850 (N.D. Ill. 2008).   The Court, therefore, finds that Defendants' affirmatively defenses are more properly adjudicated after discovery.

The issue before the Court is whether Plaintiffs have satisfied the standard necessary for notice to be provided to all putative class members under *Lusardi*. Plaintiffs have satisfied this lenient standard by presenting substantial allegations, as supported by affidavits and other evidence, showing that the distributors are subject to similar job requirements, similar pay provisions, and the Defendants'

17

ability to control many of their daily job functions.  *See Prejean*, 2013 WL 5960674, at *5 (quoting *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 534 (S.D. Tex. 2008)) ("Courts have repeatedly stressed that Plaintiffs must only be similarly—not identically—situated to proceed collectively.")   Based on the substantial allegations and evidence offered, Plaintiffs have established at the notice stage that they and other potential members were victims of a single employment policy or plan and, thus, share an employment status for FLSA purposes.

### 2.   *Scope of the Class Action*

Upon finding that conditional class certification is appropriate, the Court turns to Defendants' request to limit notice to only a few of the warehouses operating in FBC-Tyler and FBC-Baton Rouge.[3]   (Doc. 118 at pp. 24-28.) Defendants have presented evidence detailing that FBC-Baton Rouge has fifteen different warehouses in Louisiana and that FBC-Tyler has four different warehouses. (Doc. 118-2 at p. 3; Doc. 118-3 at pp. 2-3.) According to Defendants, however, notice of the class action should be limited only to those seven

---

[3] Distributors who originally contracted with FBC-Lafayette had their territories transferred to FBC-Baton Rouge in June of 2013.  (Doc. 118-2 at p. 2.)

warehouses in FBC-Tyler and FBC-Baton from which the six-named Plaintiffs and numerous other opt-in plaintiffs operated.  (Doc. 118 at p. 30.)[4]

A district court has the power to modify the parameters of an FLSA class action on its own.  *West v. Lowes Home Centers, Inc.*, No. 6:09-1310, 2010 WL 5582941, at *7 (W.D. La. Dec. 16, 2010).  *See Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930, 931-32 (5th Cir. 2005) (noting the court's power to "limit the scope" of a proposed FLSA collective action).  Defendants cite several cases that have limited conditional class certification where the evidence does not support such certification to a broad class.  *See West*, 2010 WL 5582941 at *7 (recognizing that "the collective action should be limited to [external manager training program] candidates only, reserving the plaintiffs' right to request re-certification with respect to internal managers in training after additional discovery"); *Vanzzini v. Action Meat Distributors, Inc.*, No. H-11-4173, 2012 WL 1941763, at *3 (S.D. Tex. May 29, 2012 (concluding that the plaintiff had satisfied his burden for conditional class certification with respect only to those hourly workers who were classified as contract workers and were not, therefore, on the payroll); *Luvianos v. Gratis Cellular, Inc.*, No. H-12-1067, 2012 WL 6737498, at 9 (S.D. Tex. Dec. 10,

---

[4] Defendants identify the seven warehouses from FBC-Baton Rouge and FBC-Tyler as follows: Acadiana, Birdson, Eunice, Lake Charles, Sulphur, Ruston, and West Monroe.

2012) (limiting conditional class certification only to potential class members who were treated similarly at locations in Texas and Maryland as their was no evidence provided of any similarly situated employees in Oklahoma); *Ross v. S.W. Louisiana Hosp. Ass'n*, No. 2:12-CV-1250, 2013 WL 1818331, at *3 (W.D. La. Apr. 29, 2013) (granting motion to certify collective action but only to the limited extent that the plaintiffs sought certification of employees at the company's Cincinnati office, and not the other office locations).

The cases cited by Defendants are distinguishable from the instant action as they do not pertain to independent contractors who are working pursuant to similar distributor agreements and seeking class treatment as employees. Defendants then proceed to cite a case similar to this one involving a Flowers Foods' subsidiary in Tennessee, *Stewart v. Flowers Foods, Inc.*, No. 15-cv-1162, 2016 WL 5122041 (W.D. Tenn. Aug. 12, 2016). In *Stewart*, the plaintiffs filed an FLSA case and sought national certification of a distributor class. *Id.* at *4. The Tennessee district court rejected conditional class certification on a nationwide basis, finding that certification should be limited to the four warehouses from which the plaintiffs presented evidence. *Id.*

While the plaintiff in *Stewart* requested national certification of a distributor class, Plaintiffs in this action seek, at most, state-wide conditional class

certification. Plaintiffs have presented sufficient evidence to support class certification that goes beyond the seven warehouses urged by Defendants. Given the likelihood that all distributors working within every warehouse in FBC-Baton Rouge and FBC-Tyler operated under the same or similar distributor agreement, it is highly conceivable that each distributor was subject to a single employment plan or policy. *See West*, 2010 WL 5582941, at *7-9 (concluding that state-wide class conditional certification was appropriate because, based on evidence that the alleged practice or policy was occurring at certain stores, "it is not inconceivable that such a policy or practice was occurring at other Louisiana stores, evidence of which has yet to be discovered"). Accordingly, upon evidence before the Court and pursuant to the lenient standard applicable at the notice stage, the undersigned concludes that conditional class certification is appropriate with regard to any distributor working either for any of the fifteen warehouses associated with FBC-Baton Rouge or the four warehouses associated with FBC-Tyler.

