IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **ANTOINE RICHARD, DARRELL RICHARD, CHRIS MECHE, DERBY DOUCET, SR., KEVIN RABEAUX, and MARK LOUVIERE,** individually, and on behalf of all similarly situated individuals | **CIVIL ACTION NO. 15cv2557** <br><br> **JUDGE HICKS** |
| **VERSUS** | **MAGISTRATE WHITEHURST** |
| **FLOWERS FOODS, INC.; FLOWERS BAKING COMPANY OF LAFAYETTE, LLC; FLOWERS BAKING COMPANY OF BATON ROUGE, LLC; FLOWERS BAKING COMPANY OF ALEXANDRIA, LLC; FLOWERS BAKING COMPANY OF NEW ORLEANS, LLC; and FLOWERS BAKING COMPANY OF TYLER, LLC** | |

**SECOND AMENDED AND RESTATED
<u>CLASS AND COLLECTIVE ACTION COMPLAINT</u>
(EQUITABLE RELIEF SOUGHT)**

Plaintiffs, on behalf of themselves and other similarly situated individuals, by and through their undersigned counsel file this Second Amended Class and Collective Action Complaint as follows:

<u>NATURE OF ACTION</u>

1. This is a Class and Collective Action Complaint brought to obtain declaratory, injunctive and monetary relief on behalf of a class of individual employees, who Defendants have misclassified as independent contractors, who distribute fresh bakery products for Defendants, Flowers Foods, Inc.; Flowers Baking Company of Lafayette, L.L.C.; Flowers Baking Company of Baton Rouge, L.L.C.; Flowers Baking Company of Alexandria, L.L.C.; Flowers Baking Company of New Orleans, L.L.C.; Flowers Baking Company of Tyler, L.L.C.; and

any other affiliates or subsidiaries of Flowers Foods, Inc. which employ distributors working within the state of Louisiana (collectively, "Flowers"). Plaintiffs allege violations of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; and the Louisiana Payment of Employees law, LSA-R.S. 23:631 et seq.

2.  Defendants employ "distributors" to deliver fresh baked goods to their customers (primarily grocery stores, mass retailers, and fast food chains). In addition to delivering Flowers' products to Defendants' customers, distributors stock the products on store shelves and assemble promotional displays designed and provided by Defendants. Plaintiffs are not required to increase sales or customers, or contract directly with customers, are not compensated with bonuses for new customers or increased sales, and are not required to attend sales training or conferences.

3.  The FLSA collective group consists of all individuals employed as distributors for Flowers, and are or were misclassified as independent contractors, anywhere in Louisiana, at any time during the applicable limitations period ("Class" or "Distributors"). Plaintiffs bring their remaining state-law claim on behalf of the same Class of Distributors as a class.

4.  This action challenges both the classification of the Class as independent contractors, and Defendants' denial to Plaintiffs and the Class of the rights, obligations, privileges and benefits owed to them as employees under the FLSA, including overtime premium pay. Plaintiffs also assert that Flowers violated the Louisiana Payment of Employees law, LSA-R.S. 23:631 et seq., by failing to pay overtime premium pay and by illegally assessing fines against employees and deducting such sums from their wages as fines.

PARTIES

5.     Plaintiff Antoine Richard ("A. Richard") is a resident of Lafayette Parish, Louisiana who works for Flowers in that state. He performs delivery and merchandising services to local retailers of bakery and bread products locally manufactured and sold by Flowers. Plaintiff A. Richard operates out of a warehouse run by Flowers. Plaintiff A. Richard regularly works 50–55 hours per week and has never received overtime premium pay at any time.

6.     Plaintiff Darrell Richard ("D. Richard") is a resident of Lafayette Parish, Louisiana who works for Flowers in that state. He performs delivery and merchandising services to local retailers of bakery and bread products locally manufactured and sold by Flowers. Plaintiff D. Richard operates out of a warehouse run by Flowers. Plaintiff D. Richard regularly works 50–55 hours per week and has never received overtime premium pay at any time.

