UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **ANTOINE RICHARD, ET AL** | **CIVIL ACTION NUMBER 15-cv-2557** |
| **VERSUS** | **JUDGE HICKS** |
| **FLOWERS FOODS, INC., ET AL** | **MAGISTRATE JUDGE WHITEHURST** |

_____

## REPLY MEMORANDUM IN SUPPORT OF
## MOTION FOR CLASS CERTIFICATION

**May it Please the Court**:

Defendants, **Flowers Foods, Inc.**, et al (together, "Flowers"), have filed (Rec. Doc. 317) a Response in Opposition to that Motion for Class Certification (Rec. Doc. 299) filed by Plaintiffs, **Jerry Bell et al**, on behalf of themselves and a class of individuals as defined in that Motion. In response to Defendants' arguments against class certification, Plaintiffs respectfully submit this Reply Memorandum in Support.

Briefly stated, Flowers' effort to avoid class certification is long on paper and short on ink.

Defendants employ strong language on the law, only to find their own explication of it outdated and wrong. They raze forests for enough paper to delve into minutiae they are concerned would not convince a jury – so they seek to try the matter now, in its prematurity. But the law forbids that trial here.

And the facts, notwithstanding those minutiae, militate in favor not of hundreds of trials, but in favor of **one**. The Motion should be granted.

### I. Rule 23(a)

**A. Matters Undisputed:** *Numerosity, Typicality, Ascertainability*

Preliminarily, it must be noted that Defendants do not contest at all Plaintiffs' allegations that the proposed class meets two of four threshold requirements imposed by F.R.C.P. 23(a): numerosity and typicality.[1] Flowers also does not contest Plaintiffs' demonstration that they meet the implicit "ascertainability" requirement read into Rule 23 by the Court of Appeals for the Fifth Circuit.[2]

As to Rule 23's explicit requirements, Defendants do not brief numerosity at all; joinder of the hundreds[3] of alleged class members is impracticable.[4]

Likewise, the word "typicality" does not appear in Defendants' Memorandum. Because "this claim revolves around [Flowers'] conduct, as opposed to the characteristics of a particular class member's claim, no individualized proof will be necessary to determine" Flowers' liability under the Act. *In re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litigation*, 851 F.Supp.2d 1040, 1054 (S.D.Tex., 2012).

Finally, Defendants do not contend the "class sought to be represented [is not] adequately defined and clearly ascertainable"[5] – indeed, Flowers represents in its Memorandum 11 times that it has already ascertained the class consists of exactly 341 people.

**B. Matters Not Seriously Disputed:** *Adequacy*

---

[1] *Cole v. General Motors Corp.*, 484 F.3d 717, 723 (C.A.5, 2007).
[2] *Union Asset Management Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (C.A.5, 2012).
[3] Flowers' Memorandum (p. 3) acknowledges that prospective class members are at least 3 times more numerous than the collective-action group.
[4] The alleged class sought certified under Rule 23(a) is much broader than the collective-action group earlier conditionally certified by this Court under the Fair Labor Standards Act (FLSA); prospective class members' claims are limited neither by the requirement that each "opt in" imposed by 29 U.S.C. 216(b), nor by FLSA's two- or three-year statute of limitations, 29 U.S.C. 255.
[5] *DeBremaecker v. Short*, 433 F.2d 733, 734 (C.A.5, 1970).

Concerning the "adequacy" requirement imposed by Rule 23(a)(4), Defendants offer up argument that Plaintiffs' claims should not be certified "because they seek relief that other class members do not want" (Rec. Doc. 317, p. 33).

According to Flowers, the prospective class consists of distributors "who want to become employees" and those "who... do not want to become employees" (Rec. Doc. 317, p. 33).[6]

Defendants in support of their argument never mention the relief actually sought – which is not that Plaintiffs and class members "*become* employees," but for equitable relief *recognizing* them as employees and "enjoining Defendants from pursuing the illegal policies" alleged (Second Amended and Restated Complaint; Rec. Doc. 196, p. 19), and for damages sustained.

There are no "conflicts of interest" between named Plaintiffs and the other class members concerning the fact-finder's determination of their *retrospective* status; any *prospective* disagreement as to whether class members would prefer to *remain* employees of Flowers does not even hint at a conflict sufficient to defeat adequacy.[7]

Even if the requisite "conflicts of interest" were present, "the risk to unnamed class members is smaller than usual here because of the opportunity for opt outs. Plaintiffs sought certification under Rule 23(b)(3), which allows opting out…. if unnamed class members thought that the risk of preclusion were cogent and wished to protect their claim, they could do so." *Slade v. Progressive Security Insurance Company*, 856 F.3d 408, 414 (C.A.5, 2017).[8]

---

[6] Defendants make reference also to former distributors, who are on neither side of this "argument" as they are no longer employees.

