**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION**

| | |
|---|---|
| **ANTOINE RICHARD, DARRELL RICHARD, CHRIS MECHE, DERBY DOUCET, SR., KEVIN RABEAUX, and MARK LOUVIERE, individually and on behalf of all similarly situated individuals,** | |
| **Plaintiffs,** | **CIVIL ACTION NO. 15-cv-2557** |
| **VERSUS** | **DISTRICT JUDGE S. MAURICE HICKS** |
| **FLOWERS FOODS, INC.; FLOWERS BAKING COMPANY OF LAFAYETTE, LLC; FLOWERS BAKING COMPANY OF BATON ROUGE, LLC; FLOWERS BAKING COMPANY OF NEW ORLEANS, LLC; and FLOWERS BAKING COMPANY OF TYLER, LLC,** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |
| **Defendants.** | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

# TABLE OF CONTENTS

I.   PROCEDURAL POSTURE ..................................................................................................... 3

II.  FACTUAL BACKGROUND ................................................................................................... 4

III. ARGUMENT AND OBJECTIONS ......................................................................................... 5

   A.  The Magistrate Judge Failed to Conduct the Requisite Rigorous Analysis Required by the Supreme Court in *Dukes*, Thus Improperly Granting Class Certification ................................... 5

      1.  The R&R fails to rigorously analyze commonality and instead relies on common classification to improperly grant certification. ................................................................... 7

         a.  Undue reliance on common classification constitutes reversible error. .......................... 8

         b.  The other "common evidence" is legally irrelevant and/or wholly unsupported or contradicted by the record evidence. ............................................................................ 11

         c.  The R&R's Reliance on Rehberg does not obviate the need for a rigorous analysis. ... 12

      2.  The R&R fails to rigorously analyze adequacy, raising significant due process concerns for class members who do not want to be employees ................................................................. 13

      3.  The R&R fails to independently—or rigorously—analyze predominance, ignoring significant evidence and improperly granting class certification. ......................................... 14

      4.  The R&R fails to conduct any analysis of rule 23(b)(2) certification. ................................. 20

   B.  The R&R Fails to Analyze the Evidence with the Requisite "Heigtened Scrutiny" for Decertification and Wholly Ignores Plaintiffs' Failure to Satisfy Their Burden of Proof. .......... 21

   C.  The R&R Ignores the Significant Due Process Concerns Associated with the "Representative Testimony" Offered by the FLSA Plaintiffs. ............................................................................... 23

IV. CONCLUSION ...................................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alberghetti v. Corbis Corp.*,
   263 F.R.D. 571 (C.D. Cal. 2010) ............................................................. 14

*Allison v. Citgo Petroleum Corp.*,
   151 F.3d 402 (5th Cir. 1998) ................................................................ 20

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................. 13

*Andel v. Patterson–UTI Drilling Co.*,
   280 F.R.D. 287 (S.D. Tex. 2012) .......................................................... 22

*Brock v. Mr. W Fireworks, Inc.*,
   814 F.2d 1042 (5th Cir. 1987) .............................................................. 22

*Casias v. Distribution Mgmt. Corp., Inc.*,
   No. CV 11-00874, 2014 WL 12710236 (D.N.M. Mar. 31, 2014) ............ 10

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ............................................................................... 14

*Dailey v. Groupon, Inc.*,
   No. 11 C 05685, 2014 WL 4379232 (N.D. Ill. Aug. 27, 2014) .............. 10

*In re Diet Drugs Prods. Liab. Litig.*,
   385 F.3d 386 (3d Cir. 2004) ................................................................. 14

*Dole v. Snell*,
   875 F.2d 802 (10th Cir. 1989) .............................................................. 22

*Dvorin v. Chesapeake Explor.*,
   LLC, No. 12-CV-3728, 2013 WL 6003433 (N.D. Tex. Nov. 13, 2013) .... 16

*Encino Motorcars, LLC v. Navarro*,
   136 S. Ct. 2117 (2016) ......................................................................... 24

*EQT Prod. Co. v. Adair*,
   764 F.3d 347 (4th Cir. 2014) .......................................................... 15, 16

*In re FedEx Ground Pkg. Sys. Inc. Emp't Prac. Litig.*,
   662 F. Supp. 2d 1069 (N.D. Ind. 2009) ............................................... 18

*Gene And Gene LLC v. BioPay LLC*,
   541 F.3d 318 (5th Cir. 2008) ............................................................... 17

*Jacob v. Duane Reade, Inc.*,
  289 F.R.D. 408 (2013), aff'd 602 F. App'x 3d (2d Cir. 2015) ........................................ 10

*Johnson v. Big Lots Stores, Inc.*,
  561 F. Supp. 2d 567 (E.D. La. 2008) ................................................................. 22, 23, 24

*Kabbash v. Jewelry Channel, Inc. USA*,
  No. A-16-CA-212-SS, 2017 WL 2473262 (W.D. Tex. June 7, 2017) .......................... 20

*Langbecker v. Elec. Data Sys. Corp.*,
  476 F.3d 299 (5th Cir. 2007) ..................................................................................... 14

*Leon v. Diversified Concrete, LLC*,
  No. CV 15-6301, 2016 WL 6247674 (E.D. La. Oct. 26, 2016) ............................... 15, 16

*Madison v. Chalmette Refining, L.L.C.*,
  637 F.3d 551 (5th Cir. 2011) .............................................................................. 7, 16, 17

*Mario v. UPS, Inc.*,
  639 F.3d 942 (9th Cir. 2011) ....................................................................................... 8

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010) ..................................................................................... 9, 10

*Nerland v. Caribou Coffee Co., Inc.*,
  564 F. Supp. 2d 1010 (D. Minn. 2007) ........................................................................ 9

*Ocampo v. Maronge*,
  237 So. 3d 627 (La. Ct. App. 2017) *writ denied*, 240 So. 3d 920 (La. 2018) ............. 15

*Paternostro v. Choice Hotel Int'l Servs. Corp.*,
  309 F.R.D. 397 (E.D. La. 2015) ................................................................................ 21

*Prejean v. O'Brien's Response Mgmt., Inc.*,
  No. CIV.A. 12-1045, 2013 WL 5960674 (E.D. La. Nov. 6, 2013) ............................ 22

*Proctor v. Allsups Convenience Stores, Inc.*,
  250 F.R.D. 278 (N.D. Tex. 2008) ............................................................................. 21

*Randall v. Rolls-Royce Corp.*,
  637 F.3d 818 (7th Cir. 2011) ..................................................................................... 21

*Rea v. Michaels Stores, Inc.*,
  No. SAC-13-455-GW(AGRx), 2014 WL 1921754 (C.D. Cal. May 8, 2014) ............... 10

*Rios v. Classic S. Home Constr., Inc.*,
  No. CV 15-4104, 2016 WL 2625886 (E.D. La. May 9, 2016) ............................... 21, 23

*Ruggles v. WellPoint, Inc.*,
  272 F.R.D. 320 (N.D.N.Y. 2011) ............................................................................. 10

*Scales v. Huntleigh USA Corp.*,
   No. 11-2967, 2012 WL 860381 (E.D. La. Mar. 12, 2012) ................................................ 18

