UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

ANTOINE RICHARD, DARRELL
RICHARD, CHRIS MECHE, DERBY
DOUCET, SR., KEVIN RABEAUX, and
MARK LOUVIERE, individually and on
behalf of all similarly situated individuals,

  **Plaintiffs,**

**VERSUS**

**FLOWERS FOODS, INC.; FLOWERS
BAKING COMPANY OF LAFAYETTE,
LLC; FLOWERS BAKING COMPANY OF
BATON ROUGE, LLC; FLOWERS
BAKING COMPANY OF NEW ORLEANS,
LLC and FLOWERS BAKING COMPANY
OF TYLER, LLC,**

  **Defendants.**

**CIVIL ACTION NO. 15-cv-2557**

**DISTRICT JUDGE S. MAURICE
HICKS**

**MAGISTRATE JUDGE CAROL
B. WHITEHURST**

<u>**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
SUPPLEMENTAL MEMORANDUM IN SUPPORT OF CERTIFICATION AND
AGAINST DECERTIFICATION**</u>

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................... 1

II.   FACTUAL BACKGROUND ................................................................. 2

III.  ARGUMENT ........................................................................................ 3

   A. Fifth Circuit Law Mandates Rejection of Plaintiffs' Supplemental R&R ..................... 3

   B. Recent Fifth Circuit Law Requires Rejection of Plaintiffs' Motion for Class
   Certification........................................................................................... 5

     1.  As Clarified by Recent Authority, Common Classification is Irrelevant, and
       Cannot Serve as the Basis for Class Certification ............................................5

     2.  Differences in Both the Law and Facts Compel Denial of Class Certification under
       Rule 23 ...........................................................................................7

       a.   Commonality Does Not Exist ................................................. 7

         i.  The Varying IC Tests and Facts ..................................... 7

         ii.  The Elements of the LWPA Claims Are Individualized Cannot Be Proven
            Based Upon Common Evidence ..................................... 9

         iii. Numerous Putative Class Members Signed Different Agreements and Some
            Had Arbitration Agreements ......................................... 12

       b.   Individual Evidence Overwhelms and Predominance is Not Met ................... 13

       c.   A Class Action is Not Superior ............................................ 14

       d.   Rule 23(b)(2) Certification Cannot Stand.................................. 15

   C. Recent Case Law Likewise Requires the Court To Grant Decertification................... 16

     1.  Reliance on Common Classification Is Likewise Inappropriate in the FLSA
       Context .........................................................................................16

     2.  Recent Case Law Emphasizes that, Given the Fact-Specific Nature of the Economic
       Realities Test, Decertification Must Issue Here. ............................................17

     3.  The Facts At Issue Here Mirror *Clay*, and the Same Result is Warranted ...........19

     4.  Individualized Defenses, as in *Clay*, Also Warrant Decertification .........................21

     5.  Fairness and Procedural Considerations Require Decertification .........................24

IV.  CONCLUSION ................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
　521 U.S. 591 (1997)....................................................................................................13

*Barrilleaux v. Hartford Life and Acc. Ins. Co.*,
　2014 WL 3778696 (E.D. La. July 29, 2014) ...............................................................13

*Bolin v. Sears*,
　231 F.3d 970 (5th Cir. 2000) ......................................................................................15

*Clay v. New Tech Global Ventures*,
　2019 WL 1028532 (W.D. La., March 4, 2019) (deGravelles, J.) ................................. *passim*

*Douglas v. First Student, Inc.*,
　888 F.Supp.2d 929 (E.D. Ark. 2012).........................................................................23

*Encino Motorcars, LLC v. Navarro*,
　136 S.Ct. 2117 (2016)................................................................................................25

*In re FedEx Ground Package System, Inc., Employment Practices Litigation*,
　662 F.Supp.2d 1069 (N.D. Ind. 2009) .......................................................................10

*Flecha v. Mericredit*,
　2020 WL 91267 __ F.3d __ (5th Cir. Jan. 8, 2020)....................................................... *passim*

*Garcia v. Vasilia*,
　2019 WL 3555266 (S.D. Tex. Aug. 5, 2019) ........................................17, 18, 19, 22

*Guanzon v. Vixxo Corp.*,
　2019 WL 1586873 (D.Ariz. Apr. 12, 2019) ...............................................................6

*Hobbs v. Petroplex Pipe and Construction, Inc.*,
　2020 WL 113990, __ F.3d __ (5th Cir. Jan. 10, 2020).........................................17, 18

*Holick v. Cellular Sales of New York, LLC*,
　2019 WL 1877176 (N.D.N.Y. Apr. 26, 2019) ............................................................6

*Hopkins v. Cornerstone Am.*,
　545 F.3d 338 (5th Cir. 2008) .....................................................................................18

*Hulbert v. Demonstrate State Central Committee of Louisiana*,
　68 So.3d 667 (La. Ct. App., 1st Cir. 2011) .................................................................9

*In re JP Morgan Chase & Company*,
   916 F.3d 494 (5th Cir. Feb. 21, 2019) .................................................................12

*Kumar v. Tech Mahindra (Americas) Inc.*,
   2019 WL 1330935 (E.D. MO March 25, 2019) .......................................................6

*Leon v. Diversified Concrete, LLC*,
   2016 WL 6247674 (E.D. LA. Oct. 26, 2016) ........................................................14

*Lindsley v. Omni Hotels Mgt. Corp.*,
   2019 WL 2743892 (N.D.Tex. July 1, 2019) .........................................................13

*M.D. Claims Group, LLC v. Anchor Specialty Ins. Co.*,
   2018 WL 6739066 (M.D. La., Dec. 24, 2018)........................................................8

*Moody v. Associated Wholesale Grocers, Inc.*,
   2019 WL 6036707 (E.D. La. Nov. 14, 2019) ................................................ *passim*

*Noll v. Flowers Foods, et al.*,
   2020 WL 476362 (D. Maine, Jan. 29, 2020) .......................................................23

*Ocampo v. Maronge*,
   2017 WL 6603925 (La.Ct. App. 2017).................................................................9

*Parrish v. Premier Directional Drilling*,
   917 F.3d 369 (5th Cir. Feb. 28, 2019) .......................................................... *passim*

*Radford v. Pevator Companies, LTD*,
   2019 WL 7282110 (S.D. Tex. Dec. 27, 2019) .....................................................17

*Rehberg v. FBC of Jamestown, LLC*,
   2015 WL 1346125 (W.D.N.C. March 23, 2015) .......................................... *passim*

*Samson v. Apollo Resources, Inc.*,
   242 F.3d 629 (5th Cir. 2001), The R&R .........................................................11, 12

*Scales v. Huntleigh USA Corp.*,
   2012 WL 860381 (E.D. La. 2012) .....................................................................11

*Slaughter v. Board of Supervisors S. Univ.*,
   76 So.3d 438 (La. Ct. App. 2011).......................................................................11

*Stegall v. Orr Motors of Little Rock, Inc.*,
   121 So.3d 684 (La. App. 2 Cir. 2013) .................................................................11

*M.D. ex rel. Stukenberg v. Perry*,
   675 F.3d 832 (5th Cir. 2012) ............................................................................5, 6

*Thibault v. Bellsouth Telecomm., Inc.*,
  612 F.3d 843 (5th Cir. 2010) .................................................................................16, 18, 19

*Thomas v. Wallace, Rush, Schmidt, Inc.*,
  2019 WL 2617818 (M.D. La. June 26, 2019) ......................................................................15

*Tyson Foods v. Bouaphakeo*,
  126 S.Ct. 1036 (2016).........................................................................................................13

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .............................................................................................................7

*Ward v. Hellerstedt*,
  753 Fed.Appx. 236 (5th Cir. Oct. 16, 2018) ............................................................. *passim*

**Statutes**

26 U.S.C. 3121(d)(3)(A) ...............................................................................................................2

Fair Labor Standards Act .................................................................................................. *passim*

LA Rev. Stat. §23:921(F)(2)-(3) ...................................................................................................9

LA Rev. Stat. §23:921(F)(3) .......................................................................................................14

La. Rev. Stat. §23:635...................................................................................................................10

La. Rev. Stat. §23:1163...............................................................................................................14

