UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

ANTOINE RICHARD, DARRELL
RICHARD, CHRIS MECHE, DERBY
DOUCET, SR., KEVIN RABEAUX and
MARK LOUVIERE, individually and on
Behalf of all similarly situated individuals,

     Plaintiffs,                                        CIVIL ACTION NO. 15-cv-2557

                                                                  DISTRICT JUDGE S. MAURICE
VERSUS                                                            HICKS, JR.

FLOWERS FOODS, INC.; FLOWERS                  MAGISTRATE JUDGE CAROL B.
BAKING COMPANY OF LAFAYETTE,             WHITEHURST
LLC; FLOWERS BAKING COMPANY
OF BATON ROUGE, LLC; FLOWERS
BAKING COMPANY OF NEW
ORLEANS, LLC; and FLOWERS
BAKING COMPANY OF TYLER, LLC

     Defendants.
_____

**PLAINTIFFS' REPLY TO FLOWERS' OPPOSITION
TO PLAINTIFFS' SUPPLEMENTAL MEMORANDUM**

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................... 1

    THE FLSA COLLECTIVE ACTION ................................................................ 2

    THE OVERLAPPING RULE 23 CLASS ACTION ............................................ 2

THE FLSA COLLECTIVE MEMBERS ARE SIMILARLY SITUATED ............................. 5

THE RULE 23 CLASS IS BASED ON A COMMON "ONE STROKE" CONTENTION ... 10

FLOWERS "DISSIMILARITIES" DO NOT PRECLUDE A COMMON ANSWER ........ 11

    FALSE DISSIMILARITIES ............................................................................ 12

    DISSIMILARITIES REQUIRING MOTIONS .................................................... 15

    QUANTUM DISSIMILARITIES ...................................................................... 21

CONCLUSION ................................................................................................... 23

## **TABLE OF AUTHORITIES**

**Cases**

*Aikens v. Warrior Energy Services*, 2015 WL 1221255 (S.D. Tex. 2015) .................................. 22

*Amchem Products v. Windsor*, 521 U.S. 591, 615, 117 S.ct.2231, 138 L.Ed.2d 689 (1997) ....... 11

*Amgen Inc. v. Connecticut Retirement Plans and Trust Fund,* 568 U.S. 455, 133 S.Ct. 1184, 185 L.Ed.2d 308 (2013) .................................................................................... 1, 3, 8, 9, 11, 12, 22, 25

*Brock v. Mr. W Fireworks*, 814 F.2d 1042, 1044 (5th Cir. 1987) ................................................ 18

*Brown v. Navarre Chevrolet, Inc.*, 610 So.2d 165 (La. App.3rd Cir. 1992).................................. 19

*Carr, et al vs. Flowers Foods, et al/ Consolidated with/ Boulange, et al vs. Flowers Foods, et al*, Case No. 15-6391 (E.D. Pa., May 7, 2019; WL 2027299) ....................................................... 26

*Carrell v. Sundland Construction*,   998 F.2d 330 (5th Cir. 1993)............................................... 10

*Castano v. American Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996) .......................................... 24

*Clay v. New Tech Global Ventures*, 2019 WL 1028532 (W.D. La. March 4, 2019)................. 8, 9

*De Loach v. Crowley's, Inc.*, 128 F.2d 378 (5th Cir. 1942) .......................................................... 23

*Flecha v. Medicredit, Inc.*, 946 F.3d 762, 766 (5th Cir. 2020)................................................ 11, 24

*Garage Solutions v. Person*, 201 So. 3d 962, 964 (La. App. 3rd Cir. 2016) ................................ 19

*Hobbs v. Petroplex Pipe and Construction*, 946 F.3d 824, pages 3-8 (5th Cir. 2020) ................... 9

*Hopkins v. Cornerstone Am.*, 545 F.3d 338 (5th Cir. 2008) ................................................... 15, 18

*In Re: Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) ....................... 3, 8, 9, 11, 12, 22, 23, 25

*In Re: Monumental Life Insurance,* 365 F.3d 408 (5th Cir. 2004) ................................................ 24

*Leprette v. RCS, LLC,* 206 So.3d 1215, 1219 (La. App 3rd Cir. 2016) ........................................ 19

*Lusardi v. Xerox Corp.*, 118 F.D.R. 351 (D.N.J. 1987).................................................... 2, 5, 9, 25

*Mooney v. Aramco Services*, 54 F.3d 1207 (5th Cir. 1995)............................................................ 2

*Moresi v. Resource Energy Ventures and Construction,* 2019 WL 256563, (W.D. La. 2019) . 1, 2, 5, 6, 7, 9, 10

*Neff, et al vs. Flowers Foods, et al*, Case No. 5:15-cv-254 (U.S.D.C. Vt., May 16, 2019) ......... 26

*Newsom v. Global Data Systems, Inc*., 107 So. 3d 781 (La. App. 3rd Cir. 2013) writ denied (La. 4/5/13) 110 So.3d 595 (La. 2013) ..................................................................................... 19

*Noll, et al vs, Flowers Foods, et al,* Case No. 1:15-cv-0493 (D. Me. January 15, 2019; WL 2019 206084)........................................................................................................................... 22, 25

*Parrish v. Premier Directional Drilling*, 917 F.3d 369 (5th Cir. 2019) .......................................... 9

*Rehberg v. Flowers Baking Company of Jamestown, LLC*, 162 F.Supp.3d 490 (W.D. N.C. 2/16/2016) ............................................................................................................................. 21

*Rehberg v. Flowers Foods, et al*, 2015 WL 1346125 ................................................ 6, 21, 22, 25

*Reyes v. Texas Ezpawn*, 2007 WL 101808 (S.D. Tex. 2007) ................................................... 6, 7

*Roche, et al v. S-3 Pump Service*, 154 F.Supp.3d 441 (W.D. Tex. 2016) ................................... 22

*Soares v. Flowers Foods, Inc.,* 320 F.R.D. 464 (N.D. Cal., 2017)................................................. 8

*Valentino v. Heart and Vascular Associates of Acadiana,* 221 So.3d 136 (La. App. 3rd Cir. 2017) ............................................................................................................................................. 19

*Wal-Mart Stores v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) ....... 10, 11, 12

*Ward v. Hellerstedt*, 753 Fed.Appx. 236 (5th Cir. 2018) ........................................... 10

**Statutes**

26 U.S.C. § 3121(d)(3) ............................................................................................ 5
26 U.S.C. § 3121(d)(3)(A) ....................................................................................... 5
26 U.S.C. § 3121(d)(3)(D) ....................................................................................... 5
FLSA § 216(b) ................................................................................................... 6, 9
La.R.S. § 23:921(F)(3) .......................................................................................... 17
La.R.S. §23:921 (F)(2)-(3) .................................................................................... 17

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................ 10
Fed. Rule Civ.P. 23(b)(3) ..................................................................................... 10
Rule 23 ....................................................... i, 1, 2, 3, 4, 8, 10, 11, 16, 21, 23, 24, 25
Rule 23(a)(2) ......................................................................................... 3, 11, 21
Rule 23(b)(3) ..................................................................................... 10, 24

## INTRODUCTION

Flowers misconstrues Judge Hicks' remand (Order, Rec. Doc. 376) "[i]n light of Fifth Circuit precedent, objections, and response … for *further consideration*" as for "*reconsideration.*"   In any case, "further consideration" should focus on certification issues for two different claims:  (1) a conditionally certified FLSA collective with 98 opt ins, and (2) an overlapping Rule 23 class with 335 putative class members. Flowers conflates these two different claims, notwithstanding their different standards for certification,[1] arguing that "in both" the Court "(1) [im]permissibl[y]" relied upon "the common classification . . . as independent contractors"[2] and (2) "relied significantly" on a tax filing designating the distributors as "statutory employees" which had "limited relevance." [3]  This Reply will separate the analysis of these different claims according to their different certification standards, and will show that Flowers' first two plainly contradictory criticisms are also incorrect.