### 3. *Proposed Notice*

Plaintiffs seek judicial approval of their Proposed Notice, which is to be sent to all putative class members. (Doc. 105-2 at pp. 2-6). They first ask the court "to order the Defendants to produce the following within (10) days of its Order: an updated computer readable data file containing information necessary to facilitate

21

notice, including the name, last known mailing address, last known telephone number, email address, employment dates as a distributor, date of birth and the last four digits of the social security numbers of each current and former distributors of the Defendants who have worked as a distributor during the three years prior to October 21, 2015." (Doc. 105-1 at pp. 20-21.) Defendants do not oppose this request, and the Court agrees with Plaintiffs that they should have access to this information in order to effect notice. *See Mejia v. Brothers Petroleum, LLC*, No. 12-02842, 2014 WL 3530362, at *4 (E.D. La. July 16, 2014); *Case v. Danos & Curole Marine Contractors, L.L.C.*, No. 14-2775, 2015 WL 1978653, at *7 (E.D. La. May 4, 2015).

Plaintiffs seek a 90-day notice period for collective action members to join the class action. (Doc. 105-1 at p. 25.) Defendants contend that such a 90-day period is too long and instead ask the Court to approve a 45-day notice period. (Doc. 118 at p. 34.) Plaintiffs concede in their reply that a 60-day notice period would be sufficient. (Doc. 127 at p. 18.) The Court finds that an opt-in period of sixty (60) days is appropriate in this case. *See Coyle v. Flowers Food, Inc.* No. CV-15-1372, 2016 WL 4529872, at *7 (D. Ariz. Aug. 30, 2016) (concluding in a similar FLSA action against Flowers Foods that "[a] 60 day opt-in period is sufficient and will ensure efficient resolution of this action").

Plaintiffs next seek Court approval to: (1) provide two Reminder Notices to any collective-action members within the opt-in period; and (2) post the Notice mailed to potential class members at all of Defendants' warehouses in the same areas they are required to post FLSA notices.  (Doc. 105-1 at p. 21.)   While reminder notices are unnecessary, the Court concludes that the posting of Notices at each warehouse of FBC-Baton Rouge and FBC-Tyler is an efficient, cost effective method to notify potential opt-in distributors of this class action and would not be burdensome on Defendants.  *See Roberts v. S. B. Southern Welding, LLC*, No. 3:14-CV-3617-B, 2015 WL 8773610, at *3 (N.D. Tex. Dec. 15, 2015) (sustaining objection to allowing reminder notices because they would be unnecessary and potentially be interpreted as encouragement by the court to opt into the lawsuit); *Coyle*, 2016 WL 4529872, at *7 ("Posting Notices at the warehouses is a cost-efficient way to notify potential opt-in plaintiffs of the action and places no burden on Defendants").

Lastly, the Court considers Defendants request "to meet and confer regarding the terms of the notice."  (Doc. 118 at p. 34.)  Plaintiffs contend that their Proposed Notice should be approved by the Court as Defendants have made no substantive challenges to the content of the Proposed Notice.  Indeed, Defendants have not enumerated any substantive challenges to the Proposed Notice, and it is, therefore,

23

unnecessary for the Court to compel the parties to meet and confer about same.  As instructed below, however, the Court will require Plaintiffs to submit a revised copy of the Proposed Notice for final court review.

## IV.  Conclusion

For the foregoing reasons,

IT IS ORDERED that Plaintiffs' Motion for Conditional Class Certification (Doc. 105), including Court-approved notice to be issued to potential class participants, is GRANTED as set forth in this Order.  The above-captioned matter is conditionally certified as a collective action pursuant to 29 U.S .C. § 216(b). Conditional class certification is proper with regard to any distributor working either for any of the fifteen warehouses associated with FBC-Baton Rouge or the four warehouses associated with FBC-Tyler.[5]

IT IS FURTHER ORDERED that Defendant shall have <u>TEN (10) days from the entry of this Court's Order, or through and including December 8, 2016</u>, to provide Plaintiffs with an updated computer readable data file containing information necessary to facilitate notice, including the name, last known mailing address, last known telephone number, email address, employment dates as a

---

[5] Because distributors who originally contracted with FBC-Lafayette had their territories transferred to FBC-Baton Rouge in June of 2013, it is unnecessary to include any warehouses that were associated with FBC-Lafayette.

24


distributor, date of birth and the last four digits of the social security numbers of each current and former distributors of the Defendants who have worked as a distributor during the three years prior to October 21, 2015.

IT IS FURTHER ORDERED that, no later than <u>TEN (10) days from the entry of this Court's Order, or through and including December 8, 2016</u>, Plaintiffs shall submit a revised copy of the Proposed Notice for final Court review.  The revised Proposed Notice should clarify and otherwise state: (1) the Defendants remaining in this action are Flowers Foods, FBC-Lafayette, FBC-Baton Rouge, and FBC-Tyler; and (2) the revised number of distributors who have opted-in to this lawsuit as of the date of this Order.

IT IS FURTHER ORDERED that, once the revised Proposed Notice is approved, Plaintiffs are AUTHORIZED to: (1) disseminate the approved Notice to prospective class members via first class mail and email; (2) post the Notice to prospective class members at each of the warehouses associated with FBC-Baton Rouge and FBC-Tyler in the same areas they are required to post FLSA notices.

IT IS FURTHER ORDERED that prospective class members may opt in to this collective action if: (1) they have mailed, faxed, or emailed their consent form to counsel for the class within sixty (60) days after the Notice and consent forms

have been mailed out to the class and otherwise posted at each appropriate warehouse; or (2) they show good cause for any delay.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 28th day of November, 2016.

_____
**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**