7.     Plaintiff Chris Meche ("Meche") is a resident of Lafayette Parish, Louisiana who works for Flowers in that state. He performs delivery and merchandising services to local retailers of bakery and bread products locally manufactured and sold by Flowers. Plaintiff Meche operates out of a warehouse run by Flowers. Plaintiff Meche regularly works 50–55 hours per week and has never received overtime premium pay at any time.

8.     Plaintiff Derby Doucet, Sr. ("Doucet") is a resident of St. Landry Parish, Louisiana who works for Flowers in that state. He performs delivery and merchandising services to local retailers of bakery and bread products locally manufactured and sold by Flowers. Plaintiff Doucet operates out of a warehouse run by Flowers. Plaintiff Doucet

regularly works 50–55 hours per week and has never received overtime premium pay at any time.

9. Plaintiff Kevin Rabeaux ("Rabeaux") is a resident of Lafayette Parish, Louisiana who works for Flowers in that state. He performs delivery and merchandising services to local retailers of bakery and bread products locally manufactured and sold by Flowers. Plaintiff Rabeaux operates out of a warehouse run by Flowers. Plaintiff Rabeaux regularly works 50–55 hours per week and has never received overtime premium pay at any time.

10. Plaintiff Mark Louviere ("Louviere") is a resident of Lafayette Parish, Louisiana who works for Flowers in that state. He performs delivery and merchandising services to local retailers of bakery and bread products locally manufactured and sold by Flowers. Plaintiff Louviere operates out of a warehouse run by Flowers. Plaintiff Louviere regularly works 50–55 hours per week and has never received overtime premium pay at any time.

11. Flowers Foods, Inc., is a Georgia corporation with its principal place of business at 1919 Flowers Circle, Thomasville, Georgia, 31757. Flowers hires individuals, whom it misclassifies as independent contractors, to distribute its products by delivering them to grocery stores and stocking the products on store shelves. Flowers employs distributors in 31 states throughout the southern and eastern parts of the United States.

12. Flowers Baking Company of Lafayette, L.L.C.; Flowers Baking Company of Baton Rouge, L.L.C.; Flowers Baking Company of Alexandria, L.L.C.; and Flowers Baking Company of New Orleans, L.L.C., are Louisiana limited liability companies each domiciled at 320 Somerulos Street in Baton Rouge, Louisiana. Flowers Baking Company of Tyler, L.L.C. is a Georgia limited liability company whose principal office is 1919 Flowers Circle, Thomasville, Georgia, 31757. Each, upon information and belief, is a wholly owned subsidiary of Flowers

Foods, Inc. Each Flowers subsidiary hires individuals, misclassifying them as independent contractors, to deliver and stock bakery and bread products from various Flowers warehouses located throughout the state.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1331, federal question jurisdiction, and 28 U.S.C. § 1367, supplemental jurisdiction for state-law claims.

14. Upon information and belief, the Class (and the identical collective-action group) has between 200 and 300 members, and the amount in controversy, in the aggregate, exceeds $5 million exclusive of interest and costs.

15. Venue is proper in this Court under 28 U.S.C §§ 1391(b)(2) and 1391(c) because a substantial part of the events giving rise to the claim occurred in this district.

16. Plaintiffs bring this action on behalf of themselves, a Federal Collective Group, and a Louisiana Class, as hereinafter defined.

## COLLECTIVE ACTION ALLEGATIONS

17. Plaintiffs bring Count I of this Complaint as a collective action, alleging violations of the FLSA on behalf of themselves and all similarly situated individuals. This "Federal Collective Group" is defined as:

> all individuals who, through a contract with Defendants or otherwise, distribute or distributed for Defendants under agreements with Flowers Baking Company of Lafayette, L.L.C.; or Flowers Baking Company of Baton Rouge, L.L.C.; or Flowers Baking Company of Alexandria, L.L.C.; or Flowers Baking Company of New Orleans, L.L.C.; or Flowers Baking Company of Tyler, L.L.C.; or any other affiliates or subsidiaries of Flowers Foods, Inc. which employ distributors working within the state of Louisiana; and who were classified by Defendants as "independent contractors" (collectively "Covered Positions") anywhere at any

time in the United States from the date that is three years preceding the commencement of this action through the close of the Court-determined opt-in period and who file a consent to join this action pursuant to 29 U.S.C. § 216(b).