[7] See, e.g., *O'Connor v. Uber Techs., Inc.*, 311 F.R.D. 547, 566 (N.D.Cal. 2015) ("[A] decision to abandon a claim that may not be certifiable does not automatically render a plaintiff inadequate, particularly when they seek the majority of the claims."); *Stanich v. Travelers Indem. Co.*, 259 F.R.D. 294, 307 (N.D.Ohio 2009) ("[C]ourts have found that concerns related to the potential res judicata effect of abandoning a certain claim in favor of another claim do not *413 necessarily create a conflict between the class representative and the absent class members."), each quoted in *Slade, supra*, 856 F.3d at 412.

[8] Flowers' Memorandum (p. 33) acknowledges the "due process protection" available to class members under Rule 23(b)(3) only by omission, by observing (correctly) that certification under Rule 23(b)(2) does not operate the same way.

In short, Flowers has not seriously contended the class representatives' inadequacy by identifying the requisite conflicts between their claims and the prospective class's. Rather, Flowers has ignored the Complaint itself and its prayer for relief, and furthermore ignored the availability of redress for opting-out class members under Rule 23(b)(3).

Indeed, Defendants do not even suggest Rule 23(b)(3) does not adequately protect class members even from conflicts of interest, if any were present.

### C. Commonality: Defendants, not Plaintiffs, Mistake the Law on Merits Considerations of Commonality at Rule 23 Certification

*Flowers Ignores the United States Supreme Court's Post-*Wal-Mart *Restriction on Merits Inquiries in Order to Improperly Try its Case on the Pleadings*

Flowers' insistence that "the Court *should* consider the merits because" (Rec. Doc. 317, p. 11, emphasis in original) Plaintiffs cite law "*explicitly rejected*" (emphasis in original) by the U.S. Supreme Court and by the Fifth Circuit is, put mildly, surprising.

Exclaiming that this Court must see through merits questions (including disputed factual determinations) to their conclusion now, prior to trial on those merits and relying entirely on briefs, Flowers rests exclusively on the Fifth Circuit's reading of *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) in *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832 (C.A.5, 2012) – in particular the latter case's explication that "[w]hat matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of [] class-wide proceedings to generate common *answers* apt to drive the resolution of the litigation."[9]

Proceeding on the assumption, then, that this Court is required on motion for certification

---

[9] 675 F.3d at 840 (emphasis in original) (internal quotation marks omitted).

to "analyze rigorously the conflicting evidence before it and resolve material disputed facts,"[10] including delving into merits questions whether relevant to Rule 23's requirement of common *questions* (as opposed to common *answers* after merits determination), Flowers enormously misstates the law.

Defendants' entire opposition to Plaintiffs' Motion rests on this mistaken notion this Court should – and must – render final judgment on an incomplete record. That is not the law.

As is immediately apparent from U.S. Supreme Court jurisprudence, *Wal-Mart* was very soon after its publication determined to have gone too far – in particular, when the Supreme Court clarified, in *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 466 (2013):

> Rule 23 *grants courts no license to engage in free-ranging merits inquiries* at the certification stage…. [A] *district court has no authority to conduct a preliminary inquiry into the merits* of a suit at class certification unless it is necessary to determine the propriety of certification…. [A]n *evaluation of the probable outcome on the merits is not properly part of the certification decision*. (internal citations omitted) (emphases added)

*Stukenberg*, decided in 2012 without the benefit of *Amgen*'s correction, thus went substantially too far in requiring of the district courts "an effort to decide if an examination of all the class member's claims for relief will produce a common *answer* to the crucial [merits] question[s]…" 675 F.3d at 840-41 (emphasis added).[11]

Indeed, *Amgen* aimed directly at overreach on merits questions – exactly as Flowers would have this Court overreach – by continuing that courts must "[b]ear firmly in mind that the focus of Rule 23(b)(3) is on the predominance of common *questions*," 568 U.S. at 466 (emphasis

---

[10] *Cuevas v. Citizens Financial Group, Inc.*, 526 Fed.Appx. 19, 21 (C.A.2, 2013), quoted by Defendants at Rec. Doc. 317, p. 11. The Second Circuit in *Cuevas* continued, *after* the quotation offered by Flowers, "the district court should resolve the factual disputes *to the extent they are material to the commonality question* and provide a rigorous analysis of whether Cuevas has presented a *common question* that is capable of classwide resolution." Id. (emphasis added).