*Slaughter v. Board of Supervisors S. Univ.*,
   76 So. 3d 438 (La. Ct. App. 2011) ............................................................................... 18

*M.D. ex rel. Stukenberg v. Perry*,
   675 F.3d 832 (5th Cir, 2012) ............................................................................... 6, 7, 13

*Thibault v. Bellsouth Telecomm., Inc.*,
   612 F.3d 843 (5th Cir. 2010) .................................................................................. 8, 22

*Vinole v. Countrywide Home Loans, Inc.*,
   571 F.3d 935 (9th Cir. 2009) ....................................................................................... 9

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ......................................................................................... *passim*

*Wang v. Chinese Daily News, Inc.*,
   231 F.R.D. 602 (C.D. Cal. 2005) ................................................................................. 9

*Wang v. Chinese Daily News, Inc.*,
   737 F.3d 538 (9th Cir. 2013) ...................................................................................... 9

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
   571 F.3d 953 (9th Cir. 2009) ................................................................................ 10, 11

**Statutes**

26 U.S.C. § 3121(d)(3)(A) ............................................................................................. 11

28 U.S.C. § 636(1) ......................................................................................................... 5

Fair Labor Standards Act .......................................................................... 2, 3, 22, 23, 24, 25

IRC Section 3121(d)(3) ................................................................................................. 11

La. Stat. Ann. § 23:631 *et seq.* .................................................................................... 3

La. Stat. Ann. § 23:635 ........................................................................................... 18, 20

**Other Authorities**

Rule 23 ............................................................................. 3, 5, 6, 7, 13, 14, 15, 20, 21

Rule (b)(2) ............................................................................................................... 21

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

ANTOINE RICHARD, DARRELL
RICHARD, CHRIS MECHE, DERBY
DOUCET, SR., KEVIN RABEAUX, and
MARK LOUVIERE, individually and on
behalf of all similarly situated individuals,

      Plaintiffs,

VERSUS

FLOWERS FOODS, INC.; FLOWERS
BAKING COMPANY OF LAFAYETTE,
LLC; FLOWERS BAKING COMPANY OF
BATON ROUGE, LLC; FLOWERS
BAKING COMPANY OF NEW ORLEANS,
LLC; and FLOWERS BAKING COMPANY
OF TYLER, LLC,

      Defendants.

CIVIL ACTION NO. 15-cv-2557

DISTRICT JUDGE S. MAURICE
HICKS

MAGISTRATE JUDGE CAROL
B. WHITEHURST

## MEMORANDUM IN SUPPORT OF DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

NOW INTO COURT, through the undersigned Counsel, come Defendants, Flowers Baking Company of Tyler, LLC, Flowers Baking Co. of New Orleans, LLC, Flowers Baking Co. of Baton Rouge, LLC, Flowers Baking Co. of Lafayette, LLC, and Flowers Foods, Inc. (collectively, "Defendants") and file this Memorandum in Support of Defendants' Objections to the Report and Recommendations ("R&R") issued on August 13, 2018 (Ct. Doc. No. 339).

As discussed more fully below, the District Judge should grant Defendants' Objections and set aside the R&R, following the requisite *de novo* review. With all due respect to Magistrate Judge Whitehurst, the R&R, on its face, confirms that no analysis was conducted—let alone a rigorous one—of the claims, defenses and applicable substantive law *in this case* when determining whether class or collective certification is appropriate. Indeed, the 34-page R&R does not contain a single

1

evidentiary citation, nor does it contain any analysis whatsoever of the various legal factors under the tests used to adjudicate the claims and defenses *in this case*. Rather, the R & R focuses on common classification, and a different case, with different facts, a different evidentiary record, and different substantive law. No analysis was conducted regarding 23(b)(2) certification. This raises significant due process concerns and could result in over 340 distributors being declared employees, without the ability to opt out, when several have already testified they do not want this result.

Conducting a case-specific rigorous analysis is not optional: it is required by both established Supreme Court and Fifth Circuit precedent. Failure to conduct this rigorous analysis constitutes reversible error. And, as the underlying briefs and evidentiary record here establishes, when the proper analysis is completed, it is clear that Plaintiffs failed to carry their burden to show class or collective certification is appropriate.

The R&R, on its face, also confirms that the Magistrate Judge failed to analyze the individualized inquiries presented by the Fair Labor Standards Act's ("FLSA") economic realities test and Defendants' individualized FLSA defenses under the "heightened standard" applicable at decertification. This is despite the fact that when refusing to consider these individualized inquiries at conditional certification, the Magistrate Judge specifically acknowledged that these inquiries "should be addressed at the decertification stage." (Ct. Doc. No. 136, p. 16.) The R&R's failure to cite a single piece of evidence, despite the extensive record here, confirms that these necessary inquiries were simply not made.

For these reasons, and as more fully discussed below, Defendants' Objections should be granted, and the R & R should be set aside.

2

# I.     PROCEDURAL POSTURE

Plaintiffs filed their Class and Collective Action Complaint on October 21, 2015 alleging violations of the Fair Labor Standards Act ("FLSA") and LA. STAT. ANN. § 23:631 *et seq.*[1] (*See* Ct. Doc. No. 1). Plaintiffs filed a Motion for Conditional Certification on September 1, 2016. (*See* Ct. Doc. No. 105). On November 28, 2016, under the "lenient standard" applied at conditional certification, the Court granted Plaintiffs' Motion for Conditional Certification. (*See* Ct. Doc. No. 136). Therein, the Court noted that it was not considering the deposition testimony offered by Defendants in connection with the opposition because any inquiry into the "true employment status of Plaintiffs should be addressed at the decertification stage." (Ct. Doc. No. 136, p. 16).

Currently, there are 98 FLSA Plaintiffs and Opt-In Plaintiffs. Defendants moved for decertification on January 17, 2018, citing significant record evidence to show how *dissimilar* the FLSA Plaintiffs are on virtually every prong necessary to establish their claims. (*See* Ct. Doc. No. 310). This included attaching an extensive evidentiary differences chart, with Plaintiffs' own testimony, highlighting these differences. (*See* Ct. Doc. No. 310-7). On December 27, 2017, Plaintiffs moved for class certification, seeking to represent 341 different distributors throughout Louisiana. (*See* Ct. Doc. No. 299).  Defendants replied to this motion on February 2, 2018, referencing the significant record evidence illustrating how Plaintiffs could not establish their burden to meet each element of Rule 23. (*See* Ct. Doc. No. 317). Defendants also attached a chart comparing Plaintiffs' testimony to their repeated unsupported assertions to illustrate the inherent problems with the "evidence" Plaintiffs submitted, however limited. (Ct. Doc. No. 317-9).

The Magistrate issued the R& R on August 13, 2018 granting Plaintiffs' Motion for Class Certification and denying Defendants' Motion for Decertification. (Ct. Doc. No. 339). As

---

[1] Plaintiffs filed First and Second Amended and Restated Class and Collective Action Complaints—asserting the same two claims—on December 21, 2015 (Ct. Doc. No. 5) and February 15, 2017 (Ct. Doc. No. 196).

discussed more fully below, the R&R is devoid of any meaningful analysis of the record or the substantive legal tests to adjudicate Plaintiffs' claims and Defendants' defenses and is otherwise objectionable in multiple respects.