Motor Carrier Act ...................................................................................................................22, 23

Technical Corrections Act ............................................................................................................23

**Other Authorities**

Federal Rule of Civil Procedure 23 ................................................................................... *passim*

## I.   INTRODUCTION

This Court rendered its Report & Recommendation ("R&R") in this matter on August 13, 2018.  [Doc. 339].  Following Defendants' objections, the District Court remanded the matter back to this Court for further analysis "[i]n light of Fifth Circuit precedent, objections, and response." [Doc. 376, p.1].[1]

Since the Court rendered its R&R nearly a year and a half ago, the Fifth Circuit and district courts within the Fifth Circuit have made unmistakably clear that, under the facts of this case, (i) the Court must deny Rule 23 class certification; and (ii) the FLSA collective must be decertified. Indeed, the Fifth Circuit has clarified that many of the key points upon which the R&R relied are not viable.  Examples include the following:

- In both its Rule 23 and FLSA analysis, the Court relied heavily upon the common classification of Plaintiffs as independent contractors, as well as the North Carolina *Rehberg* court's[2] reliance on same five years ago.  The Fifth Circuit and local district courts have since clarified that is not permissible.  *See, e.g., Flecha v. Mericredit*, 2020 WL 91267 __ F.3d __ (5th Cir. Jan. 8, 2020) (finding that class did not meet various requirements under "exacting" Rule 23 application required in Fifth Circuit); *Ward v. Hellerstedt*, 753 Fed.Appx. 236, 246 (5th Cir. Oct. 16, 2018)(vacating district court's class certification order based upon failure to conduct rigorous analysis under Rule 23 and citing "the district court's failure to substantively address actual or potential differences in purported class members' individual circumstances and claims … since considering dissimilarities among claimants is <u>essential</u> to determining whether a single common question exists" ) (emphasis added); *see also, Clay v. New Tech Global Ventures*, 2019 WL 1028532 (W.D. La., March 4, 2019) (deGravelles, J.) (decertifying FLSA independent contractor collective action and specifically holding that common classification as an independent contractor is not a basis for declining to decertify because "if the economic realities test requires different proof and is unlikely to produce the same result for each plaintiff in the collective, certification is not appropriate.")[3]

- Similarly, again in both its Rule 23 and decertification analysis, the R&R relied significantly upon the tax filing designation of Plaintiffs as "statutory employees." [Doc.

---

[1] Page citations to the record reference the page numbers in the header of the filed documents.
[2] *Rehberg v. FBC of Jamestown, LLC*, 2015 WL 1346125 (W.D.N.C. March 23, 2015).
[3] The Court is likely well-aware of the *Clay* matter, as the docket indicates that the Court served as the magistrate in the *Clay* action.

339, pgs. 11, 26].[4]   However, the Fifth Circuit recently held the <u>form</u> of the tax return is largely irrelevant to the IC analysis—what matters is the <u>individualized</u> <u>content</u> of the tax returns; an issue the R&R declined to address.  *Parrish v. Premier Directional Drilling*, 917 F.3d 369, 388 (5th Cir. Feb. 28, 2019) ("*[H]ow* plaintiffs file tax returns has limited relevance in the economic realities test.  On the other hand … *what* those tax returns contain may prove useful in evaluating certain *Silk* factors, such as profit and loss.")  (citations omitted; emphasis in original).

- Furthermore, while the Court's R&R did not substantively analyze the elements of either the LWPA claims or the FLSA economic realities test, subsequent case law has demonstrated such analysis is essential.  *See Ward,* 753 Fed.Appx. at 246 (holding district court conducted inadequate Rule 23 analysis and that "it is incumbent on the district court to consider and discuss the facts of this case as well as the elements of Plaintiffs' claims…"); *see also Clay,* 2019 WL 1028532 at *11 (holding, despite the fact that "all of the plaintiffs perform similar tasks … and their circumstances with respect to supervision and method of salary are relatively comparable, application of the economic realities test will necessarily require individualized proof for each plaintiff and is not suitable for a collective action").

As set forth herein, proper application of governing law requires the Court to: (i) deny Rule 23 class certification, and (ii) decertify the FLSA collective, just as Judge deGravelles did in *Clay*. The stark differences in the evidence in this case are strikingly similar to *Clay* and compel the same result.

## II.    FACTUAL BACKGROUND

The Plaintiffs at issue in this case are a diverse pool of independent contractor ("IC") distributors who have purchased distribution rights from three different and separately operated subsidiaries to buy and sell products.  The Rule 23 putative class includes over 300 distributors operating across Louisiana in a variety of business forms, in varying geographic locations, with differing workforces, some of whom have executed arbitration agreements with class/collective waivers, and who take advantage of the distributor model much differently. *See, e.g.* [Doc. 317-2, 317-3, and 317-4].  The FLSA collective contains approximately 98 opt-ins, who demonstrate

---

[4] Pursuant to 26 U.S.C. 3121(d)(3)(A), the "statutory employee" designation is only applicable to common law independent contractors.  With this designation, Plaintiffs still disclose business expenses/deductions and related business profit and loss on their tax returns.

these same significant differences as well.  *Id.*; *see also* [Doc. 310-7].   Examples of these myriad differences are set forth in the chart attached hereto as **Exhibit 1** and previous submissions. *See* [Doc. 310-7; Doc. 317-9].

## III.   ARGUMENT

### A.  Fifth Circuit Law Mandates Rejection of Plaintiffs' Supplemental R&R

In a self-serving and transparent attempt to have the Court bypass the "rigorous analysis" necessary under Rule 23, Plaintiffs filed their Supplemental Memorandum in Support for Certification and in Opposition to Decertification, asking the Court to simply rubber-stamp the order they drafted.  [Doc. 383].  The content of that pleading was to supplement a *verbatim* copy of the Court's previous R&R "with footnotes to the record evidence supporting its propositions." *Id.,* p.7.   As recent Fifth Circuit law has made clear, accepting Plaintiffs' self-serving, one-sided proposal would violate Fifth Circuit law as well as Judge Hicks' order to reconsider the R&R "in light of Fifth Circuit precedent…."

As the Fifth Circuit re-emphasized in *Ward,* in conducting its rigorous analysis, the Court must "look beyond the pleadings to understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues."  753 Fed. Appx. at 244.   Fifth Circuit law requires the Court to conduct an <u>independent</u> analysis, and even stipulations between the parties on issues or the failure of a party to contest any of Rule 23's requirements do not relieve the Court of that critical judicial duty.  *See id.* ("[T]he obligation of a district court to conduct a rigorous analysis of Rule 23's requirements, as evidenced by written reasons for certification, is not dispensed with by the parties' stipulation to certification or failure to contest one or more of Rule 23's requirements since 'the court [is] bound to conduct its *own* thorough … inquiry.") This "independent analysis" is necessary to, among other things, "protect unknown or unnamed potential class members …".  *Id.*   Here, Plaintiffs ask the Court to skip its

critical independent duty to perform a rigorous analysis, and simply accept their own self-serving record cites; Fifth Circuit law prohibits this.[5]  Furthermore, the independent analysis is particularly necessary now, as the prior R&R cut and pasted important evidentiary conclusions directly from Plaintiffs' class certification briefing, which is similarly inconsistent with the requisite rigorous analysis.  *See* **Exhibit 2**.[6]

Moreover, in their submission, Plaintiffs' citations misrepresent the full record in this case, and omit critical facts which must be analyzed as part of the Court's independent obligation to conduct a rigorous analysis. For example, Plaintiffs' Supplemental R&R contains citations only to *Plaintiffs'* submitted evidence and does not even cite, let alone "rigorously" analyze the hundreds of pages of contrary evidence submitted by Defendants. [Doc. 383, pgs. 7-41].[7]  For example, while a combined 43 Named Plaintiffs and opt-in Plaintiffs were deposed in the case, in their "supplemental" R&R, Plaintiffs rely extensively on self-serving affidavits submitted with their FLSA conditional certification motion filed back in 2016 [Doc. 105] — not the voluminous depositions taken in this case (of many of those same individuals) in the two years of discovery that followed.  *See, e.g.,* [Doc. 383, FNs 3, 9, 18, 19, 21, 25, 30, 39].[8]  Plaintiffs' citations also rely heavily on deposition testimony in the *Rehberg* action, which involves different facts, distributors,

---

[5] As set forth in more detail herein, Fifth Circuit law since the R&R has clarified that many of the legal positions set forth in the R&R are not tenable, and, regardless of Plaintiffs' supplemental memorandum, reconsideration of the key legal issues underlying the R&R is necessary.