Flowers also conflates certification with the merits, arguing that the Court (3) failed to "substantively analyze the elements of either the LWPA claims or the FLSA economic realities test."[4] The "elements of either [claim]" in this criticism are individual factors from multi-factor tests which are only applicable to the Rule 23 class to a determination of the claim on the merits.  This third criticism is also unjustified.  Flowers' application of factors only applicable to the merits is prohibited by controlling decisions of the U.S. Supreme Court and Fifth Circuit.[5]

---

[1] See *Moresi v. Resource Energy Ventures and Construction,* 2019 WL 256563, (W.D. La. 2019, Carrol, MJ) at page 2.
[2] [Doc. 386] Defendant's Memorandum in Opposition to Plaintiffs' Supplemental Memorandum in Support of Certification and Against Certification filed February 6, 2020, pages 1 and 5 (hereinafter referred to as "[Doc. 386] Opposition").
[3] [Doc. 386] Opposition, pages 1 and 2.
[4] [Doc. 386] Opposition, page 1.
[5] The Supreme Court stated in *Amgen Inc. v. Connecticut Retirement Plans and Trust Fund,* 568 U.S. 455, 133 S.Ct. 1184, 185 L.Ed.2d 308 (2013) Rule 23 grants Courts no authority to "engage in free-ranging merits inquiries at the certification stage" and "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  As the Fifth Circuit stated in *In Re: Deepwater Horizon,* 739 F.3d 790, 811 (5th Cir. 2014) "Rule 23 at this class certification stage does not therefore become a dress rehearsal for the merits. . . . In other words, to satisfy the commonality requirement under Rule 23(a)(2), the parties may potentially need to provide evidence to demonstrate that a particular contention is common, but not that it is correct."

### THE FLSA COLLECTIVE ACTION

This Court's analysis in a recent FLSA misclassification case, _Moresi v. Resource Energy Ventures and Construction,_ 2019 WL 256563, (W.D. La. 2019, Carrol, MJ), buttresses its decision to deny decertification of this FLSA collective, and in turn, to certify the Rule 23 class. To resist FLSA collective action decertification, Plaintiffs' must show only that the individual class members are "similarly situated."[6] The test commonly used by the Fifth Circuit for "similarly situated" emanates from _Lusardi v. Xerox Corp._, 118 F.D.R. 351 (D.N.J. 1987) and considers : (1) employment settings; (2) whether any defenses the employer may have are more common or individualized; and (3) general fairness and procedure.[7] Flowers' opposition obscures this arguably low standard by completely omitting mention or analysis of _Lusardi._ Flowers also ignores this Court's _Moresi_ decision which specifically distinguished between FLSA Collective and Rule 23 Class Action standards to deny decertification of an FLSA collective misclassification cases like this one. The few and ultimately inconsequential differences in the small and generally similar situations which Flowers identifies do not mean that the collective is not "similarly situated." The reasoning of this Court's _Moresi_ decision applies even more strongly here.

### THE OVERLAPPING RULE 23 CLASS ACTION

Flowers focuses on three Rule 23 requirements; commonality, predominance and superiority, and minor variations in a very small number of the different distributor's claims on the merits. The Supreme Court stated in _Amgen Inc. v. Connecticut Retirement Plans and Trust Funds,_[8] however, Rule 23 grants Courts no authority to "engage in free-ranging merits inquiries at the certification stage" and "[m]erits questions may be considered to the extent—but _only to the_

---

[6] _Mooney v. Aramco Services_, 54 F.3d 1207, 2013-2014 (5th Cir. 1995).
[7] _Lusardi v. Xerox Corp._, 118 F.D.R. 351 (D.N.J. 1987).
[8] 568 U.S. 455, 133 S.Ct. 1184, 185 L.Ed.2d 308  (2013).

*extent*—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."[9]   As the Fifth Circuit stated in *Deepwater Horizon*:[10] "Rule 23 at this class certification stage does not therefore become a dress rehearsal for the merits. . . . In other words, to satisfy the commonality requirement under Rule 23(a)(2), the parties may potentially need to provide evidence to demonstrate that a particular contention is common, but not that it is correct."[11]   Tellingly, Flowers completely omits any mention or analysis of either *Amgen* or *Deepwater Horizon*. Contrary to Flowers' irrelevant merits arguments, the claims of every class member "depend upon a common contention . . . that is capable of class-wide resolution – which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of these claims in "one stroke."

Just as the distributors are sufficiently similarly situated for FLSA purposes, this common issue of whether Plaintiffs are independent contractors or employees predominates over any other issue raised by Flowers so that it can be decided in "one stroke" to determine all the claims in both the collective and Rule 23 actions. As a result, in light of this common and predominant contention in both the collective and class claims, certification of this overlapping Rule 23 class is even more appropriate.

Flowers' statement that this Court "in both its Rule 23 and [FLSA] analysis … relied significantly upon the tax filing designation of Plaintiffs as 'statutory employees' " is incorrect.[12] In its FLSA analysis, the Court noted that all distributors signed essentially the same Distributor Agreement, all distributors have "substantially similar job duties," and did not receive overtime

---

[9] *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 466, 113 S.Ct. 1184, 1194-1195, 185 L.Ed.2d 308 (2013).
[10] 739 F.3d 790, 811 (5th Cir. 2014).
[11] *In Re: Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014).
[12] [Doc. 386] Opposition p. 1.

pay.[13]  The Court then mentioned, as an additional example of their similar situation, that "Flowers classifies all distributors as 'statutory employees.'"[14] The Court was focused on the similar pattern of conduct,[15] uniform policies and procedures,[16] the virtually identical Distributor Agreement,[17] Flowers' control over pricing and product sales,[18] the distributors had substantially similar job duties,[19] and the similarity of their payment.[20]  Finally, the Court stated that "common evidence of plaintiffs' factual and employment settings militate in favor of finding that all distributors are 'similarly situated' for the purposes of the FLSA."[21]  The "statutory employee" designation was no more important than any other factor.

This Court's Rule 23 analysis did not rely on the "statutory employee" designation above to meet the commonality requirement, but only recognizes the "statutory employee" designation as an example of "[o]ther facts . . . common to each plaintiff."[22]  In the Rule 23/LWPA analysis, this Court relied on "common practices, procedures and policies of Flowers":

> "The central issue to the claims of the plaintiffs is the common question of whether Flowers misclassified them as independent contractors and impermissibly deducted from their wages as a result of the *common practices, procedures, and policies of Flowers*."[23]  (emphasis added)

Flowers also argues that the "statutory employee" designation is only applicable to common law independent contractors."[24]  Even a cursory review of the cited statute shows this is completely false. The Internal Revenue Code upon which Flowers relies does not even mention

---

[13] [Doc. 339], page 26.
[14] [Doc. 339], page 26.
[15] [Doc. 339], page 11, 27
[16] [Doc. 339], page 11, 27
[17] [Doc. 339], page 26
[18] [Doc. 339], page 10
[19] [Doc. 339], page 26
[20] [Doc. 339], page 26
[21] [Doc. 339], page 30.
[22] [Doc. 339], page 11.
[23] [Doc. 339], page 10.
[24] [Doc. 386] Opposition page 2, footnote 4.

the phrase "independent contractor."  26 U.S.C. § 3121(d)(3) defines who may be an employee, *not* who may be an independent contractor.  In fact, 26 U.S.C. § 3121(d)(3)(A) specifically *includes* in the employee definition "agent-driver or commission-driver engaged in distributing … bakery products." 26 U.S.C. § 3121(d)(3)(D) specifically *excludes* from that definition "persons who perform services in a single transaction not a part of a continuing relationship with the person for whom the services are performed" which refer to independent contractors. This Flowers argument is a creative fiction, and the cited statute augments the finding by this Court that these distributors are, in fact, employees.

## THE FLSA COLLECTIVE MEMBERS ARE SIMILARLY SITUATED

The first *Lusardi* "employment settings" factor "assesses the opt-in plaintiffs' job duties, geographic location, supervision, and salary."[25]  In this case, all FLSA collective action members have identical job duties, receive identical training, work out of similar Louisiana warehouses, for one of three Flowers bakery subsidiaries, pursuant to the same Independent Distributorship Model created and implemented nationwide by Flowers, operate under substantially similar Distributor Agreements using identical criteria designed for unilateral interpretation by Flowers, use the same handheld computers and programs installed and administered by the Flowers parent, receive identical weekly statements, for identical products, commissions, and deductions, and are paid as statutory employees, but uniformly classified by Flowers as independent contractors and denied overtime pay and workmen's compensation benefits.  In short, on the first factor, they have substantially identical "employment settings."