The "Federal Collective Group" includes the named Plaintiffs in this action. Plaintiffs reserve the right to modify this definition prior to conditional certification of the collective group.

18. Plaintiffs, along with current and former employees of Defendants in Covered Positions, are similarly situated in that they have substantially similar job requirements, pay provisions, and are subject to Defendants' common practice, policy, or plan of controlling their daily job functions.

19. Defendants regularly permitted, required and encouraged Plaintiffs and members of the Federal Collective Group to work more than 40 hours per week without overtime compensation.

20. Upon information and belief, Defendants knew that Plaintiffs and all similarly situated individuals performed work that required overtime pay.

21. Defendants have therefore operated under a scheme to deprive these employees of overtime compensation by failing to properly compensate them for all time worked.

22. Defendants' conduct, as set forth in this Complaint, was willful and has caused significant damages to Plaintiff and all similarly situated individuals.

23. Count I of this Complaint for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) because the claims of the Plaintiffs are similar to the claims of current and former "independent contractors" who worked for Defendants.

24. Defendants are liable under the FLSA for failing to properly compensate Plaintiffs and all similarly situated individuals, and notice of this lawsuit should be sent to them. Those

similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

## CLASS ACTION ALLEGATIONS

25. Plaintiffs bring Count II of this Complaint as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a "Louisiana Class" defined as follows:

> all individuals who, through a contract with Defendants or otherwise, distribute or distributed for Defendants under agreements with Flowers Baking Company of Lafayette, L.L.C.; or Flowers Baking Company of Baton Rouge, L.L.C.; or Flowers Baking Company of Alexandria, L.L.C.; or Flowers Baking Company of New Orleans, L.L.C., or Flowers Baking Company of Tyler, L.L.C.; and any other affiliates or subsidiaries of Flowers Foods, Inc. which employ distributors working within the state of Louisiana; and who were classified by Defendants as "independent contractors" (collectively "Covered Positions") anywhere at any time between the commencement of the applicable prescriptive period under the Louisiana Payment of Employees law through the close of the court-determined opt-out period.

Plaintiffs are included in the Class and reserve the right to redefine the Class prior to class certification.

26. **Numerosity:** Members of the Class are so numerous that their individual joinder is impracticable. The precise number of Class members is unknown to Plaintiffs. However, upon information and belief, it is in excess of 200 individuals. The true number of Class members is, however, likely to be known by Defendants, and thus, Class members may be notified of the pendency of this action by first class mail, electronic, and published notice.

27. **Commonality:** There are numerous questions of law and fact common to Plaintiffs and the Class; those questions predominate over any questions that may affect individual Class members, and include the following:

a. whether Plaintiffs and members of the Class have been misclassified as independent contractors and actually were or are employees of Defendants;

b. whether Defendants have violated the rights of Plaintiffs and members of the Class under the Louisiana Payment of Employees law by illegally assessing fines against their employees and deducting sums as fines from their wages;

c. whether Plaintiffs and members of the Class are entitled to injunctive relief prohibiting Defendants from making illegal deductions from the wages of Plaintiffs and members of the Class;

d. whether Plaintiffs and members of the Class are entitled to declaratory relief declaring that they are employees of Defendants;

e. whether Plaintiffs and members of the Class are entitled to injunctive relief requiring Defendants to convey to Plaintiffs and the Class the rights, privileges and benefits of employees;

f. whether the Defendants have been unjustly enriched at the expense of Plaintiffs and members of the Class; and

g. whether Plaintiffs and members of the Class are entitled to certain types of pension and other benefits because they are employees of Defendants.