[11] Certiorari to the U.S. Supreme Court apparently was not sought in *Stukenberg*.

in original), not "common answers."

The courts of the Fifth Circuit have not failed to note the Supreme Court's course correction. Distinguishing *Stukenberg* explicitly in light of *Amgen*, in 2016 the U.S. District Court for the Western District of Texas quoted the latter in holding that "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."[12]

Defendants' entire project of trial on the merits, at this "strictly… procedural"[13] and preliminary stage, is strikingly inappropriate. It is *entirely immaterial* whether resolution of disputed facts "yield common answers that resolve all distributors' claims in one stroke" (Rec. Doc. 317, p. 13): the question is whether there are common *questions* whose *ultimate* resolution – at trial – will do so.

### D. Commonality: Common *Questions* of Law and Fact

And there are. Even to the extent this Court is bound to "rigorously" examine "the predominance of common *questions*,"[14] their presence is amply demonstrated, not least by Defendants' own extraordinarily laborious (and, as explained above, inapposite) efforts to arrive at answers on the merits.

Louisiana law on "independent contractor" classification follows a five-part test, each of whose prongs is readily capable of common inquiry (and, to the extent relevant under Rule 23, common determination): 1) a valid contract between the parties; 2) work of an independent nature permitting its accomplishment by non-exclusive means; 3) specific piece-work in which the principal has an interest only in result, not in direction; 4) specific price for the overall

---

[12] *Steward v. Janek*, 315 F.R.D. 472, 481 (W.D.Tex., 2016).
[13] *Buford v. H&R Block, Inc.*, 168 F.R.D. 340, 346 (S.D.Ga., 1996).
[14] *Amgen, supra*, 568 U.S. at 466 (2013) (emphasis original).

undertaking; and 5) specified duration not terminable at will.[15]

On the evidence before the Court, class members perform economically-dependent work, of indeterminate duration, under Defendants' direction, on terms dictated by Defendants, in nigh-identical contracts, for compensation determined by Defendants' negotiations with third parties. These are not just common *questions*, though that is all that is required at this stage: they are common *answers*.

Next, Flowers' allegation that "relying on common classification alone is improper" as a blanket proposition is simply false. Ignoring *other* evidence on commonality to the contrary, perhaps, but Flowers here sets up a straw man: Plaintiffs do not need common misclassification to stand alone. Even if they did, the *question* would be common to the class: the proper inquiry, regardless of the *answer*.

Indeed, in a recent and closely analogous case, one district court noted that "[l]iability will be driven by a common question: were the class members misclassified? The same practice—the classification of workers as independent contractors—touches all members of the class. The commonality requirement is satisfied."[16]

Finally, Flowers in a flurry of paper raises several additional arguments against commonality of claims – waiver of participation, statutes of limitations – ignoring the rule that "as long as a single issue is common to all class members, not all factual or legal questions raised in the lawsuit need to be common."[17]

First, Defendants cannot be permitted to manufacture material distinctions among their workers over which those workers lacked control – otherwise, *every* misclassification suit must

---

[15] *Kibodeaux v. Progressive Ins. Co.*, 2008-791 (La.App. 3 Cir. 2/4/09, 3) 4 So.3d 222.
[16] *Venegas v. Global Aircraft Service, Inc.*, 159 F.Supp.3d 93, 98-99 (D.Maine, 2016).
[17] *Estate of VanDam ex rel. Horizon Trust & Inv. Management, N.A. v. Daniels*, 278 F.R.D. 415, 424 (S.D.Ind. 2011), citing *Keele v. Wexler*, 149 F.3d 589, 594 (C.A.7, 1998) ("A common nucleus of operative fact is usually enough to satisfy the commonality requirement")

necessarily proceed individually, and Rule 23 would have no place in employment law, since employers can always invent among workers distinctions without differences.

More important, though, Defendants' parade of horribles again ignores the decades-old rule, which even their Memorandum does not controvert, that "[w]hen the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment."[18]

Commonality – common *questions and not answers*, as this Court must inquire – is more than satisfied on the facts, even as Defendants accept them.

## II. Rule 23(b)

### A. Rule 23(b)(3): Predominance and Superiority

For the same reasons as discussed above concerning independent-contractor classification, common questions – *that* common question, most saliently – predominate over individual distinctions among class members.

And for the same reasons that Defendants' reliance on *Wal-Mart*, after *Amgen*, is misplaced, their arguments to this Court on predominance go awry. "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."[19] Although Flowers couches its argument as dissonance of *questions*, its argument is self-evidently that those questions will have different *answers* – that Flowers' various hypothetical affirmative defenses will gain traction, for example.