## II.    FACTUAL BACKGROUND

Plaintiffs are independent contractor distributors who purchase distribution rights to buy and sell products to customers in a defined geographic area. Plaintiffs contracted with three different separately-operated subsidiaries. (Ct. Doc. Nos. 317-2 ¶¶ 6-10 and Ex. 2; 317-3 ¶¶ 6-10 and Ex. 2; 317-4 ¶¶ 6-10 and Ex. 2). The Distributor Agreement[2] under which Plaintiffs operate contains numerous indicia of independent contractor status, specifically providing that "DISTRIBUTOR shall not be controlled by COMPANY as to the specific details or manner of DISTRIBUTOR'S business." (Ct. Doc. 317, p. 4).

Contrary to Plaintiffs' contention that Flowers "controls nearly all aspects of a distributor's job," the record evidence shows that distributors are subject to different levels of control in many different areas. (*See* Ct. Doc. No. 310-7, pp. 2-5, 9-10, 24-26, §§ I, II, V, XVII, XVIII (containing varying testimony on the various different control factors)). Further, the record confirms that distributors can and do take advantage of the various entrepreneurial opportunities afforded by the distributor program but do so in significantly different ways. For example: (1) some distributors own multiple territories and are "absentee" owners, *i.e.* they hire others to do the work for which they are claiming compensation (Ct. Doc. Nos. 310-1, pp. 9–10; 317, p. 7); (2) some distributors hire one or several employees, including on a full-time basis (Ct. Doc. Nos. 310-1, pp. 9–10; 317,

---

[2] Distributors in the putative class signed different versions of Distributor Agreements. Some distributors signed Distributor Agreements with a statute-of-limitations provision. (Ct. Doc. Nos. 317-2 ¶ 7 and Ex. 2-4; 317-3 ¶ 7 and Ex. 2-4; 317-4 ¶ 7 and Ex. 2-4). Some signed a Distributor Agreement containing an arbitration agreement with a class action waiver. (Ct. Doc. Nos. 317-2 ¶¶ 9-10, Exs. 2, 5-6; 317-3 ¶¶ 9-10, Exs. 2, 5-6; 317-4 ¶¶ 9-10, Exs. 2, 5-6). Distributors who contracted from August 1, 2006 on were treated as traditional franchisees and received a Franchise Disclosure Document. (Ct. Doc. No. 317-5 ¶ 3 and Ex. 1).  The significance of these differences is discussed below.

pp. 6–7); (3) some distributors operate outside businesses, including selling other bread products (Ct. Doc. Nos. 310-1, pp. 11–12; 317, pp. 7–8); (4) some distributors operate their businesses through separate legal entities (Ct. Doc. Nos. 310-1, p. 7; 317 p. 8); and (5) numerous distributors engage in various different activities to increase their sales, such as asking for displays, extending credit, changing product placement, recommending new products, and the like. (Ct. Doc. Nos. 310-1, pp. 20–21; 317, pp. 8–11).

## III.     ARGUMENT AND OBJECTIONS

Pursuant to 28 U.S.C. § 636(1), a judge of the court shall make a *de novo* determination of those portions of the R&R to which specific objections are made. A judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge or, alternatively, recommit the matter to the magistrate judge with instructions.

As discussed more fully below, the District Judge should reject the R&R outright because it fails to rigorously analyze the facts and law in this case to determine whether class or collective treatment is appropriate. Alternatively, the District Judge should remand the matter back to the Magistrate Judge with specific instructions to comply with rigorous analysis requirement of Rule 23, the heightened standard under 216(b), and other legal principles.

## A.     The Magistrate Judge Failed to Conduct the Requisite Rigorous Analysis Required by the Supreme Court in *Dukes*, Thus Improperly Granting Class Certification.

First, the Court should reject the R&R in its entirety because the R&R, on its face, confirms the Magistrate Judge failed to conduct the requisite rigorous analysis to determine if Plaintiffs carried their burden to produce "significant proof" showing Rule 23's requirements are met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 353 (2011) (requiring plaintiffs to provide "significant proof" to "bridg[e] the gap" between the named plaintiff's claim and those of the class members).

**Most tellingly, as noted above, the R&R fails to contain a single evidentiary citation to the record**.

It is well-established that class certification is proper only if the Court "is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) [and (b)] have been satisfied." *Dukes,* 564 U.S. at 350-51; *M.D. ex rel. Stukenberg v. Perry,* 675 F.3d 832, 837 (5th Cir, 2012) (quoting *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 740 (5th Cir. 1966)) ("[a] district court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class."). This is because a class action is "an exception to the usual rule that litigation is conducted by and on behalf of individual named parties only." *Dukes*, 564 U.S. at 348. The Fifth Circuit "require[s] district courts to, *inter alia*, 'look beyond the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.'" *Stukenberg*, 675 F.3dat 837 (quoting *McManus v. Fleetwood Enters.*, Inc., 320 F.3d 545, 548 (5th Cir. 2003)).

**In the Fifth Circuit, failure to conduct this rigorous analysis constitutes reversible error.** *Stukenberg*, 675 F.3d at 837. For example, in *Stukenberg*, the Fifth Circuit reversed a district court's certification decision in part because "the district court failed to perform the rigorous analysis required by Rule 23 in failing to look beyond the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination." *Id.* at 842. Notably, the district court conducted no analysis of the elements and defenses for establishing any of the proposed claims, nor did it adequately explain how those claims depend on a common legal contention whose resolution "will resolve an issue that is central to the validity of each of [the individual's] claims in one stroke.'" *Id.* at 838 (quoting *Dukes*, 564 U.S. at 350). Instead, the district court primarily relied "on the conclusions of other courts that

have certified similar classes" to determine that class members shared a "common legal claim" and thus commonality was met. *Id* at 842. (emphasis added). The Fifth Circuit summarily rejected the district court's analysis—or lack thereof—and remanded it back for further proceedings, specifically noting that the district court did not conduct the requisite rigorous analysis or explain how the resolution of the claims "will resolve an issue that is central to the validity of each of the [class members'] claims in one stroke."[3] *Id.* at 844–45. As discussed below, the R&R here suffers from the same fundamental flaws.

**1. The R&R fails to rigorously analyze commonality and instead relies on common classification to improperly grant certification.**

To satisfy commonality, Plaintiffs must do more than merely present "questions that are common to the class because 'any competently crafted complaint literally raises common questions.'" *Stukenberg,* 675 F.3d at 840 (quoting *Dukes,* 564 U.S. at 350). Rather, Plaintiffs must establish *with competent evidence* that the "claims of every class member 'depend on a common contention . . . that is capable of class-wide resolution,' meaning that the contention is 'of such a nature … that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims *in one stroke.*'" *Stukenberg,* 675 F.3d at 838 (*quoting Dukes,* 564 U.S. at 350) (emphasis added). To determine whether Plaintiffs carried their burden, the court must "look beyond the pleadings to 'understand the claims, defenses, relevant facts, and substantive law.'" *McManus,* 320 F.3d at 548 (quoting *Castano,* 84 F.3d at 744). In other words, the court must rigorously analyze the record under the lens of the applicable legal tests to determine whether commonality is satisfied. This was not done here.