[6] Exhibit 2 compares the language of the R&R with Plaintiffs' motion for class certification.  With due respect to the Court, in multiple places, the exhibit shows that the verbatim content of Plaintiffs' class certification briefing was cut and pasted into the R&R, but the R&R did not cite or analyze any of the of contrary evidence submitted by Defendants.

[7] Contrary evidence was set forth by Defendants at length in the brief and related evidence. [Doc. 317, Doc. 317-1 to 317-12].

[8] Many of the affiants testified divergently from their cookie-cutter affidavits.  A few examples of this include:  Darrell Richard's affidavit states "Flowers controls my compliance by the issuance of 10 day letters." [Doc. 105-3, p. 356]. However, he later testified that he has never received a breach letter in his twelve years as a distributor.  [D. Richard Dep. II 55:1-55:13, Doc. 310-5, p. 591]. Doucet's affidavit states "I must work seven days a week" [Doc. 105-3, p. 351], but he directly contradicted this statement in his deposition when he admitted that his son serviced his territory for him on a full-time basis for a year so he could work at his other businesses. Doucet Dep. I 93:4-23 [Doc. 118-1, p. 112].

defendants and laws.  Indeed, Plaintiffs rely heavily on the deposition of Jimmy Woodward in the *Rehberg* case. Doc. 383, FNs 21, 27, 40.  Woodward was employed by Flowers Foods, Inc., but has been not been employed since <u>2007</u> (outside of all relevant statute of limitations), and regardless, testified about nothing in the State of Louisiana.  [Doc. 319-5, p. 106 (Woodward Dep. 61:6-8)].  Fifth Circuit law demands that the Court reject rubber-stamping Plaintiffs' supplemental R&R.

### B.  <u>Recent Fifth Circuit Law Requires Rejection of Plaintiffs' Motion for Class Certification</u>

As recently clarified in Fifth Circuit cases such as *Ward* and *Flecha,* the Court must independently apply an "exacting" standard in analyzing all the elements of Rule 23.  Respectfully, the prior R&R did not do so, and, in fact, the record evidence in this case reviewed under recent binding Fifth Circuit authority demonstrates that class certification must be denied.

#### 1.  <u>As Clarified by Recent Authority, Common Classification is Irrelevant, and Cannot Serve as the Basis for Class Certification</u>

The R&R's previous Rule 23 analysis rested largely on the common classification of distributors as independent contractors.[9]  For example, the R&R reasoned that Flowers was foreclosed from claiming individualized analysis was necessary under Rule 23 based on the common classification of distributors as independent contractors.  To that end, the R&R stated:

> At the time Flowers classified every employee [sic] in this manner, it did not engage in an individualized analysis of the particular circumstances surrounding each distributor's job.  Flowers cannot rely on such an argument to defeat class certification of Plaintiffs' claims.

---

[9] The R&R also relied significantly upon the out of circuit class certification decision in *Rehberg,* 2015 WL 1346125. However, the Fifth Circuit has previously cautioned and undue reliance "on the conclusions of other courts that have certified similar classes" together with insufficient analysis of the particular facts at issue constitutes reversible error at class certification. *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 842-843 (5th Cir. 2012).  Reliance on the *Rehberg* decision from North Carolina, involving different plaintiffs, different facts, different entities, and different statutes with different elements is inappropriate here.  Rather, the Court's duty is to independently review the record in this case.

[Doc. 339, p. 11.] Not so. As re-emphasized by recent case law, the R&R's presumption was legally wrong, and cannot be used to satisfy the elements of Rule 23. *See, e.g., Flecha*, 2020 WL 91267 at *4 ("[C]ourts must certify class actions based on proof, not presumptions.").[10] Regardless of any common classification issue, the Court must still conduct its own independent rigorous analysis of the Rule 23 factors in reference to the particular facts at issue and legal elements of the claims—common classification provides no short-cut around that required analysis. *See, e.g., Ward,* 753 Fed.Appx. at 246 ("[I]t is incumbent on the district court to consider and discuss the facts of this case, as well as the elements of Plaintiffs' claims, prior to rejecting Defendant's argument that dissimilarities among individual claimants obviate commonality."); *see also Stukenberg*, 675 F.3d at 843-44 (holding same). Notably, the R&R lacked a single reference to either the record or the legal elements to show an IC is an "employee" under the LWPA, which Fifth Circuit law mandates.[11] *See, e.g., Ward,* 753 Fed.Appx. at 246. However, when the facts

---

[10] Courts outside of the Fifth Circuit have likewise recently rejected reliance on common classification. *See Holick v. Cellular Sales of New York, LLC*, 2019 WL 1877176 (N.D.N.Y. Apr. 26, 2019) ("[I]t is well established that blanket classification decisions do not automatically qualify the affected employees as similarly situated, nor eliminate the need to make a factual determination as to whether class members are actually performing similar duties." )(quoting *Stevens v. HMSHost Corp.*, 2014 WL 4261410 at *5 (E.D.N.Y. Aug. 27, 2014); *Guanzon v. Vixxo Corp.*, 2019 WL 1586873 (D.Ariz. Apr. 12, 2019) (decertifying FLSA collective despite common classification because record evidence revealed divergent testimony about job duties); *Kumar v. Tech Mahindra (Americas) Inc.*, 2019 WL 1330935 at *6 (E.D. MO March 25, 2019) (rejecting Plaintiffs' common classification argument, stating "[t]hat every member of the collective was classified as exempt is too general to establish they are similarly situated, especially in light of the factual differences…"); *see also* [Doc. 342-1, pgs. 12-16 (and authority cited therein)].

[11] In its prior R&R, the Court expressly rejected Defendants' request to consider the application of the facts to the legal elements of the LWPA claims, a step required by Fifth Circuit authority such as *Ward* and *Stukenberg*. On that point, the R&R stated as follows:

> Flowers argues that the Court will be required to engage in individualized analyses to determine the propriety of the distributors as either employees or independent contractors, and attempts to engage in an analysis of different factors that are necessary to consider under Louisiana law to determine independent contractor status. As the plaintiffs point out, however, such an argument is inconsistent with the courts' rejection of employers' efforts to defeat certification where the employer has subjected all class members to uniform classification for payment and tax purposes, and with Flowers' own policy and pattern of treating all distributors uniformly.

[Doc. 339, p.11]. Recent authority rejects this analysis. *Ward* makes clear that the Court *must* consider the legal elements and individualized facts, *Parrish* expressly rejected reliance on tax classification in the IC context, and *Clay* indicates, in the Western District of Louisiana, common classification should not be relied upon; rather, the relevant legal tests must be analyzed.

and law are "rigorously" analyzed through the spectrum of governing authority, class certification cannot stand.  *See Flecha*, 2020 WL 91267 at *3 ("Courts must enforce the requirements of Rule 23 vigorously.")

2.   Differences in Both the Law and Facts Compel Denial of Class Certification under Rule 23

a.   Commonality Does Not Exist

In finding this prong was satisfied, the R&R relied upon common classification as ICs along with the purported fact that the LWPA claims "arise from Flowers' conduct that is common to all distributors." [Doc. 339, p. 16]. But finding a "common" question is the easy part, as "any competently crafted complaint literally raises common questions." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  The more exacting inquiry to satisfy commonality is whether the "the claims of every class member 'depend upon a common contention … that is capable of class-wide resolution, meaning that the contention is 'of such a nature … that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Flecha*, 2020 WL 91267 at *3 (quoting *Dukes*, 564 U.S. at 350).   Here, the claims are not capable of resolution in "one stroke."  Far from it. Both the IC analysis and "fine" analysis under the LWPA are of such an individualized nature that proof of those issues as to one distributor does nothing to prove the issue for any other distributor, let alone several hundred absent class members.

i.   *The Varying IC Tests and Facts*

Because the LWPA applies only where Plaintiffs can first establish they are "employees," the Court must first determine whether the independent contractor classification issue can be addressed in "one stroke" based on common evidence. As the Fifth Circuit emphasized in *Ward*,

---

the must be done specifically in relation to the facts of the case as well as the legal elements of the underlying claims.  753 Fed.Appx. at 246.   The record is replete with examples of why that is not possible in this case.