---

[25] *Lusardi v. Xerox Corp.*, 118 F.D.R. 351 (D.N.J. 1987) and *Moresi v. Resource Energy Ventures and Construction*, 2019 WL 2565634, page 2 (W.D. La. 2019).  See also *Reyes v. Texas Ezpawn*, 2007 WL 101808, page 2 (S.D. Tex. 2007) (Exhibit 2) and *Moresi v. Resource Energy Ventures and Construction*, 2019 WL 2565634, page 2 (W.D. La. 2019) (Exhibit 1) whereby Magistrate Judge Carol Whitehurst denied Motion to Decertify FLSA class.

Regarding the second factor, "defenses", all Flowers' affirmative defenses are directed against all of the collective action members.  Defenses such as the Motor Vehicle Carrier Act ("MVCA") and Outside Sales Exemptions ("OSE") have been and will be asserted against all members, and are therefore common. As detailed later, while these defenses may vary in applicability for a small few of the collective members based on individual details, for the vast majority of the collective they will be applied identically.  In _Rehberg v. Flowers Foods, et al_, 2015 WL 1346125, pg. 32-34, the Court denied Flowers motion for decertification of an FLSA collective action and noted:

> Such defenses are legal issues for this Court to determine that would not render the class unmanageable.  Furthermore, without greater specificity as to how these defenses would be asserted, the court does not find it appropriate to decertify this action based on defenses that Defendants may or may not choose to assert as to some or all Plaintiffs.

See also discussion at pages 19-20, _infra_.

The final factors, fairness and procedural considerations, weigh heavily in favor of certification.  "[T]he primary objectives of the FLSA § 216(b) collective action [are]: (1) to lower costs to the plaintiffs through the pooling of resources, and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arise from the alleged activity."[26]  "Congress' purpose in authorizing §216(b) class actions was to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer."[27]  Incredibly, Flowers would have this Court believe that it is fair, cost effective and judicially efficient to have 98 individual trials for the FLSA claimants

---

[26] _Reyes v. Texas Ezpawn_, 2007 WL 101808, page 6 (S.D. Tex. 2007) (citing _Hoffman-LaRoche v. Sperling_, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989) (Exhibit 2).

[27] _Moresi v. Resource Energy Ventures and Construction_, 2019 WL 2565634, page 2 (W.D. La. 2019) (citing _Prickett v. DeKalb County_, 349 F.3d 1294, 1297 (11th Cir. 2003)) (Exhibit 1).

with each trial having as its primary and overriding issue employee or independent contractor status to be determined on substantially identical facts.[28]

Another recent example of how distributors are similarly situated is Flowers' recent unilateral directive for distributors to pick up recalled products.[29] Flowers closely supervises the conditions of its distributors' employment, and in this example required all distributors (without compensation for the extra work required) to remove and replace products *Flowers* recalled. Flowers asserted the right of control over *all* of its distributors, even though some did not service locations where Flowers delivered recalled product.[30]   Importantly, Flowers issued its "must" instructions to *every active distributor in Louisiana*, regardless of whether any product they delivered was recalled or not.

### FLOWERS ASSERTED DISSIMILARITIES ARE FEW AND INCONSEQUENTIAL

The minute differences between a small minority of the distributors do not prevent collective and class certification.   Despite these differences, the "predominant" issue remains whether the 98 members of the FLSA collective (and 257 class members) were, in fact, employees, rather than independent contractors.   This is a common issue that not only ***can*** but ***must*** be determined in "one stroke" to avoid at least 98 and possibly 257 separate trials of this same issue.

---

[28] The Court must also consider the condemning effect decertification will have.  See discussion at page 23, notes 98, 99, 100.

[29] See [Docket 331] and Exhibits 4, 5 and 6 attached thereto.  These exhibits are attached hereto as Exhibits 4, 5 and 6.

[30] Instead, Flowers' bakery presidents make clear by their testimony what Flowers  denies to this Court. According to Ray Kirkland, Vice-President of FBC-Tyler: "Q. Who makes the final determination if there has, in fact, been a failure of performance? A. I do."  Deposition of Ray Kirkland [Doc. 314-2] page 149, attached hereto as Exhibit 17. Thus Flowers demonstrates a statewide, uniform policy of asserting its right to control – whether resulting in the actual exercise of that control or not. "With respect to the right to control, the question is not how much control a hirer exercises, but how much control the hirer retains the right to exercise."  *Soares v. Flowers Foods, Inc.,* 320 F.R.D. 464, 480 (N.D. Cal., 2017).

Flowers relies heavily on _Clay v. New Tech Global Ventures_.[31]   _Clay's_ reasoning was driven by the small size of the collective.[32]  In _Clay_ there were only three named plaintiffs and six opt-ins for a total of nine members of the FLSA collective action. This small class size weighed heavily for decertification:

> "The Court is certainly mindful of the purpose of the FLSA and acknowledges the plaintiffs arguments with respect to efficiency and the cost savings realized by proceeding collectively. However, the Court is also aware of the size of the collective here is exceedingly small compared to other FLSA collective actions. Indeed, 'there is a vast difference between granting decertification regarding a potential class of hundreds, or even dozens, and thereafter facing as many individual suits, and granting decertification regarding' a class of single digits. Court citing _Vanzzini v. Action Meat Distributors_, 995 F.Supp.2d 703. 723 (S.D. Tex. 2014).[33]

Were a Rule 23 class at issue, the _Clay_ court would have "certainly" dismissed on numerosity alone.  But numerosity is not an FLSA collective prerequisite.  _Clay_ therefore analyzed the merits of the employee independent contractor factors, despite _Lusardi_, _Amgen_ and _Deepwater Horizon_, presumably because only an FLSA class, not a Rule 23 class was involved.  Nothing in _Lusardi_ says the merits are examined at certification, and this clearly violated the third _Lusardi_ factor (fairness and procedural).

In _Moresi_, this Court applied only the _Lusardi_ factors at certification.  It did not reach the economic realities test applicable only on the merits.  _Moresi_ is correct, _Clay_ is not.  In a situation

---

[31] 2019 WL 1028532 (W.D. La. March 4, 2019).(Exhibit 3).

[32] _Clay_ can also be distinguished on the merits.  The plaintiffs in _Clay_ were rig clerks.  The Defendant in _Clay_ was a staffing agency that contracted with independent rig operators to provide project management and consultancy services. The rig clerks worked on a "project-to-project" basis with no guarantee of future work and were not supervised by the Defendant. Plaintiffs could turn down assignments and were free to contract directly with the operators.  Their alleged employer had no investment in equipment or materials. In every one of these respects, the distributors in this case are the opposite; they work directly for Flowers, without a separate intermediary; they are not on a project-to-project basis, but are continuously engaged; they are not free to turn down assignments or customers, they are not free to contract directly with customers;  they are supervised in excruciating detail directly by the Flowers bakery by which they are employed; and their employer has an overwhelming majority of the investment in its plant and equipment.  Therefore on the merits, this case would be certified even under the _Clay_ analysis.  Nevertheless, these details of the merits are irrelevant to Rule 23 certification under _Amgen_ and _Deepwater Horizon_.

[33] _Clay v. New Tech Global Ventures_2019 WL 1028532 (W.D. La. March 4, 2019).(Exhibit 3), at page 29.

much more analogous to the facts of this case than _Clay_, the Fifth Circuit in _Hobbs v. Petroplex Pipe and Construction_, 946 F.3d 824, pages 3-8 (5th Cir. 2020), recently affirmed the analysis of the five economic reality factors to reach a directly opposite conclusion than _Clay_ finding an employee relationship. _Clay_ was not appealed, but to the extent it discussed economic realities at the certification stage, is now effectively overruled by _Petroplex_. The _Petroplex_ court also distinguished the holdings in _Parrish v. Premier Directional Drilling_[34] and _Carrell v. Sundland Construction_[35] upon which Flowers relies.