28. Typicality: Plaintiffs' claims are typical of the other members of the Class. Plaintiffs are informed and believe that, like other distributors, Plaintiffs were misclassified as "independent contractors" when they actually were employees, and were therefore deprived of the protections of employee status under the law. Plaintiffs had the same duties and responsibilities as other Class members, and were subject to the same policies and practices, and the same or substantially similar conditions of employment.

29. Adequacy: The named Plaintiffs will adequately represent the interests of the Class. They have been treated in the same manner as other Class Members by Defendants and have been damaged by this treatment in the same manner as other Class Members by their loss of overtime premium wages, their exclusion from employee compensation programs, plans and agreements, their payment of Defendants' expenses, and deduction of fines from their wages. Plaintiffs are committed to vigorously prosecuting this action. Plaintiffs have retained attorneys who are well qualified to handle lawsuits of this type. Plaintiffs have no interests that are adverse to those of the Class.

30. Predominance: This case should be certified as a class action because the common questions of law and fact concerning Defendants' liability predominate over any individual questions, including the amount of damages incurred by each person.

31. Superiority: A class action is the only realistic method available for the fair and efficient adjudication of the claims of the Louisiana Class. The expense and burden of individual litigation makes it impracticable for members of the Class to seek redress individually for the wrongful conduct alleged in this Complaint. Were each individual member required to bring a separate lawsuit, the resulting multiplicity of proceedings would cause undue hardship and expense for the litigants and the Court, and create the risk of inconsistent rulings, which would be contrary to the interest of justice and equity. Litigating these claims in a single action will streamline discovery and avoid needless repetition of evidence at trial.

## FACTUAL BASIS

32. Defendant Flowers Foods is a corporation whose business consists of manufacturing, selling and distributing bakery and snack food products to retail customers.

Flowers Foods's bakeries and warehouses are operated in Louisiana by Defendants Flowers Baking Company of Lafayette, L.L.C.; Flowers Baking Company of Baton Rouge, L.L.C.; Flowers Baking Company of Alexandria, L.L.C.; Flowers Baking Company of New Orleans, L.L.C.; Flowers Baking Company of Tyler, L.L.C.; and other affiliates or subsidiaries of Flowers Foods.

33. Defendant Flowers Foods, by and through its affiliates and subsidiaries, bakes and sells locally bread and bread products through local warehouses. Distributors, such as Plaintiffs and members of the Class, arrive at local warehouses and load their vehicles with Defendants' products.

34. Plaintiffs load and then deliver the product from Defendants' local warehouses to Defendants' local retailer-customers at the time and place specified by Defendants.

35. The distribution agreement between Defendants and Plaintiffs has no specific end date and can be terminated by either party at any time with limited notice.

36. Defendant Flowers Foods markets its bakery and snack products to grocery stores, convenience stores and other merchants. Defendant Flowers Foods negotiates directly with the retailers to set virtually all terms of the relationship including:

    a. wholesale and retail prices for products;

    b. service and delivery agreements;

    c. shelf space to display products;

    d. product selection;

    e. promotional pricing for products;

    f. the right to display promotional materials;

    g. print advertisements in retailers' newspaper ads; and

      h.      virtually every other term of the arrangement.

      37.      In some cases, Flowers Foods directly negotiates and agrees with retailers and fast food restaurants to locally manufacture and distribute the local retailer's store brand (or private label) bread products.

      38.      Defendant Flowers Foods often negotiates the above terms for fresh-baked bread and bread products (which are distributed by Plaintiffs and members of the Class) at the same time as it negotiates terms for its shelf-stable snack products (which are not distributed by Plaintiffs). The result is that Plaintiffs' job duties and ability to earn income is tied directly to the sale and promotion of products outside of their control.[1] Plaintiffs do not directly increase sales or customers, or contract directly with customers, are not compensated with bonuses for new customers or increased sales, and are not required to attend sales training or conferences.

      39.      The relationship between each member of the Class and Defendant is essentially the same in material respects.

      40.      Plaintiffs and members of the Class must strictly follow Defendants' instructions and adhere to the pricing, policies, and procedures negotiated between Defendants and their retailer-customers.