"But the office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather,

---

[18] *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1175 (C.A.8, 1995) (internal quotation omitted).
[19] *Amgen, supra*, 568 U.S. at 459 (2013).

it is to select the method best suited to adjudication of the controversy fairly and efficiently."[20] There is *no doubt whatsoever* that common *questions* predominate (even if Flowers would rather proffer *answers* to the Court than to a jury), and that **one** trial will adjudicate the class' common controversies far more fairly and efficiently than **hundreds**.

### B. Rule 23(b)(2): Availability of Demanded Relief

As has already been discussed exhaustively, Defendants' deep delve into the ultimate outcomes of class members' LWPA claims are not appropriate, under *Amgen*, on Rule 23(b)(2) certification. Much as Flowers wants this Court to determine **now** that LWPA damages are not "incidental" to injunctive relief on the class' state-law claims, and therefore deny certification – again, make a merits determination on a procedural motion – that "would have [the Court] put the cart before the horse."[21]

Defendants' argument – "[m]onetary damages are not incidental in this case"[22] – fails as soon as it begins. Flowers would push the cart home and dispense with the horse entirely.

### III. *Rehberg, Martinez, Soares*

Finally, in the briefest portion of their Memorandum, Defendants urge the Court to reject as incorrectly decided authority directly contradictory to their position[23], and adopt instead authority they prefer.[24]

In *Martinez*, the court in applying California worker-classification law found fault with

---

[20] *Amgen, supra*, 568 U.S. at 460 (2013).
[21] *Id.*
[22] Rec. Doc. 317, p. 30.
[23] *Rehberg v. Flowers Baking Co. of Jamestown, LLC*, 2015 WL 1346125 (W.D.N.C., 2015).
[24] *Soares et al v. Flowers Foods, Inc. et al*, No. 15-cv-04918 (N.D.Cal. 2017); *Martinez v. Flowers Foods, Inc.*, No. 15-cv-5112 (C.D.Cal. 2016).

plaintiffs' ascertainability; Defendants here have made clear in their Memorandum (11 times) that they already have ascertained exactly who are prospective class members. Rule 23(a) was otherwise satisfied. Considering Rule 23(b)'s predominance requirement, however, the court went beyond its (correct) holding that "the only issue this Court must decide… is whether the question of worker classification predominates across all class members."

Rather than conclude, as numerous other courts have and do, that "factual variations is normally not sufficient to preclude class action treatment,"[25] the court in *Martinez* went further into factual merits determinations (based, as noted, on California worker-classification law).

In *Soares*, noting the prior orders in both *Rehberg* and *Martinez*, Rule 23(a) was likewise satisfied. That court also found that *Martinez* itself "conflicts with a number of decisions from this District" in its worker-classification analysis. Then, as in *Martinez*, the court applied *California* worker-classification law – embodied for both decisions in the California Supreme Court's opinion in *S.G. Borello & Sons, Inc. v. Dep't of Industrial Relations*, 48 Cal.3d 341 (1989) – to find a predominance issue under there-controlling precedent.

Contrariwise, of course, in *Rehberg* the North Carolina court found Rule 23(b)(3) satisfied on exactly the same facts as presented in that and the two California cases.

If there is a lesson in these cases, it is perhaps that state-law questions of worker classification will often dominate federal procedural determinations. This is as it should be. Of course, none of the above decisions are binding on this Court – only Louisiana worker-classification law. Plaintiffs respectfully aver that on these common facts, under controlling law, misclassification is *the* question susceptible of common proof – and that is all that, under *Amgen*, Rule 23(b)(3) requires, *or allows*. The Motion should be granted.

---

[25] *DeBoer, supra*, 64 F.3d at 1175 (C.A.8, 1995).

Respectfully submitted,

/s/ Ryan M. Goudelocke
STEVEN G. DURIO (#05230)
RYAN M. GOUDELOCKE (#30525)
TRAVIS J. BROUSSARD (#33036)
**Durio, McGoffin, Stagg & Ackermann**
220 Heymann Boulevard (70503)
Post Office Box 51308
Lafayette, LA   70505-1308
Phone:  (337) 233-0300
Fax:     (337) 233-0694
Email:  durio@dmsfirm.com
           ryan@dmsfirm.com
           travis@dmsfirm.com
**Attorneys for the Class**

### CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this **Reply to Flowers' Opposition to Motion for Class Certification** was electronically filed with the Clerk of the Court using the CM/ECF system which sent a notice of electronic filing to counsel as indicated by the Court.

Lafayette, Louisiana, this 16th day of February, 2018.

   /s/ Ryan Goudelocke
Ryan M. Goudelocke

#371790