---

[3] *See also Madison v. Chalmette Refining, L.L.C.*, 637 F.3d 551, 556 (5th Cir. 2011) ("We hold that the district court abused its discretion by failing to afford its predominance determination the 'rigorous analysis' that Rule 23 requires. The district court did not meaningfully consider how Plaintiff" claims would be tried . . .").

   *a.  Undue reliance on common classification constitutes reversible error.*

Instead of rigorously analyzing the facts and law *in this case* to determine whether Plaintiffs met their burden*,* the R&R improperly finds that commonality is satisfied because each class member is asserting the common legal theory of misclassification. *See* Ct. Doc. 339, p. 10 ("[e]ach class member's claims arise out of Flowers' uniform policy of classifying their distributors as independent contractors and applying deductions and offsets for purposes breaches of Flowers' policies and procedures."). As *Dukes* establishes, however, this is not enough. Rather, the court must determine whether these common questions "will resolve an issue that is central to the validity of each one of the [class member's claims] in one stroke." *Dukes*, 564 U.S. at 350.

Here, the R&R does not even discuss the legal tests and elements applicable to the Louisiana claims, let alone contain an analysis of how the resolution of the common questions would yield common answers for all of the 341 putative plaintiffs at once given this record. Rather, the R&R erroneously holds when a common classification decision has been made, the court *should not* analyze or consider this individualized evidence. More specifically, the Magistrate Judge acknowledges that Flowers "attempts to engage in an analysis of different factors that are necessary to consider under Louisiana law to determine independent contractor status." (Ct. Doc. No. 339, p. 11). However, the Magistrate Judge finds that because Flowers "did not engage in an individualized analysis of the particular circumstances surrounding each distributor's job" when making the initial classification decision, Flowers "cannot now rely on such an argument to defeat certification of the plaintiffs' claims." (*Id.*)[4]   In other words, the R&R finds that common

---

[4] Further, contrary to Plaintiffs' assertions that they must all be independent contractors or employees together, the classification may be proper for some but improper for others. *See Thibault v. Bellsouth Telecomm., Inc.*, 612 F.3d 843, 848 (5th Cir. 2010) (stating that the "nature of this analysis suggests that in some cases [plaintiffs] might be employees" while others are independent contractors); *Mario v. UPS, Inc*., 639 F.3d 942, 948 (9th Cir. 2011) ("existence of a policy classifying [supervisors] as exempt . . . does not necessarily establish [they] were misclassified, because the policy may have accurately classified some employees and misclassified others.").

classification trumps the court's obligation to conduct a rigorous analysis of the record evidence, citing *Nerland,* a 2007 pre-*Dukes* case from Minnesota.[5] (*See* Ct. Doc. No. 317, pp. 16–18). This is directly contrary to *Dukes* and Fifth Circuit precedent, ignores that Plaintiffs have the burden to establish commonality with competent evidence, and would constitute reversible error.

Moreover, the R&R's undue reliance on common classification, to the near exclusion of all else, is contrary to the overwhelming weight of authority.[6] In fact, there is only one post-*Dukes* class certification decision cited in all of Plaintiffs' briefing and the R&R, namely *Rehberg*, where a district court in North Carolina found uniform classification sufficient to warrant class certification. However, the Circuit Courts of Appeal that have addressed this issue have found that a "district court abuses its discretion in relying on an internal uniform exemption policy to the near exclusion of other factors relevant to the predominance inquiry." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009). *See also Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544–46 (9th Cir. 2013) (a presumption that class certification is appropriate with a uniform classification decision "disregards the existence of other potential individual issues that may make class treatment difficult if not impossible"); *Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 2010) ("the existence of a blanket exemption policy, standing alone, is not itself determinative of the main concern in the predominance inquiry: the balance between individual

---

[5] *Nerland v. Caribou Coffee Co., Inc.*, 564 F. Supp. 2d 1010, 1024 (D. Minn. 2007). *Nerland*'s reasoning that a Defendant is estopped from relying on individualized evidence when they make a uniform classification decision was derived from *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 613 (C.D. Cal. 2005). The Ninth Circuit later overturned *Wang* because the district court's decision to certify the class "rested on the fact, considered largely in isolation, that plaintiffs are challenging [defendant's] uniform policy of classifying all reporters and account executives as exempt employees." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013).
[6] Nearly every court to address this "common classification alone is sufficient" argument has done so under the predominance inquiry. Because Plaintiffs make the argument with regard to commonality, Defendants address it here.

and common issues."); *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009) (same).[7]

This is because common classification, alone, does nothing to prove "in a single stroke" that all 341 putative plaintiffs are misclassified, particularly on this record. *Rea v. Michaels Stores, Inc.*, No. SAC-13-455-GW(AGRx), 2014 WL 1921754, at *4 (C.D. Cal. May 8, 2014) (fact that there are common policies, requirements, or issues does not eliminate need for individualized inquiries because these policies do no establish whether they are actually engaged in exempt duties). *See Jacob v. Duane Reade, Inc.*, 289 F.R.D. 408, 415 (2013), aff'd 602 F. App'x 3d (2d Cir. 2015) ("a generalized, central policy [of common classification] is not alone determinative of class certification or commonality").[8]

In fact, in *In re Wells Fargo*, the Ninth Circuit reversed a grant of class certification that was largely based on a uniform policy of classifying employees as exempt. 571 F.3d at 957-58. The district court (like Plaintiffs argue here) noted that it is "manifestly disingenuous for a company to treat a class of employees as a homogenous group for the purposes of internal policies and compensation, and then assert that the same group is too diverse for class purposes in overtime litigation." *Id.* The Ninth Circuit reversed, finding that while common classification is one factor, it is an abuse of discretion to rely on it "to the near exclusion of other factors relevant to the predominance inquiry." *Id.* at 959. This is because a uniform exemption policy, like uniform

---

[7] *See also*, *Casias v. Distribution Mgmt. Corp., Inc.*, No. CV 11-00874 MV/RHS, 2014 WL 12710236, at *11 (D.N.M. Mar. 31, 2014) (an employer's blanket application of exemption status, whether right or wrong, does nothing to facilitate common proof on the otherwise individualized issues); *Dailey v. Groupon, Inc.*, No. 11 C 05685, 2014 WL 4379232, at *5 (N.D. Ill. Aug. 27, 2014) ("although Groupon's uniform exemption policy is certainly relevant, it is only one of many facts that the Court must consider in the predominance analysis. In addition to the exemption policy, the Court must still consider Account Reps' *actual* day-to-day job duties") (emphasis in original).