First, depending upon the exact distributor agreement that each distributor signed and when it was signed, the elements of the IC test under the LWPA differ.  Distributors in the putative class signed varying distributor agreements, and distributors who executed contracts after August 1, 2006 were treated as franchises.  [Doc. 317-5 and Ex. 1 thereto]  Pursuant to Louisiana law, these distributors can be employees under the LWPA only if Plaintiffs can demonstrate the particularized exemption to the default rule that "a franchisee … shall [not] be deemed to be an employer of the franchisor for any purpose." LA Rev. Stat. §23:921(F)(2)-(3).[12]  And, the relevant facts regarding how distributors operated, which must be analyzed, are widely varied.  *See* Exhibit 1; Doc. 317-9.

For those distributors who did not execute a franchise agreement, the LWPA requires a different non-exhaustive five-factor test for evaluating IC status.[13]  Pursuant to *Ward* and related authority, the Court would then have to analyze the elements of this test, and the evidence in

---

[12] More specifically, LA Rev. Stat. 23:921(F)(2)-(3), which provides "[e]xcept as provided in Paragraph (3) of this Subsection, neither a franchisee who is a party to a franchise agreement … nor an employee of the franchisee shall be deemed to be an employer of the franchisor for any purpose."  *Id.* (F)(2).   The exception to the rule then provides:

> Pursuant to [the Louisiana Wage Payment Act] … an employee of a franchisee may be deemed an employee of the franchisor only where the entities share or co-determine those matters governing the essential terms and conditions of employment and directly and immediately control matters relating to the employment relationship such as hiring, firing, discipline, supervision and direction.

*Id.* (F)(3).

[13] The non-exhaustive factors include:  (1) whether there is a valid contract between the parties; (2) whether the work being done is of an independent nature such that the contractor may employ nonexclusive means in accomplishing it; (3) whether the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction of the principal, except as to the result; (4) whether there is a specific price for the overall undertaking agreed upon; and (5) whether the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without corresponding liability for its breach.  *See M.D. Claims Group, LLC v. Anchor Specialty Ins. Co.*, 2018 WL 6739066 at *3-*4 (M.D. La., Dec. 24, 2018) (dismissing LWPA claims as plaintiffs were properly classified as ICs when: (i) one plaintiff admitted he was an IC; (ii) one plaintiff was hired on a 1099 basis; (iii) providing claim management services at a particular location was a "specific and circumscribed task"; (iv) plaintiff worked "relatively independently; and (v) the services provided were more akin to services performed by a third-party administrator).

relation to it.  753 Fed. Appx. at 246.  Like the FLSA determination, the LWPA determination is highly factual and "*must be decided on a case-by-case basis*."  *Hulbert v. Demonstrate State Central Committee of Louisiana*, 68 So.3d 667, 670 (La. Ct. App., 1st Cir. 2011) (emphasis added); *Ocampo v. Maronge*, 2017 WL 6603925 (La.Ct. App. 2017) (same); *see also Clay,* 2019 WL 1028532 at *11 (noting fact specific application of IC test in FLSA context). In making this case-by-case determination, "no one factor is controlling, and the court must consider the totality of the circumstances." *Id.* at 671.  Especially given that the IC test must be applied individually, and the wide-ranging facts on the relevant issues, there is no common evidence sufficient to try this case as a class action.  Significant differences abound on key issues such as: (i) who performs the work/use of helpers; (ii) ownership of multiple territories and other investments; (iii) outside businesses; (iv) business form; (v) sales of non-Flowers products; (vi) sales activities; (vii) engagement with sales management; and (viii) determining hours of work and time of service. *See generally* Docs. 310-6; 310-7; Doc. 310, pgs. 13-18; Docs. 317-2 to 317-12; Exhibit 1.

ii.   *The Elements of the LWPA Claims Are Individualized Cannot Be Proven Based Upon Common Evidence*

Even if the Court were to find that the independent contractor issue was capable of common class determination under the varying legal tests (which it is not), the Court must still independently determine whether adjudication of the LWPA "fine" claim itself is subject to class-wide determination based on common evidence, and the facts and law show it is not. *See, e.g., Flecha*, 2020 WL 91267 at *2 (Rule 23 analysis "begins, of course, with the elements of the underlying cause of action.")

The statute at issue provides as follows:

No person, acting either for himself or as agent or otherwise, shall assess any fines against his employees or deduct any sum as fines from their wages.  This section shall not apply in cases where the employees willfully or negligently damage goods

9

or works, or in cases where the employees willfully or negligently damage or break the property of the employer.

La. Stat. Ann. §23:635.  Adjudication of the elements of the LWPA fine claim are inherently individualized for multiple reasons.  First, "willful" or "negligent" conduct by the purported employee in any instance negates liability under the statute.  Based on this key fact, the court in *In re FedEx* denied class certification of the LWPA "fine" claim, reasoning as follows:

> The statute prohibits the assessment of fines and *whether a deduction constitutes a fine can only be determined by examining the conduct of the individual class members*.  There might be cases in which FedEx properly deducted wages and other instances where it was improper.  The plaintiffs contend that this can be addressed at the damages stage, but whether the deduction was proper isn't a damages issue; it's an issue of liability.  Unlike simple problems of calculation of damages for a driver who worked for a known period of time, this issue can't be resolved systematically because it depends on FedEx's application of its policy to individual drivers and the drivers' conduct in each instance.

*In re FedEx Ground Package System, Inc., Employment Practices Litigation*, 662 F.Supp.2d 1069, 1092-1093 (N.D. Ind. 2009).  This analysis applies with equal force here, where Plaintiffs are claiming that items such as "shrink" (missing or stolen product) and "stale" (product past its sell-by date) constitute impermissible "fines" under the LWPA and litigation of such claims requires analysis of their individual activities, even on a daily basis.  Whether or not a particular deduction for missing product in a store (shrink) was caused by the negligent or willful conduct of a distributor (in miscounting inventory, failing to count inventory altogether, etc…) or due to no fault of the distributor (e.g., theft from the store) fundamentally determines whether the deduction is an impermissible "fine" in the first place.  *See also* [Doc. 342-1, pgs. 24-25].  Just as in *FedEx*, threshold liability issues here depend upon the distributor's conduct "*in each instance,*" rendering class treatment impossible. *Id.* at 1093 (emphasis added).

10

Furthermore, "not all deductions from an employee's pay are prohibited fines."[14] *Slaughter v. Board of Supervisors S. Univ.*, 76 So.3d 438, 457 (La. Ct. App. 2011). For example, deductions made pursuant to contract or where the employee is aware of the policy for the deductions are not fines.[15] *Id.* Courts must review the individualized facts at issue to determine if the particular deduction is a "fine" or not. *See, e.g., Scales v. Huntleigh USA Corp.*, 2012 WL 860381 at *4 (E.D. La. 2012) (dismissing LWPA "fine" claim because particularized facts led to the inference deductions were not penal in nature). As the Fifth Circuit has held, not only must the alleged fine be "arbitrarily fixed and assessed," but it must also be issued as "punishment against the employee for violating a work place rule or regulation." *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 637 (5th Cir. 2001).[16]

---

[14] The R&R indicated that "Flowers admittedly charges every distributor a myriad of fines by deducting such fines from distributors' weekly settlement checks and admits to reducing distributors' settlement checks by applying these fines and deductions." The R&R did not cite any evidence in support of this conclusion, and did not analyze what deductions actually constitute "fines" as a matter of law, as the R&R took this verbiage verbatim from Plaintiffs' motion for class certification. *See* Exhibit 2, p. 1. Respectfully, the R&R's failure to independently analyze these issues is especially important, as Plaintiffs asserted <u>thirteen</u> different types of alleged deductions as "fines" and the R&R did not engage in any analysis of whether any of them could be proven to be pecuniary in nature, let alone on a class basis. For example, in their motion for class certification, Plaintiffs identified the following expenses deducted from settlement statements as purported "fines": (i) warehouse rent; (ii) administrative fees; (iii) territory note; (iv) vehicle note; (v) customer price allowances; (vi) interest charges; (vii) insurance; (viii) unauthorized ordering of products; (ix) stale charges; (x) shrink charges; (xi) other "involuntary" expenses; (xii) failure to credit transferred or dropped items; and (xiii) sales and use taxes. [Doc. 299-1, pgs. 32-33].