### THIS COURT'S OBSERVATIONS IN _MORESI_ ARE APPLICABLE HERE

In _Moresi v. Resource Energy Ventures_[36] this Court recently denied a motion to decertify an FLSA class, noting:

> "The Court fails to understand how Defendant's argument would lower the Plaintiffs' costs or simplify the proceedings. This case was filed almost four years ago, discovery is virtually complete on the eight remaining plaintiffs and to decertify the class at this time would require refiling, joinder or consolidation, and additional pleadings. Contrary to the reasoning under § 216 of the FLSA, decertifying this case would instead potentially require the parties and the Court to have multiple trials dealing with the same issues. 'Congress' purpose in authorizing § 216(b) class actions was to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer.' "[37]

This reasoning applies precisely to the facts and circumstances of this case but with even stronger force. There are currently 98 members of this FLSA collective action, as opposed to the eight claimants in _Moresi_.

---

[34] 917 F.3d 369 (5th Cir. 2019).
[35] 998 F.2d 330 (5th Cir. 1993).
[36] 2019 WL 2565634 (W.D. La. 2019)(Exhibit 1).
[37] _Moresi v. Resource Energy Ventures and Construction_, 2019 WL 2565634, page 2 (W.D. La. June 18, 2019) (citing _Prickett v. DeKalb County_, 349 F.3d 1294, 1297 (11th Cir. 2003)) (Exhibit 1).

## THE RULE 23 CLASS IS BASED ON A COMMON "ONE STROKE" CONTENTION

Flowers' Rule 23 Opposition focuses on commonality, predominance and superiority.[38] Rule 23(b)(3) requires "that questions of law or fact common to class members predominate over any question affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[39] Commonality, predominance and superiority require that the claims of every class member "depend upon a common contention … that is capable of class-wide resolution" and that the common contention is of such a nature … that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of these claims in one stroke."[40] The significant aspect of a commonality determination is "not the raising of common questions – even in droves – but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation."[41] Indeed, a single common question of law or fact is sufficient if it meets the foregoing criteria.[42] Commonality may exist even where the plaintiff's damages are diverse.[43] Rule 23's commonality requirement demands only that questions common to the class be "*susceptible*" of common answers.[44] The issue of whether these Plaintiffs are independent contractors or employee is susceptible of a common answer and can be decided in "one stroke."

---

[38] To obtain class certification, parties must satisfy the Rule 23 (a) requirements of; (1) numerosity – "the class is so numerous that joinder of all members is impracticable; (2) commonality – "there are questions of law or fact common to the class"; (3) typicality – "the claims or defenses of the representative are typical of the claims or defenses of the class"; and (4) adequacy of representation – "the representative parties will fairly and adequately protect the interests of the class." See Fed. R. Civ. P. 23(a); *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 345, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) and *Ward v. Hellerstedt*, 753 Fed.Appx. 236, 243 (5th Cir. 2018). In this matter numerosity, typicality and adequacy are not seriously questioned.

[39] See Fed. Rule Civ.P. 23(b)(3); *Amchem Products v. Windsor*, 521 U.S. 591, 615, 117 S.ct.2231, 138 L.Ed.2d 689 (1997) and *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 766 (5th Cir. 2020).

[40] *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 349-359, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011).

[41] *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 349- 350, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011).

[42] *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 349-350, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011).

[43] *In Re: Deepwater Horizon*, 739 F.3d 790, 810-811 (5th Cir. 2014).

[44] *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 113 S.Ct. 1184, 185 L.Ed.2d 308 (2013).

The question at this point is ***not*** whether the distributors are actually employees for either the FLSA[45] or Rule 23.[46]  That question must be determined later from the facts on the merits, by applying the multifactor tests; either established under the FLSA "economic realities" or Rule 23 state law.  But on certification this Court is precluded from reaching the merits unless the difference would preclude a common answer to the common contention.[47]  None of the minor differences, which Flowers argues might require individual proof for an admittedly small few of the distributors' claims, precludes a single trial.  The predominant issue remains and is "susceptible" to a common answer based on the majority of factors which are the same.  Flowers' argument is also false as to the few examples it suggests require individual proof for the several additional reasons shown below.

## FLOWERS "DISSIMILARITIES" DO NOT PRECLUDE A COMMON ANSWER

It should be noted again, that all the Flowers' "dissimilarities" which it suggests require individualized proof require this Court to reach into the merits.  If that was ever authorized under *Wal-Mart v. Dukes*, it is now effectively prohibited by the subsequent decisions in *Amgen* and *Deepwater Horizon*.  Thus they should have no effect on the Rule 23 determination.  In addition, many of Flowers' points are not actual dissimilarities.

---

[45] See Exhibit 59.

[46] See Exhibit 60.

[47] The Supreme Court stated in *Amgen Inc. v. Connecticut Retirement Plans and Trust Fund*, 568 U.S. 455, 133 S.Ct. 1184, 185 L.Ed.2d 308 (2013) (Exhibit 4) Rule 23 grants Courts no authority to "engage in free-ranging merits inquiries at the certification stage" and "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  As the Fifth Circuit stated in *Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014) (Exhibit 5) "Rule 23 at this class certification stage does not therefore become a dress rehearsal for the merits. . . . In other words, to satisfy the commonality requirement under Rule 23(a)(2), the parties may potentially need to provide evidence to demonstrate that a particular contention is common, but not that it is correct."

FALSE DISSIMILARITIES

Most of the dissimilarities suggested by Flowers are not actually sufficient to preclude a common answer.  They are false because they are ultimately not material to the determination of the common and predominant issues.  For example, Flowers states that each distributor "take[s] advantage of the distributor model much differently,"[48] but this does not mean they are not "similarly situated", and the common question of employee status still predominates.  All distributors operate under the same business model as implemented by Flowers Foods and enforced by the Defendants.

Flowers states that "distributors in the putative class signed varying distributor agreements . . .."[49]  It is true that Flowers has drafted and implemented several versions of the Distributor Agreement.[50]  But every Distributor Agreement used by Flowers and signed by members of the collective action and putative class members require the distributor to use his "best efforts" to advance "good industry practice," two noticeably subjective terms underscored in each and every Distributor Agreement.[51] By minutely enforcing these standards, Flowers controls nearly every detail of a distributor's work. Flowers unilaterally decided whether the distributor used his "best efforts" or practiced "good industry standards."[52]  Flowers alone decides whether a distributor "fails to perform" under the Agreement or whether there has been a "chronic failure of

---

[48] [Doc. 386] Opposition, page 2.
[49] [Doc. 386] Opposition, page 8.
[50] In his Deposition, Charles Rich, Vice President of distributor Operations for Flowers stated that there have been 9 versions of the distributor Agreement from 1987 to current. (30(b)(6) Deposition of C. Rich Vol. II, pages 80-92 attached as Exhibit 8).  The pertinent provisions in each of these agreements are virtually identical. Please see versions 1987 (Exhibit 9), 1992 (Exhibit 10), 1994 (Exhibit 11), 1996 (Exhibit 12), 1997 (Exhibit 13), 2000 (Exhibit 14), 2002 (Exhibit 15) 2013 (Exhibit 16) and 2015 (Exhibit 17). The specific paragraphs cited in this Memorandum have remained virtually unchanged throughout the various changes in the overall Agreement.
[51] See Exhibits 9 (1987), 10 (1992), 11 (1994), 12 (1996), 13 (1997), 14 (2000),  Exhibit 15 (2002), Exhibit 16 (2013) and 17 (2015) at Paragraphs 2.6 and 5.1.
[52] "So yeah, we [Flowers] determine if there's good industry practice that's breached there or not." Deposition of Ray Kirkland, Vice-President of FBCC-Tyler page 146 attached as Exhibit 7.

performance" by a distributor to warrant the termination of the Distributor Agreement and a confiscation of the distributor's territory.[53] Many other common provisions contained in each version of the Distributor Agreement are also used by Flowers to control its distributors.[54] The many ways in which Flowers asserts control over these details are common to every version of the Distribution Agreement and simply overwhelm the few differences in distributors' advantages or agreements detailed by Flowers.