      41.      Plaintiffs use Defendants' hand-held computer to log deliveries, and Defendants bills their customers using the data entered into the computer by the employee. The terms of the sale are negotiated directly between Defendants and its retailer-customer.

---

[1] For example, Flowers sometimes negotiates to manufacture private-label bread at a near-zero profit margin in exchange for the retailer providing space for Flowers' drop-shipped shelf-stable cake products. The result is that Flowers profits off the sale of its shelf-stable products while passing the cost and expense of distributing its loss-leading private label bread to Plaintiffs and the Class, all of whom have no right to reject the arrangement without losing their jobs.

42. Plaintiffs place Defendants' products on the retailer-customer's shelves, remove stale or rejected product, and organize the retailer-customer's display shelf. If Defendants are running a sale or promotion, the Distributor also constructs and stocks the promotional display. Defendants usually reimburse Plaintiffs for stale or rejected product.

43. Defendants represented to Plaintiffs that they would run their businesses independently, have the discretion to use their business judgment, and have the ability to manage their businesses to increase profitability.

44. Contrary to its representations, Defendants denied Plaintiffs and the Class benefits of ownership and entrepreneurial skill by retaining and exercising the following rights and control:

   a. the right and control to negotiate the wholesale price for the purchase and sale of products;

   b. the right and control to negotiate shelf space in the stores in the Distributor's territory;

   c. the right and control to negotiate the retail sale price for products;

   d. the right and control to establish all sales and promotions and to require Plaintiffs and the Class to follow them;

   e. the right and control to change orders placed by Plaintiffs and the Class, to require them to pay for product they did not order, load it on their trucks, deliver it to stores, maintain the product in the store, remove the product from the store, and return it to the warehouse for credit, with employees who did not attempt to distribute the extra product billed for the full wholesale price of that product;

   f. the right and control to discipline Plaintiffs, up to and including termination, for reasons including hiring employees to run their routes, taking time off work, or

refusing a specific order to deliver a product to a particular store at a particular time;

g. the right and control to handle customer complaints against Plaintiffs and to take disciplinary action;

h. the right and control to withhold pay for certain specified expenses;

i. the right and control to unilaterally terminate the employment relationship;

j. the right and control to unilaterally vary the standards, guidelines, and operating procedures; and

k. various other rights reserved and control exercised by Defendants.

45. Plaintiffs and Class members were, and are, required to accept Defendants' conditions of employment or face termination.

46. Defendants not only retained the rights and controls listed above, but they exercised the rights to control the particulars of Plaintiffs' performance as well.

47. Defendants routinely control product orders to increase the amount of the order. If a Plaintiff refuses the additional product, Defendants bill the Plaintiff for the product and deduct the cost from the Plaintiff's wages.

48. Defendants require the Plaintiff to process all transactions through a hand held computer it provides to them. The hand held computer controls the product prices, maintains customer information, and monitors business performance.

49. Defendants control the Plaintiffs' and members of the Class' opportunities for profit or loss both by controlling wholesale pricing and negotiating retail pricing. Specifically, Defendants negotiate the sale of its products with major retailers. Plaintiffs and members of the Class then deliver the products to store locations per the agreement between Defendants and the

retailer. Plaintiffs lack discretion as to what products to distribute to a particular store, whether to run sales or promotions, how frequently to service stores, and similar discretion and control that would allow them to increase (or decrease) the profitability of their work.

50. Plaintiffs' investment in equipment to operate their route is relatively low. Many distributors use their personal vehicles and a trailer to transport Flowers products from a local warehouse to retailers. Apart from the purchase of a small trailer, there is no other investment necessary because Defendants provide hand held computer equipment (the cost of which is deducted from Plaintiffs' wages), administrative support, warehouse space (the cost of which is deducted from Plaintiffs' wages), advertisements, promotional materials, bakery trays, market advice, strategic development, and virtually every other business necessity. Defendants even arrange for insurance and/or vehicle financing on behalf of Plaintiffs; Plaintiffs pay for the insurance through wage deductions.