[8] *See also Meyers*, 624 F.3d at 549 (a common exemption policy may be "in a general way relevant" but standing alone, it "is not itself determinative of the main concern in the predominance inquiry: the balance between individual and common issues."); *Ruggles v. WellPoint, Inc.*, 272 F.R.D. 320, 341 (N.D.N.Y. 2011) ("The existence uniform exemption does not relieve the Court from inquiring how individual employees actually spend their time, and therefore such a policy says little about the main concern in the predominance inquiry…").

classification, "does nothing to facilitate common proof on the otherwise individualized issues." *Id.* Instead, the factfinder must still determine how each class member is actually spending his/her time and then determine whether those issues would predominate. *Id.*

The same reasoning applies with equal force here. If the Court adopts Plaintiffs' contention that common classification is enough, then every single misclassification or exemption case would result in automatic class or collective action certification, and no analysis—let alone a rigorous one—would be required.

             b.   *The other "common evidence" is legally irrelevant and/or wholly unsupported or contradicted by the record evidence.*

While the Court attempts to cite "[o]ther facts" that are "common" to each plaintiff in the commonality analysis, the "evidence" the Court cites is Flowers' uniform treatment of distributors as "statutory employees" pursuant to Section 3121(d)(3) of the IRC. (Ct. Doc. No. 339, p. 11). However, this does nothing to establish commonality because to be a statutory employee under the IRC, one must necessarily be a common law independent contractor. 26 U.S.C. § 3121(d)(3)(A). Furthermore, commonality must be examined through the prism of the legal standards relevant to the state law claims in this case— not federal tax treatment. And, just as importantly, a common lawful policy is not sufficient to support class certification. (*See* Ct. Doc. No. 317, pp. 16–18, 25–29).

The R&R's conclusory reference to other "evidence" does nothing more to satisfy the "rigorous analysis" because it fails to distinguish or rigorously analyze the significant testimony, often from Plaintiffs themselves, that contradicts the "common evidence" cited. For example, the R&R notes—without a single citation to the record—that distributors were all "instructed to carry out their jobs subject to the Distributor Agreement," and that all had "substantially similar job duties," and were subject to control over "virtually all aspects of product sales." (Ct. Doc. No. 339,

p. 13–14).[9] However, the R&R fails to discuss or analyze how this "evidence" can be used for each of the prongs of the legal tests applicable to the Louisiana claims to adjudicate the claims of all 341 putative class members at once. Moreover, the R&R largely ignores Defendants' brief or the significant evidence discussed therein, refusing to acknowledge, distinguish, or rigorously analyze any of the significant testimony from Plaintiffs themselves that contradicts this "common evidence." In failing to address this evidence at all or how it impacts class certification, the Magistrate Judge completely disregards the legal significance of these and the other factual differences, each of which is relevant to both class certification and decertification. The R&R must be rejected accordingly.

        c.   *The R&R's Reliance on Rehberg does not obviate the need for a rigorous analysis.*

The R&R's failure to conduct the requisite rigorous analysis of the fact and law *in this case* is also illustrated by its repeated reliance on the *Rehberg* decision. (*See, e.g.,* Ct. Doc. No. 339, p. 13 (deferring to *Rehberg* in large part on commonality); *id.* p. 19 (relying on *Rehberg* in lieu of conducting an independent predominance analysis); *id.* p. 29 ("adopting the rationale of the court in *Rehberg*" for decertification)). Reliance on *Rehberg*, however, is completely misplaced. *Rehberg* involved a different subsidiary and most importantly, different testimony from different plaintiffs. *Rehberg* also involved a different state statute that did not by its terms require the kind of deduction-by-deduction individualized analysis required by the Louisiana statute, as discussed more fully below. Moreover, reliance on *Rehberg* does not obviate the requirement to conduct a rigorous analysis of the facts and substantive law applicable *in this case* when determining whether class certification is appropriate.

---

[9] As outlined in Defendants' class certification and decertification papers, Plaintiffs failed to present much if any evidence in support of their arguments, particularly when compared to the extensive record evidence Defendants provided.

The Fifth Circuit's decision in *Stukenberg* is directly on point in this regard. 675 F.3d at 842 (reasoning that the district court's reliance on the "conclusions of other courts," among other things, was improper). Like the district court in *Stukenberg*, the Magistrate Judge here failed to analyze the elements of the substantive legal claims and defenses when determining whether class certification was appropriate. Like the district court in *Stukenberg*, the Magistrate Judge failed to explain how the claims at issue depended on a common legal contention whose resolution "will resolve an issue that is central to the validity of each of [the individual's] claims in one stroke." *See Dukes*, 564 U.S. at 350. And, like the district court in *Stukenberg,* the Magistrate Judge primarily relied "on the conclusions of other courts" without conducting a rigorous analysis of the record here. The R & R must be set aside for the same reasons the district court found reversible error in *Stukenberg*.

### 2. The R&R fails to rigorously analyze adequacy, raising significant due process concerns for class members who do not want to be employees.

The R&R, again without any analysis of the evidence presented, concludes that "there are no actual or potential conflicts of interest between plaintiffs and the putative class" when finding adequacy was established. (Ct. Doc. No. 339, p. 17). This, however, is completely contradicted by the testimony of several class members that they do not want to be employees—the very relief sought here—raising significant due process concerns.

Because there are no opt-out provisions of Rule 23(b)(2) certification, the only due process protection available to the mandatory class members is the adequacy of the class representatives in protecting their interests in the litigation under Rule 23(a)(4).  The adequacy requirement is designed "to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 594 (1997). This inquiry is vital, as "class members with divergent or conflicting interests [from the named plaintiffs and class

13

counsel] cannot be adequately represented..." *In re Diet Drugs Prods. Liab. Litig.*, 385 F.3d 386, 395 (3d Cir. 2004) (citing *Amchem,* 521 U.S. at 625–26). Crucially, a plaintiff cannot adequately represent a class when he or she "seeks relief which the class members do not want." *Alberghetti v. Corbis Corp.*, 263 F.R.D. 571, 578 (C.D. Cal. 2010) (citations omitted).

Here, however, the putative class consists of individuals who definitively testified that they do not want to be employees and want to remain independent contractors. (Ct. Doc. No. 317, pp. 33–34). Yet this relief and status will be forced on them, without the opportunity to opt out, if the Court finds they were misclassified and grants the injunctive and declaratory relief sought by Plaintiffs' counsel. The Magistrate Judge fails to discuss these inherent conflicts, ignoring all of the evidence cited. Forcing this kind of relief on individuals without any opportunity to opt out is inconsistent with Fifth Circuit law and creates significant due process concerns. *See Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 315 (5th Cir. 2007) ("[s]ubstantial conflicts exist among the class members, raising questions about the adequacy of the lead Plaintiffs' ability to represent the class," where the named plaintiffs sought an injunction that would shut down the investment fund in which class members wanted to continue to invest).

### 3. The R&R fails to independently—or rigorously—analyze predominance, ignoring significant evidence and improperly granting class certification.

Perhaps most importantly, the R&R must be set aside outright because the Magistrate Judge fails to conduct any independent rigorous analysis to determine whether predominance under Rule 23(b)(3) is met. *See Comcast Corp. v. Behrend,* 569 U.S. 27, 34 (2013). In fact, the R&R contains virtually no analysis of predominance at all. Rather, when finding that predominance is satisfied, the R&R relies exclusively on: (1) the *Rehberg* decision; and (2) a conclusory statement that "[i]f Flowers misclassified plaintiffs, then the misclassification applies to every distributor making up the putative class, thus satisfying predominance." (Ct. Doc. No.

339, p. 20). This is the exact type of conclusory analysis, which fails to even discuss— let alone rigorously analyze—any of the facts or substantive claims applicable to this case that is prohibited by *Dukes*.