[15] In many instances, Distributors acknowledged that they were contractually responsible for their business expenses and did not regard such deductions as a "fine." *See, e.g.,* Botos Dep. 79:5-17 (admitted he has never been charged for anything he did not authorize) [Doc. 317-12, p. 10]; Holcomb Dep. 63:10-18, 78:4-11 (admitted that he authorized all of the business expenses withheld from his weekly settlement statement and does not consider those amounts fines) [Doc. 317-2, pgs. 79-81].

[16] The R&R indicated that an "employer's unilateral, arbitrary, or unreasonable deduction of employees' wages is a fine." [Doc. 339, p.12]. But that is only half of the applicable legal test. As the Fifth Circuit held in *Samson*, a "fine" must also be assessed for punitive reasons. 242 F.3d at 637. *Cf. Stegall v. Orr Motors of Little Rock, Inc.*, 121 So.3d 684 (La. App. 2 Cir. 2013) (deductions as penalty for mistake on warranty and failing to produce sufficient work were punitive and constitute a "fine"). Respectfully, the R&R cut and paste Plaintiffs' recitation of the legal standard for a "fine" from their motion for class certification. *Compare* [Doc. 339, p. 12] *with* [Doc. 299-1, pgs. 29-30]. This is evident because the R&R contains two citations to "*Stegall, supra,* note 3," yet the R&R contains no footnotes. *Stegall* is, however, discussed in footnote 3 of Plaintiffs' Memorandum in Support of Class Certification. [Doc. 299-1, p.8, n.3].

So, to adjudicate the "fine" claim, the Court must:  (i) determine the nature of the deduction at issue; (ii) whether the deduction was authorized by contract or other agreement; and (iii) determine whether the distributor's conduct in each instance was "willful" or "negligent," all the while keeping in mind that the statute must be "strictly construed." *Samson*, 242 F.3d at 637; *see also Ward*, 2020 WL 91267 at *2 (court must analyze claims, facts, defenses and substantive law at certification stage).  The need for all these individualized determinations requires denial of class certification.

### iii.    Numerous Putative Class Members Signed Different Agreements and Some Had Arbitration Agreements

The R&R found that all plaintiffs in the Rule 23 class were subject to the same distributor agreement. [Doc. 339, p. 2 (contracts all contain "the same essential terms.").  This is not correct; not only were there multiple different versions of the Agreement at issue, but a substantial number of those agreements contain differing terms such as arbitration provisions and statute of limitations provisions. [Doc. 317, pgs. 25-26]. This Court has already compelled arbitration, after extended briefing and hearings, of a limited number of FLSA opt-ins, but has not addressed the issue among the Rule 23 class.  Any individual with a class waiver/arbitration agreement cannot be part of any Rule 23 class in this matter.  *Cf. In re JP Morgan Chase & Company*, 916 F.3d 494, 502 (5th Cir. Feb. 21, 2019) (individuals who signed arbitration agreements not only cannot join the FLSA collective, but should not even receive notice of the action because such communication would merely "stir[] up litigation.").  Furthermore, to the extent that Plaintiffs again seek to challenge these arbitration agreements among the Rule 23 population, which already required extensive briefing and an evidentiary hearing once, that presents yet another individualized issue.

In addition, certain distributor agreements in the putative class contain clauses which shorten the statute of limitations for bringing claims to one-year or require a claim for Company

breach of the distributor agreement be brought within 30 calendar days of the first alleged breach. [Doc. 317-2, ¶¶ 7-8, Exs. 2-4; Doc. 317-3, ¶¶ 7-8, Exs. 2-4; Doc. 317-4, ¶¶ 7-8, Exs. 2-4].[17]   These issues must be addressed under *Ward* and *Flecha.* The R&R did not address any of these important and decidedly uncommon issues, which compel denial of class certification.

> b.   Individual Evidence Overwhelms and Predominance is Not Met

It is well-established that predominance is far more strict that commonality, and the Court must carefully scrutinize the relationship between common questions and individual questions.   *See, e.g., Lindsley v. Omni Hotels Mgt. Corp.*, 2019 WL 2743892 (N.D.Tex. July 1, 2019).   As the Supreme Court has stated, "[a]n individual question is one where members of the proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [that] the issue is subject to generalized, class-wide proof." *Tyson Foods v. Bouaphakeo*, 126 S.Ct. 1036, 1045 (2016).   That means proof of the claims as to some class members must necessarily be able to be extrapolated to other absent class members, without prejudicing either party.   *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).   Furthermore, predominance requires the court to review how the case would be tried and whether common issues would predominate in that context. *Flecha*, 2020 WL 91267 at *2.

Ultimately, the Court is left determining can the outcome at trial for one or several distributors properly be extrapolated to other absent class members?   For example, given the fact-based nature of the IC analysis under the LWPA, can the outcome of the IC analysis for a multi-territory owner who rarely worked his territories personally be fairly extrapolated to a sole proprietor who nearly

---

[17] Louisiana courts have generally enforced such provisions limiting the prescriptive period.   *See, e.g., Barrilleaux v. Hartford Life and Acc. Ins. Co.*, 2014 WL 3778696 (E.D. La. July 29, 2014) ("Louisiana permits parties to reduce a prescriptive period by contract.") (citing 6 Saul Litvinoff, *La. Civ. Law Treatise* § 11.22).

exclusively worked one territory personally and had no other income?[18]   Or vice versa? The answer, of course, is no.  Moreover, as part of any trial, the Court would be asking *the jury* to ultimately decide these issues.  Asking a jury to make such a findings involving variant facts and legal tests that differ from distributor-to-distributor is not viable. As Defendants stated previously, there is no trial plan that Plaintiffs can proffer that allows the parties to adjudicate these diverse issues for all 300+ Louisiana distributors across-the-board in a manageable and efficient manner without violating Due Process.  *See* [Doc. 317, p.36].[19]

### c.   A Class Action is Not Superior

For all the reasons presently set forth, a class action is not the superior method for adjudicating this case.  A trial on the merits would require a vast amount of individualized proof, rendering it unmanageable.  Similar to commonality, in analyzing superiority, Fifth Circuit law requires deep analysis of "the claims, defenses, relevant facts, and applicable substantive law." *Flecha*, 2020 WL 91267 at *2.  All those factors impel the conclusion that a class action is not superior here.

---

[18] And, as part of this analysis, the fact-finder would have to review the particular contract that each distributor signed to determine if they are subject to the general LWPA multi-factor analysis or the elements of LA Rev. Stat. §23:921(F)(3) applicable to franchises.