Flowers argues that class certification is impossible because only a few distributors actually received 10 day letters.[55] Darrell Richard is their example.[56] Despite the fact that he never received a 10 day letter, Richard testified that Flowers controlled the details of his performance through arbitrary 10 day letters.[57] If Flowers' suggests his credibility is suspect, that is an issue for trial, not certification.  A 10 day letter threatens termination of the Agreement.[58] The point is that the general policy and practice of ten day letters is used to control the collective and class members considered as a whole. Darrell Richard's testimony is a perfect example of representative testimony, even from distributors who never personally received a letter, that can be used at trial but is irrelevant to certification.

Flowers argues the fact that some distributors had helpers and some did not is a significant difference among putative class members.[59] Derby Doucet is mentioned as having had his son run

---

[53] According to Ray Kirkland, Vice-President of FBC-Tyler: "Q. Who makes the final determination if there has, in fact, been a failure of performance? A. I do." Deposition of Ray Kirkland page 149 attached as Exhibit 7.
See Exhibits 9 (1987), 10 (1992), 11 (1994), 12 (1996), 13 (1997), 14 (2000),  Exhibit 15 (2002) at Paragraphs 16.1 and 16.3. See Exhibit 16 (2013) and 17 (2015) at Paragraphs 17.1 and 17.3.
[54] See Exhibit 61.
[55] [Doc. 386-1] Opposition, Exhibit 1, page 9.
[56] "Flowers controls my compliance by the issuance of 10 day letters." [Doc. 386] Opposition, page 4, footnote 8.
[57] Deposition of Ray Kirkland, (Exhibit 7) p. 146.  "So yeah, we [Flowers] determine if there's good industry practice that's breached there, or not."
[58] See Exhibit 65, in globo, for six (6) representative examples of 10 day letters issued by Defendants.
[59] [Doc. 386-1] Opposition, Exhibit 1, pages 3, 5 and 11.

his route on a full-time basis for a limited period of time.[60] But the substantially uniform Flowers distributorship agreements allows all distributors to use third-party helpers.[61] The fact that the distributor agreements do not prohibit the use of third-party helpers is common to all class members and putative class members. The fact that all distributors have the right to use helpers to run their route for a limited period of time is, at most, only a single factor in either multi-factor used to determine the difference between employees and independent contractors.[62] It is not itself determinative and does not preclude a common answer which weighs all the factors at trial.[63] It is by definition in all these respects a question reserved for trial on the merits which is irrelevant to certification.

Flowers suggests differences in business expenses result in a difference in each class member's investment.[64] Flowers then argues that class members "invested" different amounts of money in connection with their Flowers distributorship[65] and that some distributors have sold parts or all of their territories and made a profit on these sales.[66] For the purposes of class certification, it is immaterial whether class members had different expenses, paid different amounts or made a profit on territory sales. Even on the merits, the relative investment prong of the economic realities test would only require a *comparison* of the individual investment to the investment made by Flowers in its business. "In applying the relative-investment factor, [courts] compare each

---

[60] [Doc. 386] Opposition, page 4, footnote 8.

[61] Paragraph 16.5 of the distributor Agreement provides: "This Agreement does not require that DISTRIBUTOR's obligations hereunder to be conducted personally . . . DISTRIBUTOR shall be free to engage such persons as DISTRIBUTOR deems appropriate to assist in discharging DISTRIBUTOR's responsibilities hereunder."

[62] For the multi-factor tests for determining employee/independent contractor under the FLSA and LWPA see Footnotes 44 and 45, *supra*.

[63] At most it is question of overtime eligibility for that particular time period and the quantum award in that instance. This particular dissimilarity would also be appropriate to discuss under the Quantum Dissimilarities discussion on pages 20 to 22, *infra*.

[64] [Doc. 386] Opposition, page 18.

[65] [Doc. 386-1] Opposition, Exhibit 1, page 2.

[66] [Doc. 386-1] Opposition, Exhibit 1, page 2.

worker's *individual* investment to ***that of*** the alleged employer."[67] The differences in expenses are so small in this comparison as to be inconsequential.[68]  Even if these deductions for delivery and other business expenses constitute investments, the actual investment of Flowers dwarfs any investment any distributor may have made.  On the other hand, the similarity of the expense categories is based on the Flowers Independent Distributor Model which regulates every distributor.  This is another common issue on the merits irrelevant to certification.

The tax returns also show, regardless of these variances, that the distributors profit is controlled almost exclusively by Flowers through control of the prices and the discount or margin established by Flowers, the size of the district controlled by Flowers, the service standards and other factors controlled by Flowers.  But an evaluation of the relative investment or control of profit or loss factors is an "economic realities" merits issue which is irrelevant to the certification.  Similarly, the fact that a distributor could sell all or part of his territory is one of many common facts that must be weighed by this Court in applying the economic realities test on the merits, not at class certification. And even on the merits it is only one, therefore not determinative, and does not preclude the common contention or possibility of a common answer. Therefore this issue pertains to the merits, can be handled on an individualized basis without precluding a common answer, and is therefore irrelevant to certification.

### DISSIMILARITIES REQUIRING MOTIONS

Some of the dissimilarities Flowers notes are dispositive issues which, if handled properly, will remove the individuals to which they apply before the class trial by motions for summary judgment or to dismiss, leaving the class even more similar and class action more appropriate.  For

---

[67] *Hopkins v. Cornerstone Am.,* 545 F.3d 338, 344 (5th Cir. 2008) (citing *Herman v. Express Sixty-Minutes Delivery Services, Inc.,* 161 F.3d 299, 304 (5th Cir. 1998) [emphasis in original].
[68] *Hopkins v. Cornerstone Am.,* 545 F.3d 338, 344 (5th Cir. 2008) (citing *Herman v. Express Sixty-Minutes Delivery Services, Inc.,* 161 F.3d 299, 304 (5th Cir. 1998).

example, Flowers notes that arbitration provisions and statute of limitation provisions may be different in the various distributor agreements.[69]  The provisions relating to arbitration and statute of limitations deal with eligibility of that distributor to remain in the class.  As has already been done in this case,[70] if Flowers believes a provision of a distributor agreement or amendment thereto provides that a distributor can no longer be a member of this class, that issue can and should be decided by a Motion for Dismissal or Summary Judgment.  Flowers indicates that a total of 85 putative class members have signed arbitration agreements and/or class action waivers and, therefore, should be prevented from joining the class.[71]  First, Flowers has not made such a request, therefore, this issue is not currently before this Court. Second, there are currently 335 putative class members.   Even if Flowers is correct that these 85 putative class members should be disqualified from joining the class, that would still leave a putative Rule 23 class of 250 members.  The general question of employee or independent contractor status would then be even more "susceptible" to a common answer on the merits. It is therefore irrelevant to certification.

That some of the Rule 23 and FLSA class members have incorporated should not be a distinguishing fact against class certification.[72]  Flowers specifically cites Ray Zeringue and Kenneth Seals as examples of distributors that have formed corporations and, as a result, the proposed FLSA class should be decertified and the Rule 23 class cannot be certified.  Regardless of whether a distributor forming a corporation is an operative fact in this case, Flowers has completely ignored the corporations formed by distributors, including Zeringue and Seals.[73]  After

---

[69] [Doc. 386] Opposition, page 12; [Doc. 386-1] Opposition, Exhibit 1, page 1.
[70] This Court has already dismissed 16 opt-in members from this FLSA collective action .  This Court dismissed 10 members by Order dated August 17, 2018 [Docket 341] and required 6 members to pursue their claims by arbitration by Order dated February 26, 2018 [Docket 323].
[71] [Doc. 386-1] Opposition, Exhibit 1, page 1.  Flowers declares that 33 Distributors from FBC-BR, 16 Distributors from FBC-NO and 36 Distributors from FBC-Tyler have signed arbitration agreements and/or class action waivers.
[72] [Doc. 386-1] Opposition, Exhibit 1, page 4.
[73] Ray Zeringue signed his distributor Agreement on February 27, 1997.  Zeringue formed RZ distributors, LLC on December 15, 2014. (Exhibit 52)  Flowers never proposed a new distributor Agreement for RZ distributors. Kenneth

Zeringue and Seals formed their corporations, Flowers continued to deal with them on an *individual* basis, not on a corporate basis.  For instance, after Zeringue and Seals formed their corporations, Flowers continued to prepare and send W-2 to Zeringue and Seals *individually* and continued to deduct/pay social security and Medicare taxes for them as individuals.[74]  As stated below in the next section, if Flowers believes any collective action or class member should be disqualified or dismissed from this action for any reason, then it is incumbent upon Flowers to properly make these arguments to this Court by appropriate motion. This issue does not affect the common contention that the individuals have made, which remains for trial, and therefore this issue is irrelevant to certification.