51. The distribution job performed by Plaintiffs and members of the Class does not require specialized skills.

52. Because Defendants misclassified Plaintiffs and members of the Class as non-employees, they were denied the rights and benefits of employment, including, but not limited to overtime premium wages.

53. As an economic reality, the Plaintiffs are dependent upon and controlled by the Defendants, and are not in business for themselves. The work performed by Plaintiffs is an integral part of Defendant's business. Plaintiffs are rarely allowed by the Defendants to exercise any managerial skills to increase their opportunity for profit and or reduce their risk of loss. The relative investment by the Plaintiffs compared to the defendants is extremely low. The work performed by Plaintiffs does not require the exercise of any special technical skills or judgment.

The relationship between the Plaintiffs and the Defendants is relatively permanent. The Plaintiffs do not exercise any meaningful control over the work performed, which is dominated by the Defendants' system of subsidies, deductions, offsets, and mandatory sales.

54. Plaintiffs and members of the Class have incurred expenses for equipment, insurance, product loss, product return, and other expenses that Defendant has required them to purchase or pay, or has deducted from or offset against their wages.

55. Plaintiffs work, on average, a total of 50–55 hours during a seven-day workweek for which no Plaintiff or, upon information and belief, member of Class, has received overtime premium wages.

56. During the relevant time period, Plaintiffs A. Richard, D. Richard, Meche, Doucet, Rabeaux and Louviere worked, on average, in excess of 40 hours every week of the year. Plaintiffs worked 50–55 hours per week on average. They never worked less than 45 hours per week and at times had to work up to 60 hours to service all their assigned stores. They are aware of other Class members who worked 50 hours or more per week on average.

57. Defendant's mischaracterization of the Plaintiffs as independent contractors, the concealment or non-disclosure of the true nature of the relationship, and the attendant deprivation of substantial rights and benefits of employment, are all part of an on-going unlawful practice by Defendants which this Court should enjoin.

<u>COUNT I</u>

FAILURE TO PAY OVERTIME
TO THE FEDERAL COLLECTIVE GROUP
FLSA, 29 U.S.C. §§ 201 *et seq.*
(on behalf of the named Plaintiffs and the Federal Collective Group)

#354122

58. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding Paragraphs.

59. Section 206(a)(1) of the FLSA provides in pertinent part:

Except as otherwise provided in this section, no employer shall employ any of his employees who in any work week is engaged in commerce or in the production of goods for commerce, for a work week longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

60. There are no exemptions applicable to Plaintiffs or to other members of the Federal Collective Group.

61. For purposes of the FLSA, the employment practices of Defendants were and are uniform in all respects material to the claims asserted in this Complaint throughout the portions of United States in which Defendants conduct business.

62. Plaintiffs and the other members of the Federal Collective Group, either regularly or from time to time, worked more than 40 hours per week, but did not receive overtime pay.

63. At all relevant times, Defendants have had gross operating revenues in excess of $500,000.

64. In committing the wrongful acts alleged to be in violation of the FLSA, Defendants acted willfully in that they knowingly, deliberately, and intentionally failed to pay overtime premium wages to Plaintiffs and other members of the Federal Collective Group.

65. As a result of Defendants' failure to pay overtime premium wages, Plaintiffs and the other members of the Federal Collective Group were damaged in an amount to be proved at trial.

66. Therefore, Plaintiffs demand that they and the other members of the Federal Collective Group be paid overtime compensation as required by the FLSA for every hour of overtime worked in any work week for which they were not compensated, plus interest, damages, penalties, and attorneys' fees as provided by law.

COUNT II
VIOLATION OF THE LOUISIANA PAYMENT OF EMPLOYEES LAW
Louisiana Revised Statutes 23:631, *et seq.*
(Brought by Plaintiffs Richard, Richard, Meche, Doucet, Rabeaux and Louviere on behalf of themselves and the Louisiana Class)

67. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding Paragraphs.