For one, a misclassification finding is not a one-size-fits-all determination. If one distributor is misclassified it doesn't necessarily follow that all others are. To determine whether an individual is an independent contractor requires a "factual determination to be decided on a case-by-case basis" within the lens of the multi-factor economic realities test or five-factor test used in Louisiana. *Ocampo v. Maronge*, 237 So. 3d 627, 633–34 (La. Ct. App. 2017) *writ denied*, 240 So. 3d 920 (La. 2018).  This necessarily requires an inquiry into actual practice with each individual. *Id.* It is highly plausible that a factfinder may find one distributor to be an employee and another to be an independent contractor given the significant differences by and between them. *See* fn. 3 *supra* and cases cited therein. This is particularly true on this record given the vast differences between putative plaintiffs, with some employing multiple employees, owning up to 8 territories, operating outside businesses, and/or not personally servicing their territories for over a year and others being much different. It is for this reason that "uniform conduct" is not, by itself, sufficient to satisfy the more demanding predominance requirements. *EQT Prod. Co. v. Adair*, 764 F.3d 347, 366 (4th Cir. 2014) ("the mere fact that the defendants engaged in uniform conduct is not, by itself, sufficient to satisfy Rule 23(b)(3)'s more demanding predominance requirement.").

While the R&R relies on *Leon* for the proposition that common classification is sufficient to establish predominance (Ct. Doc. No. 339, p. 20–21), reliance on this case is improper. *Leon v. Diversified Concrete, LLC*, No. CV 15-6301, 2016 WL 6247674 (E.D. La. Oct. 26, 2016). *Leon* involved a class action brought by independent contractor ("IC") construction laborers under Louisiana's workers' compensation statute where the IC versus employee distinction is irrelevant

because ICs are treated as employees as a matter of law as long as a substantial part of their work time is spent performing manual labor—which defendant did not dispute. *Id.* at \*6. <u>Most importantly, however, the defendant did not even challenge predominance in *Leon*, and the court never even analyzed the issue of whether common classification alone is sufficient</u>.[10]

Further, in the Fifth Circuit, when assessing whether predominance is satisfied, the court has an obligation to "'inquire how the case will be tried,' which 'entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class.'" *Dvorin v. Chesapeake Explor.*, LLC, No. 12-CV-3728, 2013 WL 6003433, at \*8 (N.D. Tex. Nov. 13, 2013) (quoting *O'Sullivan v. Countrywide Home Loans, Inc*., 319 F.3d 732, 738 (5th Cir. 2003)).  Merely identifying common practices or evidence is not sufficient to establish predominance.   Rather, the court must analyze "why those common practices [are] sufficient to ensure that the class members' common issues would predominate over individual ones." *EQT Prod. Co.*, 764 F.3d at 366. *See also Madison*, 637 F.3d at 556–57.

In the Fifth Circuit, failure to conduct this analysis also constitutes reversible error. The Fifth Circuit's opinion in *Madison* is illustrative. In *Madison,* the Fifth Circuit reversed the district court's class certification decision because the "the court failed to identify 'the substantive issues that will control the outcome, assess[ ] which issues will predominate, and then determin[e] whether the issues are common to the class.'"  *Id.* at 557 (quoting *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003). The Fifth Circuit held that, "absent this analysis, it was impossible for the court to know whether the common issues would be a 'significant' portion of the individual trials, much less whether the common issues predominate." *Id.* The Fifth Circuit

---

[10]Indeed, in two other cases involving Flowers' subsidiaries in California, the court found that predominance *was not* satisfied. (Ct. Doc. No. 317, pp. 34–35).

reversed—even though it was applying the much higher an abuse of discretion standard—because "[i]n its certification order, the district court did not indicate that it had seriously considered the administration of the trial." *Id.*

Here, like *Madison,* the R&R's discussion of predominance is devoid of any discussion of the legal claims or defenses in this case, let alone a detailed analysis of the individualized evidence necessary to establish the same and determine whether individualized or common issues would predominate. The R&R is also devoid of any discussion of how these claims could be tried together. Rather, the R&R merely states, without any analysis of the facts, that "[if] Flowers misclassified plaintiffs, then the misclassification applies to every distributor making up the putative class."   (Ct. Doc. No. 339, p. 20). This complete failure to independently analyze predominance would constitute reversible error. *Madison*, 637 F.3d at 555 (when analyzing predominance, failure to consider how a trial on the merits would be conducted if a class were certified by identifying and analyzing the substantive issues is reversible error). This is particularly problematic here when numerous affirmative defenses exist that hinge on individualized inquiries and individualized evidence.[11]

While the R & R makes passing reference to some of the evidence Defendants submitted, it contains no analysis of this evidence whatsoever, instead finding that it is inapposite because "the need for some individualized proof of damages after the liability stage 'will not defeat class certification' where the computation of damages is largely a mechanical task." (Ct. Doc. No. 339, p. 21). However, whether distributors hired employees or personally serviced their territories, for

---

[11] It is well-established that the "'predominance of individual issues necessary to decide an affirmative defense may preclude class certification.'" *Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 327 (5th Cir. 2008) (quoting *In re Monumental Life Ins. Co.*, 365 F.3d 408, 420 (5th Cir.2004)).

example, is not a mere damages issue. Rather, this goes to the heart of liability regarding whether someone is truly an independent contractor.

Most glaringly, the R&R fails to even discuss whether predominance exists for the Louisiana state law claims, assuming distributors are employees. (Ct. Doc. 339, p. 22). Yet the individualized inquires required to adjudicate the Louisiana deductions claims serve as an *independent basis* upon which to deny class certification. Indeed, in another independent contractor misclassification case applying Louisiana law, the court denied class certification on this basis. *In re FedEx Ground Pkg. Sys. Inc. Emp't Prac. Litig.*, 662 F. Supp. 2d 1069, 1092 (N.D. Ind. 2009) (denying certification because Louisiana Revised Statute Section 23:635 "requires individualized analysis to determine if [the alleged employer] deducted wages for lost or stolen packages in the absence of driver negligence or willfulness.").

The reasons predominance cannot be satisfied for the deduction claims are clear from the plain language of the statute. Specifically, the statute at issue (Section 635) provides:

> No person, acting either for himself or as agent or otherwise, shall assess any fines against his employees or deduct any sum as fines from their wages. This Section shall not apply in cases where the employees *wilfully or negligently* damage goods or works, or in cases where the employees *wilfully or negligently* damage or break the property of the employer . . .

LA. STAT. ANN. § 23:635 (emphasis added).[12] Adjudicating this claim for all 341 putative plaintiffs at once without individualized proof predominating is simply impossible because: (1) whether each deduction is a "fine" is a highly fact-specific inquiry; and, more importantly (2) the statute

---

[12] As an initial matter, Plaintiffs cannot establish that the deductions they challenge are "fines" under the applicable law. Courts throughout Louisiana have strictly construed the term "fine" to mean an "arbitrarily fixed and assessed" monetary penalty for violation of a rule or regulation. This term does not automatically encompass every deduction made. *See Scales v. Huntleigh USA Corp.*, No. 11-2967, 2012 WL 860381, at *4 (E.D. La. Mar. 12, 2012) (Section 635 only "applies to fines, rather than to any deductions an employer might make. A fine, within the meaning of [the statute] is a pecuniary penalty imposed for violation of some law, rule, or regulation, and denotes a punishment imposed."). Further, courts have repeatedly found that deductions made pursuant to a written contract between the parties or otherwise consented to in advance do not constitute prohibited fines. *Slaughter v. Board of Supervisors S. Univ.*, 76 So. 3d 438 (La. Ct. App. 2011). *See also* Ct. Doc. No. 317, pp. 20–22.

explicitly requires a determination into whether the employee "willfully or negligently" damages goods or breaks the property of the employer when determining if the deduction was unlawful.