[19] In evaluating predominance previously, the R&R relied upon *Leon v. Diversified Concrete, LLC*, 2016 WL 6247674 (E.D. LA. Oct. 26, 2016) for the proposition that "the classification decision of an employer is the type of question that warrants a finding of predominance."  [Doc. 339, p.20].  *Leon* is easily distinguishable, especially in light of recent authority.  First, Defendants in *Leon* did not even contest predominance—they conceded it. *See id.* at *2, *4-*6   (noting Defendants only argument was directed at numerosity and did not contest other Rule 23 elements). Second, in *Leon*, the claims were not filed under the LWPA but instead under the worker's compensation statute, LSA R.S. §23:1163.   The IC analysis is fundamentally different under the worker's compensation statute as even ICs for other purposes under Louisiana law (like the LWPA) may still be "employees" under the worker's compensation statute if they perform significant manual labor, and Defendants did not contest the fact that the plaintiffs performed such manual labor.  *Id.* at *6-*7.  Thus, the key legal issues in *Leon* weren't even contested, and *Leon* is completely inapposite from this case, involving fundamental different IC tests and individualized facts necessary to adjudicate the "fine" claims.

d.  Rule 23(b)(2) Certification Cannot Stand

As previously stated in opposition to class certification, Rule 23(b)(2) certification cannot issue because: (1) Plaintiffs predominantly request money damages, not equitable relief, *see, e.g., Thomas v. Wallace, Rush, Schmidt, Inc.*, 2019 WL 2617818 at *3 (M.D. La. June 26, 2019); [Doc. 317, pgs. 37-38]; (2) individualized damages issues preclude Rule 23(b)(2) certification as a matter of law [Doc. 317, p. 39]; and, (3) Named Plaintiffs cannot represent a class of which a significant portion testified they do not even want the injunctive relief Plaintiffs are seeking.  *Id.,* pgs. 40-41. The R&R did not engage with any of those arguments, instead summarily holding that "[a] finding that distributors are employees is also dispositive of plaintiffs' prayer for declaratory and injunctive relief."  [Doc. 339, pg. 22].  That conclusion is contradicted by governing law.  For example, even if distributors were determined to be "employees," as recently reinforced in *Thomas* from the Middle District, that Plaintiffs predominantly request money damages forecloses certification under Rule 23(b)(2). 2019 WL 2617818.  Moreover, many in the putative class are *former* distributors who gain nothing from an injunction.  *See, e.g., Bolin v. Sears,* 231 F.3d 970 (5th Cir. 2000) (reversing Rule 23(b)(2) certification because "most of the class does not stand to benefit from any injunctive relief" and would be prejudiced by Rule 23(b)(2) certification because they are seeking individualized damages prohibited under 23(b)(2)); [Doc. 317-2, ¶ 5, Ex. 2; Doc. 317-3, ¶ 5, Ex. 2; Doc. 317-4, ¶ 5, Ex. 2]. The R&R's cursory analysis of Rule 23(b)(2) does not comply with Fifth Circuit law.

15

**C.  <u>Recent Case Law Likewise Requires the Court To Grant Decertification</u>**

1.   <u>1. Reliance on Common Classification Is Likewise Inappropriate in the FLSA Context</u>

The R&R declined to decertify the FLSA collective again relying largely upon common classification and common tax filing status. [Doc. 339, p. 26].[20]  But, since the R&R, both the Fifth Circuit and *Clay* have indicated such truncated analysis is not permissible.   The Fifth Circuit in *Parrish* expressly noted that economic realities test must be examined not based on labels (such as a common classification) but instead "by the way one actually acts," requiring individualized analysis.  *Parrish*, 917 F.3d at 380 (quoting *Usery v. Pilgrim Equipment Co., Inc.*, 527 F.2d 1308, 1312 (5th Cir. 1976)). [21]   *Parrish* also held that tax filing treatment is of "limited relevance" to the IC analysis.  917 F.3d at 388.

In this district, *Clay* similarly held that reliance on common IC classification and even a common IC agreement is inappropriate; instead, the facts and elements must be analyzed at decertification. 2019 WL 1028532 at *13 ("[D]espite being jointly subject to an alleged misclassification and (in many cases) signing the same agreement, if the economic realities test requires different proof and is unlikely to produce the same result for each plaintiff in the collective, certification is not appropriate.").   Regardless of common classification, the *Clay* court held it must "still conduct an 'individualized analysis' to determine whether each plaintiff is an employee or independent contractor for FLSA purposes."  *Id.* at *11-*12 (finding "there are substantial factual differences in the record with regard to many of the economic realities test

---

[20] In particular, the Court did not analyze the economic realities test to any significant degree and instead stated, without any reference to particular facts, "that the similarities between the plaintiffs' claims far outweigh their differences", and then quoted a large portion of the 2015 *Rehberg* opinion which similarly relied on common classification.  [Doc. 339, pgs. 29-30].

[21] As the Fifth Circuit has repeatedly recognized, the fact-based nature of the IC tests indicate that it is difficult, if not impossible, to apply to varying facts such as in this case.  *See Thibault v. Bellsouth Telecomm., Inc.*, 612 F.3d 843, 848 (5th Cir. 2010) (stating that the nature of the IC analysis "suggests that in some cases [plaintiffs] might be employees" while others are independent contractors).

factors including control, relative investments, opportunities for profit and loss, and permanency of the working relationship").

Similarly, within the last six months, several other district courts within the Fifth Circuit have rejected reliance on common classification in the FLSA context and decertified similar collectives. *See Garcia v. Vasilia*, 2019 WL 3555266 (S.D. Tex. Aug. 5, 2019) ("Rather than relying on the contractual designation of a worker as an independent contractor, courts consider various factors that elucidate the economic realities of the relationship between the alleged employee and employer."); *Moody v. Associated Wholesale Grocers, Inc.*, 2019 WL 6036707 (E.D. La. Nov. 14, 2019) (in which Judge Milazzo declined to rely upon the common classification of the opt-ins as exempt-classified "warehouse supervisors," and instead decertified the collective based on differences in the job duties actually performed). [22]

### 2. Recent Case Law Emphasizes that, Given the Fact-Specific Nature of the Economic Realities Test, Decertification Must Issue Here.

On several recent occasions, the Fifth Circuit has re-emphasized the fact-specific nature of the economic realities inquiry. In just the last eleven months, the Fifth Circuit has reached divergent outcomes about individual independent contractors in the oil industry depending upon the particularized facts at issue under the economic realities test. *Compare Parrish,* 917 F.3d at 379, 381 (reversing summary judgment to order summary judgment for putative employer in IC case involving directional drillers based on individualized application of economic realities test) *with Hobbs v. Petroplex Pipe and Construction, Inc.*, 2020 WL 113990, __ F.3d __ (5th Cir. Jan. 10, 2020) (affirming district court opinion finding several pipe welders were employees under

---

[22] In *Radford v. Pevator Companies, LTD*, 2019 WL 7282110 (S.D. Tex. Dec. 27, 2019), the court similarly determined that despite the fact that all plaintiffs held the exact same position and were subject to a common job description, individualized differences in how they actually performed their jobs warranted decertification. *See also* FN 10, *supra* (collecting recent authority rejecting reliance on common classification).

FLSA).[23]  These diametrically opposed outcomes – in the same industry no less – based on the fact-specific application of the economic realities test reinforces the Fifth Circuit's view that the test is "very fact dependent," and must be applied as such.  *Parrish*, 917 F.3d at 379; *see also Clay*, 2019 WL 1028532 at *12 (surveying case law and stating "courts routinely deny certification when the economic realities test will invariably require an individualized inquiry into discrete facts of each plaintiff's work situation."); *Garcia*, 2019 WL 3555266 (decertifying FLSA collective of uniformly classified independent contractor drivers based on factual differences affecting application of economic realities test).

Here, just as in *Clay*, application of the multi-factor economic realities test requires decertification.[24]  On the "control" prong, testimony was widely disparate.  *See* Doc. 310-1, pgs. 22-23 and related chart.  In terms of investment, some Plaintiffs had well over six figures invested in their territories and related equipment whereas others claimed little investment. *Compare* Meche Dep. I 164:6-13 (incurred $102,128 in business expenses alone in 2014) [Doc. 118-1, p. 80] *with* D. Richard I 133:2-13 (incurring $38,519 in business expenses in 2014) [Doc. 310-5, p. 611]. On skill/initiative, some Plaintiffs characterized themselves as skilled salesmen who routinely tried various strategies to increase sales to mere delivery persons. *Compare, e.g.,* Breaux Dep. 25:10-

---

[23] In *Hobbs*, the Fifth Circuit was clear to note that its standard of review on appeal was limited to the high "clear error" standard following a bench trial, which it could not discern, but that other Fifth Circuit opinions had held that similar positions were properly classified as independent contractors.  *Id.* at *8 ("[S]everal facts present here do bear some resemblance to the facts in *Carrell, Thibault,* and *Parrish*, in which we have held that putative employees were in fact independent contractors; namely, that the pipe welders invested a relatively significant sum in their welding equipment, were highly skilled workers, and took several thousands of dollars in business deductions on their taxes…. But *Brock* makes clear that our role on appeal after a bench trial is limited.")