Flowers states that all distributors signing agreements after August 1, 2006 should be treated as franchisees pursuant to La.R.S. §23:921 (F)(2)-(3).[75] This proposition is false on a number of levels and ultimately immaterial to certification. First, as Flowers well knows it is hornbook law that the language of the agreement is not ultimately determinative under either the FLSA or Rule or state law tests.[76]  Second, it is not even determinative under the contract since La.R.S. § 23:921(F)(3) states:

> "(3)  . . . an employee of a franchisee may be deemed to be an employee of the franchisor only where the two entities share or co-determine those matters **governing the essential terms and conditions of employment and directly and immediately control matters relating to the employment relationship** such as hiring, firing, discipline supervision, and direction." [Emphasis added.]

---

Seals formed Seals & Son, LLC on July 29, 2013. (Exhibit 53). Seals signed his distributor Agreement on August 4, 2013. (Exhibit 54).  Flowers insisted Seals sign the distributor Agreement as an individual not as a corporation.
[74] See Exhibit 55, W-2s  prepared by Flowers and issued to Ray Zeringue for 2015, 2016 and 2017 and Exhibit 56, W-2s prepared by Flowers and issued to Kenneth Seals for 2013, 2014, 2015 and 2016.
[75] [Doc. 386] Opposition, page 8.
[76] Facile labels and subjective factors are not determinative of employee or independent contractor status. *Hopkins v. Cornerstone America*, 545 F.3d 338, 346 (5th Cir. 2008) and *Brock v. Mr. W Fireworks*, 814 F.2d 1042, 1044 (5th Cir. 1987).  Even if the contract between Flowers and a Distributor classifies their relationship as that of an independent contractor, contractual language does not control and define the relationship. *Hopkins v. Cornerstone America*, 545 F.3d 338, 346 (5th Cir. 2008) and *Brock v. Mr. W Fireworks*, 814 F.2d 1042, 1049 (5th Cir. 1987).

Third, as this excepting provision makes clear, the inquiry to be made under this franchisee argument centers on Flowers' control over these class members; precisely the analysis the Court must make on the merits under the FLSA and LWPA.  Finally, this defense should be embodied in a motion.  The franchisee argument relevant to certification would require no different or additional proof and raises no new issues.  Therefore this is a merits issue irrelevant to certification.

Flowers argues that a deduction does not constitute a fine unless the conduct of the individual class members is examined,[77] but there is no evidence that Flowers ever did so before the fines were imposed. Therefore, the deductions actually charged are by definition fines, because Flowers transferred many of its business costs and expenses to the Plaintiffs, which is prohibited by public policy under the LWPA, unless they relate to intentional or negligent damage to property.[78]  For example, every distributor had identical sums deducted each week for warehouse rent and administrative fee regardless of his conduct or actions as a distributor.  Flowers prepared an identical weekly settlement statement for each distributor showing the income earned and all deductions.[79]  None of these deductions was based on intentional or negligent damages.  Therefore, this is a common legal issue among all distributors on the merits that can be resolved by motion or on the merits. The differences in the amounts of deductions among each distributor would at

---

[77] [Doc. 386] Opposition, page 10.

[78] See, e.g., _Newsom v. Global Data Systems, Inc_., 107 So. 3d 781, 788-789 (La. App. 3rd Cir. 2013) writ denied (La. 4/5/13) 110 So.3d 595 (La. 2013). The penalty provisions of La.R.S. 23:635 are not automatic, "[h]owever, when an employer is arbitrary, sets out procedural pitfalls for the employee, or is negligent in failing to pay past due wages, penalty wages will be assessed." _Newsom_ at page 787.  _Brown v. Navarre Chevrolet, Inc._, 610 So.2d 165 (La. App.3rd Cir. 1992) where the court found payroll deductions were "illegal violations of the clear language of La.R.S. 23:635." It is well settled that an employer and employee may negotiate terms of an employment contract but may not agree to terms prohibited by law or against public policy. _Newsom_, at pages 788-789, _Valentino v. Heart and Vascular Associates of Acadiana,_ 221 So.3d 136, 145 (La. App. 3rd Cir. 2017), _Leprette v. RCS, LLC,_ 206 So.3d 1215, 1219 (La. App 3rd Cir. 2016), _Garage Solutions v. Person_, 201 So. 3d 962, 964 (La. App. 3rd Cir. 2016).

[79] A representative form of the weekly settlement statement prepared by Flowers and sent to each distributor is attached hereto as Exhibit 64.

best be a part of the quantum phase of the trial.[80] This is an issue to be tried on the merits which is irrelevant to certification.

Flowers states that some distributors "worked for other bakeries at the same time" and created material differences among distributors.[81] Flowers cites three (3) instances where distributors distributed other bakery products. In each case Flowers approved and even encouraged the distributor's to distribute this product. Mark Bueche distributed french bread from Duhe's Bakery. But Flowers approved this arrangement and Duhe's Bakery even dropped the french bread at the Flowers warehouse for distribution by Flowers distributors.[82] Flowers not only approved Kenneth Seals to distribute po-boy bread that Flowers did not bake but encouraged Seals to use the bread as a means to get new business from customers.[83] Michael Normand inherited the longtime distribution of Leidenheimer french bread when he purchased his route and Flowers approved this arrangement.[84] Leidenheimer would bring the bread to the warehouse.[85] Flowers told the distribution of Leidenhaimer bread was a "perk" associated with his route.[86] At best, even if characterized as a factor in the economic realities or state law tests, this single factor could not be determinative, even as to Bueche, Seals or Normand alone. If Flowers contends otherwise, it has a remedy by motion for these three cases, but the common question will still remain for the rest of the class. In any case, this is an issue for the merits, and therefore irrelevant to certification.

Flowers argues that Outside Sales Exemption ("OSE") and Motor Vehicle Carrier Act ("MVCA") defenses require individualized proof.[87] But Flowers will attempt to apply the OSE

---

[80] This particular dissimilarity would also be appropriate to discuss under the Quantum Dissimilarities discussion on pages 20 to 22, *infra*.
[81] [Doc. 386-1] Opposition, Exhibit 1, page 7.
[82] See Mark Bueche Deposition p. 64:3-64:19, attached hereto as Exhibit 24.
[83] See Kenneth Seals Deposition p. 43:7-45:3, attached hereto as Exhibit 40.
[84] See Michael Normand Deposition p. 52:11-54:13, attached hereto as Exhibit 33.
[85] See Michael Norman Deposition p. 52:11-54:13, attached hereto as Exhibit 33.
[86] See Michael Normand Deposition p. 52:11-54:13, attached hereto as Exhibit 33.
[87] [Doc. 386] Opposition, page 22.

and MVCA to the entire class, so the issue is common, not individualized. Under the OSE, "Drivers who deliver products and also sell such products may qualify as an exempt outside sales employee *only* if the employee has a ***primary*** duty of making sales."[88]  The primary duty of all distributors is distributing, not sales.  The common experience of the drivers also shows that they have little or no control over sales.  These results obtain under the virtually uniform  Flowers distributor Model and Distributor Agreement. To the extent this issue can be individualized, Flowers can dispose of it by motion for dismissal or summary judgment so it is irrelevant to certification.  Flowers used this same argument to decertify in <u>Rehberg v. Flowers Baking Co. of Jamestown, LLC</u>, 2015 WL 1346125, at *14 (W.D.N.C. Mar. 24, 2015).  Denying Flowers' motion to decertify, the <u>Rehberg</u> court stated:

> "Such defenses are legal issues for this Court to determine that would not render the class unmanageable.  Furthermore, without greater specificity as to how these defenses would be asserted, the court does not find it appropriate to decertify this action based on defenses that Defendants may or may not choose to assert as to some or all Plaintiffs."