68. It is unlawful under Louisiana law for an employer to require or permit an employee to work without paying compensation for all hours worked.

69. It is unlawful under Louisiana law for an employer to require or permit a non-exempt employee to work in excess of 40 hours per week without paying overtime. *Kidder v. Statewide Transp., Inc.*, 2013-594 (La. App. 3 Cir. 12/18/13), 129 So. 3d 875.

70. It is unlawful under Louisiana law for an employer to make deductions from employee wages except "in cases where the employees willfully or negligently damage goods or works, or in cases where the employees willfully or negligently damage or break the property of the employer, or in cases where the employee is convicted or has pled guilty to the crime of theft of employer funds". La. Rev. Stat. Ann. 23:635.

71. Defendants, through their policies and practices described above, willfully violated La. Rev. Stat. Ann. 23:631-635 throughout the Louisiana Class Period, and continuing through the present, as follows:

    a.    By failing to pay Plaintiffs and other members of the Class their earned wages for all hours worked;

    b.    By failing to pay Plaintiffs and other members of the Class overtime pay;

    c.    By making deductions from wages in violation of La. RS 23:635;

    d.    By failing to make, keep, and preserve accurate time records with respect to the Plaintiffs and other members of the Class sufficient to determine their wages and hours; and

    e.    By other practices.

72. Defendants' actions, described above, constitute continuing willful violations of La. R.S. 23:631-635, *et seq*.

73. As set forth above, Plaintiffs and other members of the Louisiana Class have sustained losses in compensation as a proximate result of defendants' violations of law. Accordingly, the Plaintiffs, on behalf of themselves and the Louisiana Class members, seek damages in the amount of their unpaid earned compensation, plus liquidated damages, and attorney's fees and costs as provided by La. R.S. 23:631-635.

74. Plaintiffs request a jury trial on all issues of all claims.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs request of this Court the following relief on behalf of themselves, all members of the Class and all other similarly situated individuals:

    a.    An Order certifying the Federal Collective Group and the Louisiana Class, appointing Plaintiffs as Class Representatives, and appointing the undersigned counsel of record as Class Counsel;

b. An Order for declaratory and injunctive relief designating the Plaintiffs and members of the Federal Collective Group and Louisiana Class as employees and enjoining Defendants from pursuing the illegal policies, acts and practices described in this Complaint;

c. An Order declaring the Defendants' conduct as willful, not in good faith and not based on reasonable grounds;

d. An Order requiring Defendants to compensate Plaintiffs and the other members of the Class for the reasonable value of the benefits Plaintiffs provided to Defendants;

e. Reimbursement of unpaid wages at overtime rates for all overtime work as described in this Complaint;

f. Payment of any penalties or other amounts under any applicable laws, statutes or regulations, including but not limited to liquidated damages;

g. Judgment in favor of each Class member for damages suffered as a result of the conduct alleged herein, to include pre-judgment interest;

h. Award Plaintiffs reasonable attorneys' fees and costs;

i. Award Plaintiffs and the other members of the Class punitive damages in an amount to be determined at trial; and

j. Grant such other and further legal and equitable relief as this Court deems just and necessary.

Dated: February 13, 2017	Respectfully submitted,

/s/ Steven G. Durio
STEVEN G. DURIO (#05230)
RYAN M. GOUDELOCKE (#30525)
DANIEL J. PHILLIPS (#32921)
**Durio, McGoffin, Stagg & Ackermann**
220 Heymann Boulevard (70503)
Post Office Box 51308
Lafayette, LA  70505-1308
Phone:  (337) 233-0300
Fax:     (337) 233-0694
Email:   durio@dmsfirm.com
           ryan@dmsfirm.com
           dan@dmsfirm.com

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing **Second Amended and Restated Class and Collective Action Complaint** was electronically filed with the Clerk of the Court using the CM/ECF system which sent a notice of electronic filing to counsel as indicated by the Court.

Lafayette, Louisiana, this 13th day of February, 2017.

/s/ Steven G. Durio
STEVEN G. DURIO