As discussed in Defendants' Memorandum in Opposition to Plaintiffs' Motion for Class Certification, two of the larger deductions that distributors may have on their settlement are for stale and shrink. (Ct. Doc. No. 317, pp. 22–25). However, whether these deductions are even charged and circumstances surrounding the same varies significantly, even for the same distributor, making highly-individualized—and not common—proof central to proving this claim. This analysis into the "shrink" deduction is a prime example. (Ct. Doc. No. 317, pp. 24–25). Shrink is almost always caused by accounting errors by distributors—either the amount of goods going into the account for which distributors receive temporary credit or errors in the weekly inventory process. (Ct. Doc. No. 317, p. 24). Other times, however, it may be caused by other factors, including theft or the customer using the product in their own bakery. (Ct. Doc. No. 317, p. 24). Some distributors have never been charged for shrink. (Ct. Doc. No. 317, p. 24). Sometimes, individualized shrink charges are reversed. (Ct. Doc. No. 317, p. 25).

Determining whether any shrink charge could be considered a "fine" would require an analysis of each Weekly Settlement Statement received by each of the 341 distributors for each week to determine whether: (1) they were charged for shrink that week; and (2) whether the shrink was caused by that individual distributor's negligence in counting inventory, for example, or another factor beyond the distributor's control, such as theft. There is simply no way to make this willful or negligent conduct determination on a class-wide basis for all 341 distributors "in one stroke." The fact that all distributors may be charged "fines or fees" at some point—which is the

19

only thing Plaintiffs and the R&R appears to rely on—is not sufficient and does nothing to satisfy the predominance inquiry.[13]

### 4.  The R&R fails to conduct any analysis of rule 23(b)(2) certification.

The R&R is also manifestly erroneous because it fails to apply Rule 23(b)(2) appropriately and fails to analyze it *at all.* Rather, the R&R merely states that "[a] finding that distributors are employees is also dispositive of plaintiffs' prayer for declaratory and injunctive relief." (Ct. Doc. No. 339, p. 22). This completely misses the mark. And, as discussed more fully in Defendants' Memorandum in Opposition to Motion for Class Certification, Rule 23(b)(2) certification is wholly improper here for several reasons. Rule 23(b)(2) authorizes class treatment only where "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). By contrast, "claims for monetary relief may not be certified under 23(b)(2) when monetary relief is not incidental to the injunctive or declaratory relief." *Dukes*, 564 U.S. at 360; *see also Allison v. Citgo Petroleum Corp*., 151 F.3d 402, 415 (5th Cir. 1998). Incidental damages are "those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established," without requiring "additional hearings" or "complex individualized determinations." *Allison*, 151 F.3d at 415.

Determining damages in this case cannot be conducted by merely applying a one-size-fits-all mechanical formula.  Rather, Plaintiffs seek nine items of relief, including, among others, back pay and punitive damages. (Ct. Doc. No. 196, Prayer for Relief). *See also Dukes*, 564 U.S. at 366–67 (monetary damages not incidental where individualized backpay is sought).[14]  And, given the individualized calculations that would be required if Plaintiffs prevail, it is clear "[t]he monetary

---

[13] This determination of negligence or willfulness is not merely a matter of damages but is an essential element of determining liability. *See* LA. STAT. ANN. § 23:635 (statute "shall not apply" with willful or negligent conduct).

[14] *See also Kabbash v. Jewelry Channel, Inc. USA*, No. A-16-CA-212-SS, 2017 WL 2473262, at *8 (W.D. Tex. June 7, 2017) (monetary damages not incidental where plaintiff seeks actual damages, restitution, disgorgement of profits, and punitive damages).

tail would be wagging the injunction dog." *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 826 (7th Cir. 2011). The difficulties with calculating liability or damages for the deductions claims alone, as discussed above, is completely untenable.[15]

Further, even if Plaintiffs are found to be employees, whether they are entitled to damages (and the amount of those damages) would also necessarily depend on several individualized factors, including: (1) whether there was a statute of limitations provision in their Distributor Agreements; (2) when they gained knowledge of their claims; (3) whether they were "franchisees" subject to the Louisiana statute and, if so, the extent of control exercised; (4) whether they signed an arbitration agreement; and (5) the extent and type of deductions, all of which may vary by distributor. In light of these individualized damage calculations, and without procedural protections afforded (b)(3) claims, Rule (b)(2) certification here would violate due process rights and is improper as a matter of law.

## B. The R&R Fails to Analyze the Evidence with the Requisite "Heigtened Scrutiny" for Decertification and Wholly Ignores Plaintiffs' Failure to Satisfy Their Burden of Proof.

When ruling on a motion for decertification, "[i]t is plaintiffs' burden to demonstrate that the opt-in plaintiffs are "similarly situated." *Rios v. Classic S. Home Constr., Inc.*, No. CV 15-4104, 2016 WL 2625886, at *4 (E.D. La. May 9, 2016). At decertification, this burden "is much more stringent." *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 280 (N.D. Tex. 2008) (citations omitted). When granting conditional certification, the Magistrate Judge acknowledged that the independent contractor inquiry and defenses involve multiple individualized inquiries that "should be considered at the decertification stage after discovery has

---

[15] The bulk of Plaintiffs' requests are the seven forms of monetary relief sought. Only two of Plaintiffs' requested items for relief are injunctive or declaratory in nature: 1) an order for injunctive and declaratory relief "designating the [distributors] as employees and enjoining Defendants" from treating them otherwise, and 2) an order declaring Defendant's conduct as "willful."   Both requests are merely mechanisms by which Plaintiffs can obtain monetary damages. Rule 23(b)(2) certification is not appropriate where a declaratory judgment "serves only to permit future adjudication of damages." *Paternostro v. Choice Hotel Int'l Servs. Corp.*, 309 F.R.D. 397, 403–04 (E.D. La. 2015).

occurred." (Ct. Doc. No. 136, p. 16).[16] Even a cursory review of the R&R, however, makes it clear that this was not done. Rather the R&R, again, merely adopts the reasoning of *Rehberg* when finding that the individualized evidence presented by Defendants is not sufficient to warrant decertification. (Ct. Doc. No. 339, p. 29 ("The undersigned adopts the rationale of the court in *Rehberg* on this point.")). The adoption of *Rehberg* is particularly problematic because, as the Fifth Circuit has recognized, "[t]he determination of whether an individual is an employee or independent contractor is highly dependent on the particular situation presented." *Thibault*, 612 F.3d at 848  (citing *Carrell v. Sunland Constr., Inc.*, 998 F.2d 330, 334 (5th Cir.1993)). This is because *actual practice* with the plaintiffs is central to this inquiry. *Id. See also Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1047 (5th Cir. 1987) ("it is not what the [workers] *could* have done that counts, but as a matter of economic reality what they actually *do* that is dispositive.") (emphasis in original); *Dole v. Snell*, 875 F.2d 802, 808 (10th Cir. 1989) (same).