[24] The economic realities test analyzes the following elements, with no one factor being determinative:  (1) degree of control exercised by the alleged employer; (2) the extent of relative investment; (3) skill and initiative required; (4) permanency of the relationship; and (5) the degree to which the workers' opportunity for profit or loss is determined by the alleged employer.  *Hopkins v. Cornerstone Am., 545 F.3d 338, 346 (5th Cir. 2008).  As the Fifth Circuit has stated time and again, "[t]he determination of whether an individual is an employee or independent contractor is *highly dependent upon the particular situation presented." Thibault*, 612 F.3d at 848 (emphasis added).  In applying the test, "each factor is a tool used to gauge the economic dependent of the alleged employee, and each must be applied with this ultimate concept in mind."  *Hopkins*, 545 F.3d at 343.

26:14 (believes he has $100,000 in equity in his territory and that he built up from his $40,000.00 purchase price based on his sales efforts) [Doc. 310-5, pp. 103-104], *with* Bueche Dep. 136:1– 137:25 (thinks his sales efforts made very little difference in the value of his territory) [*Id*. at pgs. 157-158]. Permanency varies from the very short-term to very long-term, with additional variance in terms of when each plaintiff and putative class member were actually performing the work versus outsourcing it to helpers in whole or in part. *Compare* Declaration of Randy Hymel ¶ 13 (Bell owned distributorship with Flowers Baking Co. of New Orleans, LLC for over 30 years) [Doc. 310-11, p. 6] *with* Declaration of Ray Kirkland ¶ 11 (Craven owned distributorship with Flowers Baking Co. of Tyler, LLC for less than 4 months) [Doc. 310-12, p. 4], *and* Duhon Dep. 181:15-183:1 (hired a former sales manager to run his distributorship for 18 months) [Doc. 310-5, pgs. 288-290] *with* Crawford Dep. 14:3-14:10;16:17-25 (has helpers service one half of his territory while he services the other) [*Id*. at 192-194]. Lastly, the degree of profit or loss swung hundreds of thousands of dollars between distributors, depending upon how they chose to engage with the distributor model. *See generally* Ex. 1.

### 3. The Facts At Issue Here Mirror *Clay*, and the Same Result is Warranted

In granting decertification in *Clay*, the court relied upon differences in, among other things, business structure, revenue, investments, and outside business interests among the ICs, stating: "[t]he plaintiffs' varying revenues, investments, and different decisions with respect to whether to establish business entities (and engage in outside work) could lead to disparate results regarding each plaintiff's level of economic dependence on [the alleged employer]." 2019 WL 1028532 at *12; *Garcia*, 2019 WL at *9 (holding that differences in business relationships of drivers from "essentially small business managers owning a fleet of vehicles" to those who "used one truck for all their moves" weighed in favor of decertification); *see also Parrish*, 917 F.3d at 384 (court must

consider outside business ventures "as part of the overall analysis" of how dependent an IC is on the putative employer).

As set forth in Exhibit 1 hereto and summarized below, *all* these differences are present in this case.

| Facts In *Clay* | Facts In This Case |
|---|---|
| "Some of the plaintiffs formed their own independent business entities, and those who did structured their businesses in different manners. Michael Clay and Larre Butler formed S corporations, (Docs. 90-3 & 90-4), while Shamsie and Harvey formed limited liability companies (Docs. 90-5 & 90-6). Conversely, Anderson and Warren each chose to proceed individually without forming a separate legal entity. (Docs. 90-7 at 19 & 90-8 at 6)." 2019 WL 1028532 at *7. | Zerigue, Seals and Gordon operated incorporated distributorships, while others, like Antoine Richard, do not, and operate as sole proprietorships. *See* Ex. 1, p. 4. |
| "The plaintiffs who owned their own businesses invested in those businesses in various ways. For example, Michael Clay Enterprises, Inc. invested in a retirement plan for its employees, (Doc. 90-3 at 28), and Clayton Paul Shamsie, LLC obtained a shareholder loan in the amount of nearly $24,000. (Doc. 90-5 at 124). Shamsie continued to invest in his business in 2016 after it stopped generating money, resulting in a loss of over $30,000 for that year. (*Id.* at 98)." *Id.* at *8. | Distributors such as Antoine Richard, Benjamin Botos, and Gerald Sanders bought and sold portions of their territory when profitable, whereas Charles Tillman and Bruce Naquin never bought or sold additional territories. Mark Bueche hired 10 helpers to work on his territory, Robert Powell has hired at least 8 people to help him. Michael Duhon hired a helper to run his territory for an 18 month period. Doucet previously paid his son to run his territory full-time. Other distributors, like Donnie Tellis and Bruce Naquin had not hired any helpers and performed all the work personally.  *See* Ex. 1, pgs. 2-6. |
| "Clay engaged in commercial crawfish and rice-farming operations in addition to oilfield consulting. (Doc. 90-11 at 9–10 & 41). Butler operated a charter fishing business in addition to his oilfield work. (Doc. 90-12 at 26–27). Shamsie (through his company) and Anderson (individually), on the other hand, worked exclusively in the oil business and did not pursue other lines of work." *Id.* at *8. | In addition to his distributorship, Doucet owned a home health care business, a construction site clean-up business and a cell phone business.  Outside of his distributorship, Meche owns a horse racing business and is part owner of a dance studio—Lacey's Dance World. Antoine Richard and Kenneth Seals had no other businesses.  *See* Ex. 1, pgs. 4-6. |

| Facts In *Clay* | Facts In This Case |
|---|---|
| "The plaintiffs' revenues also varied. Clay, Butler, and Shamsie's businesses earned gross revenues of $493,823 ($164,608 per year), $449,338 ($149,779 per year), and $488,371 ($162,790 per year), respectively, for the three-year period from 2013 to 2015. (Docs. 90-3, 90-4 & 90-5). Meanwhile, Harvey earned less than $100,000 in 2014 and 2015, and Warren earned roughly $65,000 in 2014. (Docs. 90-6 & 90-18)." *Id.* at *7. | For example, Ash reported $174,733 in gross revenue in 2014, while Riley reported less than $80,000 in gross revenue.  Derby Doucet reported $3.7 to $4.1 million in gross revenue from three outside businesses in 2012-2014. D. Richard reported $126,003 in net profit in 2014 and Meche reported just $23,000 in net profit that same year. *See* Ex. 1, pgs. 7-8. |

In addition to these distinct similarities to *Clay*, this case has even one more significant differentiating factor not at issue in *Clay*, when and how much Plaintiffs actually perform work personally for their distributorship businesses.  For example, in *Clay, all* the independent contractors performed the work personally as "rig clerks" and the record showed "overall similarities in their day-to-day duties" and "relatively uniform work requirements." *Id.* at *9.  Yet, the court still concluded decertification was warranted due to the fact-specific application of the economic realities test.  Here, by contrast, not all of the Plaintiffs performed work personally (some outsourced it in whole or in part at various points in time) and there was divergent testimony about the "work requirements."  *See, e.g.,* Doc. 310-7, pgs. 2-3 (noting that interactions with sales management ranged from "very seldom" and "rarely" to "mostly every day"); *id.* pgs. 9-11 (testimony on hours worked ranging from distributors testifying they set their own schedules completely to being told to be at the warehouse at 2:00am); *see also* Exhibit 1, pgs. 9-10. This demonstrates that decertification is even more warranted here than in *Clay*.

    4.   <u>Individualized Defenses, as in *Clay*, Also Warrant Decertification</u>

The *Clay* court held that even if "all plaintiffs were indeed misclassified as independent contractors, New Tech could defend some of their claims to overtime by arguing that they are

overtime exempt…Whether or not New Tech will argue that certain of its defenses apply to all of the plaintiffs is beside the point—the fact that individualized inquiry will likely be necessary weighs strongly in favor of decertification." *Id.* at *14. Here, just like in *Clay*, Defendants have asserted a variety of individualized defenses such as: (i) whether some plaintiffs are exempt under the outside sales exemption; (ii) whether some plaintiffs are exempt under the Motor Carrier Act; and (iii) whether certain of the plaintiffs are not entitled to overtime because they did not exceed forty hours of work in workweeks. The nature of these defenses is inherently individualized, and the evidence reveals significant differences. *See also Moody*, 2019 6036707 at *6 ("it is clear that the differences in duties result in the inevitable conclusion that AWG's defenses will not be applicable to all Plaintiffs…. [T]his would unfairly prejudice both Defendant and Plaintiffs."); *Garcia*, 2019 WL 3555266 at *11 ("Since the application of the economic realities factors could vary from driver to driver or possibly from region to region, it would be unfair to simply look at averages of what happened in the interest of determining claims collectively.")