<u>Rehberg v. Flowers Foods, et al</u>, 2015 WL 1346125, pp. 32-34.

Also these issues of the OSE and MVCA are common, and can have a common answer, and support certification.  This issue was determined on a common basis by Motions for Summary Judgment denied in <u>Rehberg v. Flowers Baking Company of Jamestown, LLC</u>, 162 F.Supp.3d 490, 498-513 (W.D. N.C. 2/16/2016) and referred to the merits.  They can be so determined here before trial by the appropriate motion or referred to the merits as well, and are irrelevant to certification.

---

[88] 29 C.F.R. § 541.504(a) [Emphasis added](Exhibit 47).

QUANTUM DISSIMILARITIES

Potential differences in the use of personal vehicles is another red herring passed along by Flowers.[89]  Flowers argues that a decision in *Noll v. Flowers Foods, et al*[90] requires decertification of this case.[91]  *Noll* did not grant decertification.  The Court in *Noll* was entertaining Partial Motions for Summary Judgment filed by each party.  The *Noll* Court merely granted leave for Defendants to file a motion to decertify based on Flowers' analysis of the MVCA and Small Vehicle Exception ("SVE").  But this part of the analysis by Flowers is flawed.  First, this would require the *Noll* Court to engage in the type of merits consideration that is expressly prohibited under U.S. Supreme Court and Fifth Circuit precedent.[92]  Second, Flowers' observation that the SVE requires that the small vehicle be used *to haul or deliver products* is incorrect.  The SVE does not require that the small vehicle be used for any particular purpose.  Therefore, the SVE does not require the delivery or movement of bread in the small vehicle.[93]  Third, interstate commerce under the FLSA is determined as to employees, not goods or products.  *De Loach v. Crowley's, Inc.*, 128 F.2d 378 (5th Circuit, 5/25/1942).  Finally, each and every member of the collective action for which discovery has been conducted has testified that they have used their personal vehicles in

---

[89] [Doc. 386-1] Opposition, Exhibit 1, page 16.

[90] 2020 WL 476362 (D. Maine, Jan. 29, 2020) (Exhibit 57).

[91] [Doc. 386] Opposition, pg. 23.

[92] The Supreme Court stated in *Amgen Inc. v. Connecticut Retirement Plans and Trust Fund,* 568 U.S. 455, 133 S.Ct. 1184, 185 L.Ed.2d 308 (2013) Rule 23 grants Courts no authority to "engage in free-ranging merits inquiries at the certification stage" and "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  As the Fifth Circuit stated in *Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014)  "Rule 23 at this class certification stage does not therefore become a dress rehearsal for the merits. . . . In other words, to satisfy the commonality requirement under Rule 23(a)(2), the parties may potentially need to provide evidence to demonstrate that a particular contention is common, but not that it is correct."

[93] In order to qualify for the Small Vehicle Exception an employee must only (1) perform *some* work that affects the safety of operations in smaller vehicles, and (2) it must be *part* of the employee's *duties* to do so.  (emphasis added) *Aikens v. Warrior Energy Services*, 2015 WL 1221255 pgs. 7-12 (S.D. Tex. 2015) (Exhibit 58), *Roche, et al v. S-3 Pump Service*, 154 F.Supp.3d 441, 447-448 (W.D. Tex. 2016) and *Rehberg v. Flowers Foods, et al*, 162 F. Supp.3d 490, 507-513 (W.D.N.C. 2016).

performing their duties as a Flowers distributor.[94]  If this issue is pertinent to class certification at all, how much time a particular distributor used his personal vehicle in a particular week goes to the quantum to which a particular distributor may be entitled, not to the FLSA coverage of the employees. Again, if common, the issue supports certification; if individualized, irrelevant to certification of the common contention which still remains.

Flowers states that "certain of the plaintiffs are not entitled to overtime because they did not exceed forty hours of work in workweeks."[95] First, this is contrary to the allegations which are common to all the plaintiffs and, under *Deepwater Horizon*, irrelevant at the certification stage.[96] Finally, if Flowers is correct as to certain Plaintiffs, they can be addressed by dismissal or a summary judgment motion and therefore are irrelevant to certification. Finally, this is clearly a disputed issue and Flowers assertion is in all likelihood false.  Flowers took the discovery deposition of 38 FLSA class members and written discovery were propounded to 51 class members. Each and every member of the collective action for which discovery has been conducted has testified that he has worked more than 40 hours per week during all or a portion of the time

---

[94] Citations to class member depositions where each class member stated that he used his personal vehicle to perform his job duties for Flowers. E. Abadie (Exhibit 18) p. 75:18-76:21; J. Ash (Exhibit 19) p. 89:5-91:21; T. Bass (Exhibit 20) p. 71:11-72:20; J. Bell (Exhibit 21) p. 87:8-88:4; B. Botos (Exhibit 22) p. 63:16-66:10; M. Bueche (Exhibit 24) p. 87:24-90:14; J. Craven (Exhibit 48)  p. 43:18-45:2; M. Crawford (Exhibit 25) page 57:10-57:17 and 72:5-74:1; D. Doucet (Exhibit 26) p. 40:18-41:18; A. Ferrill (Exhibit 27) p.114:20-117:20; M. Gordon (Exhibit 29) p. 84:24-86:20; C. Holcomb (Exhibit 30) p. 68:15-70:2; D. Jones (Exhibit 31) p. 71:20-73:18; E. Lazard (Exhibit 49) p. 55:3-56:13; M. Louviere(Exhibit 50) p. 120:13-122:20;  C. Meche (Exhibit 32) p. 78:23-79:6; B. Naquin (Exhibit 51) p. 64:21-65:14; M. Normand (Exhibit 33) p. 68:3-70:12; T. Pejsach (Exhibit 34) p. 109:24-112:4; R. Powell (Exhibit 35) p. 53:23-54:19; K. Rabeaux (Exhibit 36) p. 74:20-75:7; D. Richard (Exhibit 37) p. 89:6-91:14; C. Riley (Exhibit 38) p. 111:18-114:2; B. Roy (Exhibit 34) p. 88:7-89:2; K. Seals (Exhibit 40) p. 47:14-48:7; D. Tellis (Exhibit 41) p. 78:16-80:4; C. Tillman (Exhibit 42) p. 67:2-67:19; A. Works (Exhibit 43) p. 118:14-119:12; S. Williams (Exhibit 44) p. 70:1-71:6; J. Zelman (Exhibit 45) p. 57:21-58:8, 60:9-61:23; R. Zeringue (Exhibit 46) p. 83:5-83:18, 84:21-85:11.
[95] [Doc. 386] Opposition, page 22.
[96] Commonality may exist even where the plaintiff's damages are different and diverse. *In Re: Deepwater Horizon*, 739 F.3d 790, 810-811 (5th Cir. 2014).

period for which FLSA overtime penalties can be recovered.[97]  Finally, this is at best a quantum issue to be determined in the post trial phase of the class action proceeding.