Further, the reasoning of *Rehberg* on common classification is inconsistent with decisions *from this Circuit,* which the R&R ignores. *Kelly v. Healthcare Servs. Grp.*, Inc., 106 F. Supp. 3d 808, 813 (E.D. Tex. 2015) ("the decision to uniformly classify all employees as exempt is not, by itself, a sufficient justification to proceed as a [collective] action"); *Andel v. Patterson-UTI Drilling Co., LLC*, 280 F.R.D. 287, 290 (S.D. Tex. 2012) (when deciding when plaintiffs are similarly situated under the FLSA, "[t]he Court cannot only look to [Defendant's] uniform classification of the workers .... Instead, it must determine whether the proof to demonstrate that the workers are 'employees' or 'independent contractors' can be applied to the class as a whole"); *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 579 (E.D. La. 2008) (decertifying collective

---

[16] This is consistent with the law of this Circuit. *Prejean v. O'Brien's Response Mgmt., Inc*., No. CIV.A. 12-1045, 2013 WL 5960674, at *7 (E.D. La. Nov. 6, 2013) (citing *Thibault*, 612 F.3d at 846) (explaining that courts in this Circuit apply the economic realities factors or other individualized analyses at the decertification stage); *Andel v. Patterson–UTI Drilling Co*., 280 F.R.D. 287, 290 (S.D. Tex. 2012) (same).

action when "plaintiffs pitched their case as involving a uniform policy or practice of misclassifying [plaintiffs]" and offered actual evidence "through survey responses and witness testimony").[17]

Here, even a cursory review of the evidence establishes that decertification is necessary. Plaintiffs' deposition testimony shows that actual practice varied significantly with regard to alleged control by management, hiring helpers, owning outside businesses, ability to set schedule, and many other factors. (*See* Ct. Doc. No. 310-7). By failing to independently analyze this evidence against the often conclusory, unsupported assertions of Plaintiffs to determine whether Plaintiffs are truly "similarly situated" under the applicable heightened standard, the R&R allowed Plaintiffs to shirk their substantial burden and improperly denied decertification. *Rios*, 2016 WL 2625886, at *4 ( "[b]ased on the thin record presented to the Court, collective adjudication of the claims of the opt-in plaintiffs is not appropriate"). Not only does the R&R not hold Plaintiffs to this heightened standard—which they have clearly not met—but it also ignores all the evidence offered by Defendants that shows Plaintiffs are not similarly situated. For those reasons, the R&R must be rejected.

**C.  The R&R Ignores the Significant Due Process Concerns Associated with the "Representative Testimony" Offered by the FLSA Plaintiffs.**

Finally, the R&R completely fails to address the fairness and procedural considerations associated with collective treatment of Plaintiffs' claims and Defendants' defenses given the varied record. Rather, the R&R summarily states that "any differences in particular defenses can be adequately raised at a trial involving representative testimony," citing the same extensive string cite of cases found in *Falcon v. Starbucks Corp.* However, the R&R ignores any discussion of whether "representative testimony" even exists in this case, let alone can be used, at least without significant due process concerns for Defendants.  As the *Big Lots* decision makes clear, given the

---

[17] The *Falcon v. Starbucks Corp.* case cited is also distinguishable because there, unlike here, there was significant evidence of uniformity presented by the opt-ins. 580 F.Supp.2d 528, 536–37 (S.D. Tex. 2008).

varied testimony here, one Plaintiff cannot provide testimony that is "representative" of another because for every Plaintiff who provides testimony supporting employee status, Defendants can call several others who will say the exact opposite. 561 F. Supp. 2d 567, 574 (E.D. La. 2008) (decertifying a collective action because "[t]he diverse responses of opt-in plaintiffs" would result in "multiple individual trials on the merits [which] is the antithesis of a collective action."). Given these differences, Defendants "cannot be expected to come up with 'representative' proof when the plaintiffs cannot reasonably be said to be representative of each other." *Big Lots*, 561 F.Supp.2d at 586–87.

For example, a Plaintiff who didn't even service his territory on a full-time basis for 12 months—working no overtime—and had three outside businesses grossing between 3 to 4 million dollars (Doucet) is simply not representative of a Plaintiff who personally serviced his distributorship 50-60 hours a week and was totally dependent on his distributorship income. (Ct. Doc. No. 310-1, pp. 28–29). Using either Plaintiff's testimony as "representative" of all Plaintiffs' experiences would be fundamentally unfair, and no reliable inferences can be drawn about all Plaintiffs' experiences from either one.

Proceeding to a class-wide liability determination with this kind of varied testimony, without providing the opportunity to present the individualized evidence both parties already know exists to contradict it, would inevitably violate due process rights. *Id.* While Defendants acknoweldge that it may seem "more fair" to allow Plaintiffs to adjudicate their claims together, "[t]hose efficiency gains, however, cannot come at the expense of a defendant's ability to provide a statutory defense without raising serious concerns about due process." *Big Lots*, 561 F.Supp.2d at 587. And, relying on the "remedial nature" of the FLSA to justify continued collective treatment flies in the face of *Encino Motorcars, LLC v. Navarro,* 136 S. Ct. 2117, 2131 (2016) (rejecting

24

cannon that "courts must narrowly construe the FLSA exemptions" because "[t]here is no basis to infer that Congress means anything beyond what a statute plainly says simply because the legislation in question could be classified as 'remedial'"). The Magistrate Judge's failure to weigh the due process considerations seemingly at all is improper as a matter of law.

## IV.    CONCLUSION

For the reasons set forth above, the R&R must be set aside because it is clear that the Magistrate Judge did not comply with her legal obligation to closely analyze the facts and law in this case within the lens of the applicable legal tests to determine whether class and collective treatment is appropriate. Neither a common classification decision nor a non-binding decision involving different facts excuses this obligation. Because failure to conduct this analysis constitutes reversible error, Defendants' Objections should be granted.

RESPECTFULLY SUBMITTED

/s/  *Andrew J. Halverson*
Gregory Guidry, La. Bar No. 06489
Andrew J. Halverson, La. Bar No. 31184
**Ogletree, Deakins, Nash, Smoak**
   **& Stewart, P.C.**
603 Silverstone Road, Suite 102A
Lafayette, LA 70508
701 Poydras Street, Suite 3500
New Orleans, LA 70139
Telephone: 337.769.6583 / 504.648.3840
Facsimile: 504.648.3859
Email: gregory.guidry@ogletreedeakins.com

AND

* Margaret Santen Hanrahan, GA Bar No. 578314
* Michael Ray, IL Bar No. 6285109
*Benjamin R. Holland, NC Bar No. 28580
**OGLETREE, DEAKINS, NASH, SMOAK &**
**STEWART, P.C.**
201 South College Street, Suite 2300
Charlotte, NC  28244

25

Telephone:  704.342.2588
Facsimile:  704.342.4379
Email:  maggie.hanrahan@ogletree.com
michael.ray@ogletree.com
ben.holland@ogletree.com

* Admitted Pro Hac Vice

***ATTORNEYS FOR DEFENDANTS***

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been filed via the Court's Electronic Case

Filing System, which provides for service on all counsel of record.

This 27th day of August, 2018.

*/s/ Andrew J. Halverson*
ANDREW J. HALVERSON

35367926.1

35367926.1

27