That evidence was previously set forth in Defendant's motion for decertification, Doc. 310-7, but a few highlights include:

- **Varying testimony on sales activities**, including testimony by some distributors that their individual sales efforts were extensive and significantly increased the equity in their territory (e.g., Breaux testifying he built an additional $60,000 in equity through sales efforts; Crawford solicited and picked up 10 new accounts increasing his sales $20,000 per week) to others who indicated they did very little to increase their sales (e.g., Solomon Williams never solicited any new accounts). [Doc. 310-7, pgs. 13-19].

- **Varying testimony on use of personal vehicles** to deliver products relevant to the Motor Carrier exemption, which could range from "very, very little" (C. Tillman), "very seldom" (D. Richard), to "every week" (M. Crawford) or "twice a week" (J. Bell). [Doc. 310-7, pgs. 7-8].[25]

- **Varying testimony on hours worked**: Some Plaintiffs do not work in excess of 40 hours per week (Bell Dep. 22:11-23:1; Duhon Dep. 181:15-183:1 (didn't work at all on his

---

[25] As set forth in prior briefing, the extent of the use of personal vehicles is relevant to the application of the Motor Carrier exemption. *See* [Doc. 310-1, pgs. 29-31].

distributorship for 18 months), whereas other testified that the regularly worked well in excess of 40. [Doc. 310-5, pgs. 55-57, 288-290].[26]

Here, just like in *Clay,* the individualized defenses, and the varying proof in the record regarding each of them, "weighs heavily" in support of decertification.

These key points were further reinforced just last week in *Noll v. Flowers Foods, et al.*, 2020 WL 476362 (D. Maine, Jan. 29, 2020).  In *Noll*, although the Court had previously denied decertification, it *sua sponte* raised the issue again in the context of the Technical Corrections Act ("TCA") exception to the Motor Carrier exemption.  On that score, the Court noted that, like here, the record evidence on the use of personal vehicles was mixed and "that proof of the TCA exception is likely to be highly individualized." *Id.* at *14.  As a result, the Court stated "I conclude it is necessary to revisit certification of the FLSA collective given the mixed bag of evidence concerning the TCA exception", and gave leave for Defendants to file a new motion to decertify the collective.  *Id.* at *14-*15.  This same "mixed bag" of evidence on personal use of vehicles is likewise present in this case.  *See* Exhibit 1, pgs. 15-16.

Unlike *Clay,* the R&R failed to recognize the individualized nature of the defenses in this case.  Relying heavily on *Rehberg* and the common IC designation, the R&R stated "defendants will be allowed to raise all of their asserted defenses by examining representative plaintiffs and presenting their own evidence at trial." [Doc. 339, p.32].  But the evidence (in light of governing law) is far from "representative" on the economic realities factors or on the potential defenses, making collective adjudication prejudicial to both sides, and thus, improper.  *See, Moody,* 2019

---

[26] Importantly, the testimony of one distributor about hours worked has no bearing on the hours worked by any other distributor, who would have worked a different geographic territory of different size, with different clients, with differing numbers of helpers.  This dissimilarly requires decertification.  *See Douglas v. First Student, Inc.*, 888 F.Supp.2d 929 (E.D. Ark. 2012) (decertifying FLSA collective where one driver's testimony had no bearing on how long another worked).

WL 6036707 at *4 ("If the testimony of some Plaintiffs establishes that an exemption may be applicable to them, while the testimony of other Plaintiffs establishes the opposite, it can hardly be said that they are 'similarly situated.' Indeed, such a situation would, in the context of a collective action, place the Court in the precarious position of properly granting relief to some while improperly granting relief to others, or properly denying relief to some while improperly denying relief to others.")

5.   Fairness and Procedural Considerations Require Decertification

Lastly, with respect to "fairness and procedural considerations," the Court again cited the common IC classification plus the remedial purposes of the FLSA to the support the "rare" step of allowing final certification in an IC collective.  [Doc. 339, p.33]; *Clay*, 2019 WL 1028532 at *11. But in *Clay*, <u>all</u> these exact same facts were present. Yet, as the *Clay* court acknowledged, that does not automatically mean the matter should proceed collectively, stating:

> Despite the conservation of resources and judicial economy achieved by a collective action, 'such benefits are only realized when the cases are *similarly situated.'* Here, based on the evidence in the record, the Court concludes that it would not be able to 'efficiently resolve[] common issues of law and fact that arose from the same alleged activity.'

*Clay*, 2019 WL 1028532 at *14 (quoting in part *Mahoney v. Farmers Ins. Exch.*, 2011 WL 4458513 at *10 (S.D. Tex. 2011)).  In other words, a court may not decline to analyze the evidence of record simply based on common classification and the remedial purposes of the FLSA—if it could, no IC case would ever be decertified—and, as the *Clay* court opined, that is far from the case.  *Clay*, 2019 WL 1028532 at *11 ("Because it requires a fact-intensive inquiry that is 'highly dependent on the particular situation presented,' courts <u>rarely</u> grant final certification of a collective alleging that they were improperly classified as independent contractors.") (emphasis

24

added) (quoting *Thibault v. Bellsouth Telecomms, Inc.*, 612 F.3d 843, 848 (5th Cir. 2010)).[27] In fact, as Judge Milazzo noted in *Moody*, with such a diverse set of facts at issue, decertification is necessary to protect both sides from prejudice:

> [T]he Court notes that if the collective action was permitted to proceed, then prejudice to the parties is certain. In this case, the Plaintiffs' 'job responsibilities vary along the critically-important axis of exempt … duties recognized by the regulations.' Therefore, AWG 'cannot be expected to come up with 'representative proof [of a proper exemption] when the plaintiffs cannot reasonably be said to be representative of each other. Furthermore, if AWG were to hypothetically successfully defend against one Plaintiff's claim on the basis of an exemption, this would be to the detriment of other Plaintiffs who would not otherwise fall under an exemption.

*Id.* at *7 (citations omitted). This same analysis rings true here.

## IV.    CONCLUSION

After reviewing governing law and performing the requisite "rigorous" analysis, the varying laws and facts of this case require the Court to: (i) deny Rule 23 class certification; and (ii) decertify the FLSA collective.

Respectfully submitted, this 6th day of February, 2020.

/s/  *Andrew J. Halverson*
Gregory Guidry, La. Bar No. 06489
Andrew J. Halverson, La. Bar No. 31184
**Ogletree, Deakins, Nash, Smoak**
**& Stewart, P.C.**
325 Settlers Trace Blvd., Suite 201
Lafayette, LA 70508
Telephone: 337.769.6583 / 504.648.3840
Facsimile: 337.944.0441
Email:gregory.guidry@ogletreedeakins.com
Email: andrew.halverson@ogletreedeakins.com
AND

---

[27] Furthermore, reliance on the "remedial" nature of the FLSA to the exclusion of the elements of the economic realities test contradicts binding Supreme Court authority. *See Encino Motorcars, LLC v. Navarro*, 136 S.Ct. 2117, 2131 (2016) ( "There is no basis to infer that Congress means anything beyond what a statute plainly says simply because the legislation in question could be classified as 'remedial'").

* Margaret Santen Hanrahan, GA Bar No. 578314
* Michael Ray, IL Bar No. 6285109
*Benjamin R. Holland, NC Bar No. 28580
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
201 South College Street, Suite 2300
Charlotte, NC  28244
Telephone:  704.342.2588
Facsimile:  704.342.4379
Email:maggie.hanrahan@ogletree.com
michael.ray@ogletree.com
ben.holland@ogletree.com

* Admitted Pro Hac Vice

***ATTORNEYS FOR DEFENDANTS***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Opposition Brief has been served on all counsel of record via the Court's Electronic Filing System.

This 6th day of February, 2020.

*/s/ Andrew J. Halverson*

Andrew J. Halverson

- 
- 
- 41694368.1