## CONCLUSION

This Court should be acutely aware of the condemnatory effect on some claims if Flowers' Motion to Decertify the FLSA collective is granted or if the Plaintiffs' Motion to Certify the Rule 23 class is denied.  "The reversal of class certification could mean that legitimate claims will go unheard."[98]  Some of the claims may be "negative value suits" where it would be uneconomical for class members to litigate individually.[99]  Proof that a particular action is a negative value suit may satisfy the superiority requirement of Rule 23(b). "The most compelling rationale for finding superiority in a class action – the existence of a negative value suit."[100]

The granting of certification and denial of decertification is never final.  Rule 23 (c)(1)(C) states that "an order that grants or denies class certification may be altered or amended before a final judgment."  As this case moves forward, if this Court feels the current collective action and class action may be inappropriate on certain issues or as to certain groups of plaintiffs, the Court may modify the class as appropriate.  Rule 23(c)(4) provides that "[w]hen appropriate, an action

---

[97] Citations to class member depositions were each class member stated he worked in excess of 40 hours per week during all or a portion of the applicable time period for FLSA overtime penalties. E. Abadie (Exhibit 18) p. 23:8-24:6; J. Ash (Exhibit 19) p. 97:1-101:16; T. Bass (Exhibit 20) p. 92:20-3; J. Bell (Exhibit 21)  p. 91:16-94:25; B. Botos (Exhibit 22) p. 84:18-87:19; G. Breaux (Exhibit 23) p. 34:9-36:6; M. Bueche (Exhibit 24) p. 91:16-95:17; M. Crawford (Exhibit 25) page 117:14-118:20; D. Doucet (Exhibit 26) p. 131:16-133:11; A. Ferrill (Exhibit 27) p.63:12-64:22, 95:12-95:17; R. Francis (Exhibit 28) p. 102:6-104:12; M. Gordon (Exhibit 29) p. 121:10-123:24; C. Holcomb (Exhibit 30) p. 96:10-96:25; D. Jones (Exhibit 31)  p. 133:10-135:3; C. Meche (Exhibit 32) p. 93:20-96:3; M. Normand (Exhibit 33)  p. 88:6-88:12; T. Pejsach (Exhibit 34) p. 136:7-138:23; R. Powell (Exhibit 35) p. 49:16-51:25; K. Rabeaux (Exhibit 36) p. 97:15-99:8; D. Richard (Exhibit 37) p. 117:13-118:2; C. Riley (Exhibit 38) p. 62:20-63:8; B. Roy (Exhibit 39) p. 95:10-96:13; K. Seals (Exhibit 40) p. 55:2-57:7; D. Tellis (Exhibit 41) p. 113:11-113:16, 118:3-118:21; C. Tillman (Exhibit 42) p. 81:9-84:2; A. Works (Exhibit 43) p. 152:5-153:24; S. Williams (Exhibit 44) p. 112:22-114:22; J. Zelman (Exhibit 45)  p. 105:4-105:12; R. Zeringue (Exhibit 46) p. 108:12-111:16.  In addition, 51 class members answered interrogatories specifically disclosing that they worked in excess of 40 hours per week during all or a portion of the applicable time period for FLSA overtime penalties.

[98] *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 769 (5th Cir. 2020).

[99] *In Re: Monumental Life Insurance,* 365 F.3d 408, 411, note 4 (5th Cir. 2004) and *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 769 (5th Cir. 2020).

[100] *Castano v. American Tobacco Co.,* 84 F.3d 734, 748 (5th Cir. 1996) and *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 769-770 (5th Cir. 2020).

may be brought or maintained as a class action with respect to particular issues." While Rule 23(c)(5) provides that "[w]hen appropriate, a class may be divided into subclasses that are each treated as a class under this rule."

Ultimately, Flowers' argument is that you must prove the merits before the class is certified. Focusing on the merits, rather than the _Lusardi_ certification issues, Flowers would have this Court defy _Amgen_ and _Deepwater Horizon_ to throw out the class action baby with the Flowers' bathwater of irrelevant details. The trend in Rule 23 is clearly away from merits determination decertifications and towards certification of common question cases susceptible to one stroke answers. Flowers would have this Court swim against the _Amgen/Deepwater Horizon_ current, both of which buttress its original Recommendation for certification. Like the increasing number of judicial decisions since _Rehberg_,[101] this Court should throw out the bathwater of Flowers' arguments and save this infant FLSA collective and Rule 23 baby.

---

[101] There are three (3) recent decisions that support the denial of decertification in _Rehberg_. In each of these cases, the Plaintiffs sought to certify a conditionally certified FLSA collective action and sought to certify a Rule 23 class for Flowers' violations of State wage laws. In each case Flowers filed a Motion to Decertify the conditionally certified collective and to deny class certification of the State wage law claims. In each case the Court denied Flowers' Motion to Decertify and granted the certification of a Rule 23 class for State law claims. In one of these cases, the appellate court has already denied an appeal.

In _Noll, et al vs, Flowers Foods, et al,_ Case No. 1:15-cv-0493 (D. Me. January 15, 2019; WL 2019 206084) (Exhibit 57) the Court set forth reasons that Flowers' Distributors in Maine me all of the requirements for FLSA collective certification and the requirements for Rule 23 class certification for violations of Maine's employment practices law. The Court stated: "it is my assessment that proof of the right to control rests upon predominately common evidence…evidence regarding the nature of the work and its importance to Defendants' business is common to the group." ([Doc 202], pgs. 7-8) "Similarly, Defendants' concerns over defenses they may be able to raise against individual class members does not persuade me that the questions pertaining to those defenses would predominate or make [a] class action proceedings inferior to alternative methods of ligating the claims presented." ([Doc 202], pg. 8, Footnote 2). Motion to appeal the District Courts' Grant of Certification was DENIED by US First Circuit Court of Appeals, April 3, 2019. [Doc. 221]. As previously discussed in this memorandum on page **, the Court has indicated it would entertain another motion to decertify.

In _Carr, et al vs. Flowers Foods, et al/ Consolidated with/ Boulange, et al vs. Flowers Foods, et al,_ Case No. 15-6391 (E.D. Pa., May 7, 2019; WL 2027299) (Exhibit 63) the Court set forth reasons that Flowers' Distributors in Pennsylvania, Maryland, and New Jersey met all of the requirements for FLSA collective certification and the requirements for Rule 23(b)(3) class certification for violations of these States' employment laws. The Court noted: "there is near uniformity among the members of the collective. In particular, there is _no_ variation on the primary source of their livelihood: the majority of distributors' sales come from large chain customers, which are chiefly controlled by Flowers. Further, there appears to be little to no variation as to the Flowers-operated training program

Respectfully submitted,


/s/ Steven G. Durio
STEVEN G. DURIO (#05230)
D. PATRICK KEATING (#14417)
RYAN M. GOUDELOCKE (#30525)
TRAVIS J. BROUSSARD (#33036)
**Durio, McGoffin, Stagg & Ackermann**
220 Heymann Boulevard (70503)
Post Office Box 51308
Lafayette, LA   70505-1308
Phone:  (337) 233-0300
Fax:      (337) 233-0694
Email:  durio@dmsfirm.com
            rick@dmsfirm.com
            ryan@dmsfirm.com
            travis@dmsfirm.com

**and**


/s/ Thomas M. Hayes, IV
THOMAS M. HAYES, IV (#28600)
**Hayes, Harkey, Smith & Cascio, L.L.P.**
2811 Kilpatrick Blvd. (71201)
Post Office Box 8032
Monroe, LA 71211-8032
Phone: (318) 387-2422
Fax:     (318) 388-5809
Email:  tommy@hhsclaw.com

**ATTORNEYS FOR THE PLAINTIFFS
AND THE CLASS**

---

they were required to complete and the general provisions in the Distributor Agreement that outline the terms of their relationship with Flowers. Simple, as to many key points, the members of the collective were near-identically situated." (Emphasis by the Court) [Doc. 302, pg. 9]. As to differences among class members the Court noted: "variations identified by Defendants pale in comparison to the commonalities…Further, while there is some variation on the question of whether distributors did in fact hire assistances, the Distributor Agreement provide that distributors need not serve their routes personally- meaning that Plaintiff's are again similarly situated in that the terms of the working arrangement between Flowers and distributors permitted such hires." [Doc. 302, pg. 12].

In *Neff, et al vs. Flowers Foods, et al*, Case No. 5:15-cv-254 (U.S.D.C. Vt., May 16, 2019) (Exhibit 62) the Court outlined how Flowers' Distributors in Vermont met all of the requirements for FLSA collective certification and the requirements for Rule 23 class certification for unauthorized wage deductions under State law. The Court rejected Flowers' argument that the opportunity to acquire multiple routes and use helpers were defective to the "predominance" factor in class certification. The Court held that "a distributor with multiple routes is still subject to the same type of supervision as a distributors with only one" and "the type and degree of supervision are the same among all drivers." ([Doc 281], pg. 28).

25

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of **Plaintiffs' Reply to Flowers' Response in Opposition to Plaintiffs' Supplemental Memorandum** was electronically filed with the Clerk of the Court using the CM/ECF system which sent a notice of electronic filing to counsel as indicated by the Court.

Lafayette, Louisiana, this 5th day of March, 2020.

    /s/ Steven G. Durio
    STEVEN G. DURIO