# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

**ANTOINE RICHARD, ET AL.**          **CIVIL ACTION NO. 6:15-2557**

**VERSUS**                          **JUDGE S. MAURICE HICKS**

**FLOWERS FOODS, INC., ET AL.**  **MAGISTRATE JUDGE WHITEHURST**

## AMENDED REPORT AND RECOMMENDATION

Pending before the undersigned on referral from the district judge are two motions, namely, the Motion for Class Certification [Doc. 299] filed by plaintiffs Jerry Bell, Chris Meche, Michael Aymond, Mack Gordon, Fred Oliveaux, and Kevin Rabeaux (collectively, "plaintiffs"), and the Motion for Decertification [Doc. 310] filed by defendants Flowers Foods, Inc. ("Flowers Foods"), Flowers Baking Co. of Lafayette, LLC ("Flowers/Lafayette"), Flowers Baking Co. of Baton Rouge, LLC ("Flowers/Baton Rouge"), Flowers Baking Co. of Tyler, LLC ("Flowers/Tyler") and Flowers Baking Co. of New Orleans, LLC ("Flowers/New Orleans") (hereinafter, collectively, "Flowers" or "the Flowers defendants").   Both motions are opposed [Docs. 317 & 319, respectively], and reply briefs were filed responding to each opposition brief [Docs. 321 & 322].

On August 13, 2018, the undersigned issued a Report and Recommendation, wherein it was recommended that the Motion for Class Certification be granted and the Motion for Decertification be denied.

On August 27, 2018, Flowers filed an Objection to the Report and Recommendation [Doc. 342]; plaintiffs filed a response to that objection on September 10, 2018 [Doc. 345].  The parties thereafter requested a stay in this matter pending an attempt to mediate the case, and the case was stayed by the undersigned on September 27, 2018 [Doc. 347].  A settlement conference with Magistrate Judge Patrick Hanna was conducted on April 4, 2019, however the parties failed to reach a settlement [Doc. 362], and the stay in this matter was lifted on April 8, 2019 [Doc. 364].  On June 5, 2019, plaintiffs filed a supplemental response to the defendants' objections to the Report and Recommendation [Doc. 367], and on June 11, 2019, Flowers filed a reply brief to that supplemental response [Doc. 370]. On June 19, 2019, Plaintiffs filed a reply to Flowers response. [Doc. 375].

On October 18, 2019, the district judge remanded the pending motions to the undersigned for further consideration of the entire matter in light of the objections and briefs filed. [Doc. 376].   Additional briefing was filed in the months thereafter [Docs. 383; 386; 391].   A second settlement conference was scheduled before Magistrate Judge Hanna on June 3 and June 5, 2020, however the parties again failed to reach a settlement of the matter [Doc. 400].   Additional briefing was filed

by defendants on August 5, 2020 [Doc. 403], at which time all briefing on the motions was completed.

After consideration of the district judge's directive, Fifth Circuit precedent, and all briefing in connection with the pending motions, the undersigned now issues the following Amended Report and Recommendation.

## I.    BACKGROUND

This case involves claims arising under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.*, and Louisiana's Wage Payment Act ("LWPA"), La. Rev. Stat. §23:631, *et seq.*   In the instant lawsuit, plaintiffs are distributors for Flowers of New Orleans, Baton Rouge, Lafayette, and Tyler.   Flowers is a producer and marketer of packaged bakery foods and is the parent company of approximately 40 subsidiary bakeries throughout the United States.   The Flowers defendants uniformly classify all distributors as independent contractors, pursuant to a "Distributor Agreement," which all distributors have signed.   All distributors sign essentially the same Distributor Agreement under the same conditions; none of these contracts are ever actually negotiated by any distributor or even the bakery to whom the distributor reports.   Defendants also control all pricing, including the prices distributors pay them, as well as the prices paid by customers to distributors for the same product.

The plaintiffs in the instant lawsuit allege they are misclassified by defendants as independent contractors, as opposed to employees, and are therefore entitled to certain benefits under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.*, and Louisiana's Wage Payment Act ("LWPA"), La. Rev. Stat. §23:631, *et seq*. The FLSA collective group consists of all individuals employed as distributors for Flowers, and are or were misclassified as independent contractors, anywhere in Louisiana, at any time during the applicable limitations period ("Class" or "Distributors").   Plaintiffs bring their remaining state-law claim on behalf of the same distributors as a class.   This action challenges both the classification of the class as independent contractors, and defendants' denial to plaintiffs and the class of the rights, obligations, privileges, and benefits owed to them as employees under the FLSA, including overtime premium pay.   Plaintiffs also assert that Flowers violated the LWPA by failing to pay overtime premium pay and by illegally assessing fines against employees and deducting such sums from their wages as fines.

With respect to their FLSA claims, on November 28, 2016, at the first step of the two-stage process used by most district courts to determine whether putative class members are similarly situated so that they may proceed collectively, *see, e.g., Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir.1995); *Reyes v.*

*Texas Ezpawn, L.P.*, 2007 WL 101808, at *2 (S.D.Tex. Jan. 8, 2007), the Court granted plaintiff's Motion for Conditional Class Certification under the "lenient standard" typically applied at that stage [Doc. 136].

At the time it granted conditional certification of the FLSA claims, the court found that plaintiffs had shown the putative class members were together the probable victims of a single decision, policy, or plan and were similarly situated in that: (1) plaintiffs had the same job duties; and (2) were subject to the same policies and standards determining their compensation and performance requirements.  In granting conditional certification, the court relied primarily on plaintiffs' allegations and affidavits, noting it was not required to consider any deposition testimony.  Since the entry of that order, the parties have undergone extensive discovery.  There are currently 114 plaintiffs and opt-ins. Discovery included approximately 43 depositions of plaintiffs (some of whom were deposed twice under Phase I and Phase II discovery).   The FLSA plaintiffs took a significant number of management depositions, as well as from all four defendants.

Now before the court are the two pending motions regarding the suitability of all claims in this case as a class action.  Plaintiffs seek to certify the LWPA claims under Rule 23 of the Federal Rules of Civil Procedure, while the Flowers defendants seek to decertify the FLSA claims.

## II. LAW AND ANALYSIS

### A. Motion for Class Certification of LWPA Claims Under Rule 23

Plaintiffs Jerry Bell, Chris Meche, Michael Aymond, Mack Gordon, Fred Oliveaux, and Kevin Rabeaux seek certification on behalf of the class for their LWPA claims. Plaintiffs are distributors who perform delivery and merchandizing services to local retailers of bakery and snack food products manufactured or sold by Flowers.

Plaintiffs move this court to certify the LWPA claims in this litigation as a class action, with the class members defined as follows:

> All persons who work or who have worked as a distributor in the State of Louisiana for Flowers and were classified as independent contractors.

Plaintiff seeks certification under Rule 23(b)(2), arguing that defendants have misclassified plaintiffs and proposed class members as independent contractors such that injunctive or declaratory relief is appropriate respecting the class as a whole. Additionally, plaintiffs seek certification under Rule 23(b)(3), arguing that common questions of fact and law predominate over questions affecting only individual class members. Plaintiffs ask that this court designate them as class representatives and to designate their attorneys as class counsel.

6

Rule 23 of the Federal Rules of Civil Procedure governs certification of a class action.  A district court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class.  *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996), *citing General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); *Applewhite v. Reichhold Chems.*, 67 F.3d 571, 573 (5th Cir.1995).  The decision to certify is within the broad discretion of the court, but that discretion must be exercised within the framework of Rule 23. *Castano*, 84 F.3d at 740, *citing Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S.Ct. 2193, 2200, 68 L.Ed.2d 693 (1981).  The party seeking certification bears the burden of proof. *Horton v. Goose Creek Ind. Sch. Dist.*, 690 F.2d 470, 486 (5th Cir.1982), *cert. denied*, 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983); *In re American Medical Sys.*, 75 F.3d 1069, 1086 (6th Cir.1996) (concluding that district court reversed the proper burden of proof by asking defendants to show cause why the court should not certify the class).

To obtain class certification, a plaintiff must satisfy the four requirements of Fed. R. Civ. P. 23(a).  Additionally, the case must be consistent with at least one of the types of class actions defined in Fed. R. Civ. P. 23(b).

### 1.    Analysis of Rule 23(a) Requirements

Class certification under Rule 23(a) is appropriate if the class is "ascertainable" and if the following four requirements are met: (1) the class is so

numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the representative's claims or defenses are typical of those of the class; and (4) the representative will fairly and adequately represent the interests of the class.   Fed. R. Civ. P. 23.   *See In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 133 (E.D. La. 2013) ("In addition to the four explicit prerequisites of Rule 23(a), courts have read an "implied requirement of ascertainability" into Rule 23(a)), *citing In re Amaranth Natural Gas Commodities Litig.*, 269 F.R.D. 366, 376 (S.D.N.Y.2010) (internal quotation marks omitted).   *See also Unger v. Amedisys, Inc.*, 401 F.3d 316, 320 (5th Cir. 2005) ("[t]he party seeking certification bears the burden of establishing that all requirements of Rule 23 have been satisfied. . . [f]irst, the district court must find what has been termed numerosity, commonality, typicality, and representativeness. . . ").

### a.    Ascertainability

In addition to the certification requirements of 23(a), Rule 23 requires that an order certifying a class action "define the class and the class claims, issues, or defenses."   Fed. R. Civ. P. 23(c)(1)(B).   *See, e.g., In re Deepwater Horizon,* 739 F.3d 790, 821 (5th Cir.2014), *quoting Union Asset Management Holding A.G. v. Dell, Inc.,* 669 F.3d 632 (5th Cir. 2012).   Plaintiffs' proposed class definition

properly defines an identifiable class that can be ascertained by reference to objective criteria, and the precise identities of all class members can be readily determined from Flowers' business records.    Flowers does not challenge plaintiffs' contentions in this regard.   Therefore, the undersigned finds that the proposed class satisfies the ascertainability requirement.

### b.    Numerosity

The numerosity component of Rule 23(a) requires that the class be so numerous as to make joinder of all members impracticable.   The Fifth Circuit has explained that numerosity is not based on numbers alone.   *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981), *citing Philips v. Joint Legislative Committee*, 637 F.2d 1014, 1022 (5th Cir. 1981); *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980).   Indeed, numerosity considers all relevant factors, including "geographical dispersion of the class, the case with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Zeidman*, 651 F.2d at 1038.   Therefore, classes can be certified with as few as twenty-five or thirty members.   *Id.*

Plaintiffs argue that the putative class is made up of at least 250 individuals, all of whom worked for Flowers within the State of Louisiana as distributors, were misclassified as independent contractors, and were subject to Flowers' policies,

which allowed Flowers to control their work and wages in a manner that violated the LWPA.

No specific number of claimants is required to sustain a class action, and the Fifth Circuit has certified classes significantly smaller than the putative class here. Although the number of members in a proposed class is not determinative of whether joinder is impracticable, the size of the class in this case— at least 250 members—is within the range that generally satisfies the numerosity requirement. *See, e.g.,Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (district court concluding numerosity requirement was satisfied where the size of the class was 100 to 150 members).   Thus, the undersigned finds that the proposed class satisfies the numerosity requirement.

### c.   Commonality

The commonality element requires that there be questions of law or fact common to the class.   Fed.R.Civ.P. 23(a)(2).   Commonality requires the plaintiff to demonstrate that the class members all suffered the same injury, not that they merely suffered a violation of the same provision of law.   *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011).   In order to satisfy commonality under *Dukes*, a proposed class must prove that the claims of every class member "depend upon a common contention . . . that is

capable of classwide resolution," meaning that the contention is "of such a nature . . . that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."   131 S.Ct. at 2551, *cited in M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 838 (5th Cir. 2012).   Even "one common question of law or fact" is sufficient to satisfy the requirement of commonality when "class wide proceedings have the ability 'to generate common answers apt to drive the resolution of the litigation.'"   *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F.Supp.2d 1040, 1052 (S.D. Tex.2012), *quoting Dukes*, 564 U.S. at 350.

The Flowers defendants argue that the plaintiffs cite to out-dated, pre-*Dukes* caselaw in arguing that the analysis for commonality is not a demanding one.   The defendants rely on *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 839–40 (5th Cir. 2012), in which the district court – relying on pre-*Dukes* case law – found that the plaintiffs satisfied the more lenient standard for commonality.   On appeal, the Fifth Circuit reversed the district court, noting:

> Although the district court's analysis may have been a reasonable application of pre–[Dukes] precedent, the [Dukes] decision has heightened the standards for establishing commonality under Rule 23(a)(2), rendering the district court's analysis insufficient.
>
> In finding that the proposed class satisfied Rule 23(a)(2)'s commonality requirement, the district court relied, in large part, on this circuit's pre-[Dukes] case law finding that "[t]he test for commonality is not demanding."   Before [Dukes], the rule in this

circuit provided that in order to satisfy commonality "[t]he interests and claims of the various plaintiffs need not be identical. Rather, the commonality test is met when there is 'at least one issue whose resolution will affect all or a significant number of the putative class members.'"  Further, the court's pre-[Dukes] caselaw held that "[t]he fact that some of the Plaintiffs may have different claims, or claims that may require some individualized analysis, is not fatal to commonality."

*However, in [Dukes], the Court expounded on the meaning of its precedent providing that "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" After [Dukes], Rule 23(a)(2)'s commonality requirement demands more than the presentation of questions that are common to the class because "'any competently crafted class complaint literally raises common questions.'"  Further, the members of a proposed class do not establish that "their claims can productively be litigated at once," merely by alleging a violation of the same legal provision by the same defendant.*

Instead, the Court held that the claims of every class member must "depend upon a common contention .... of such a nature that it is capable of classwide resolution—which means the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Thus, the commonality test is no longer met when the proposed class merely establishes that "there is 'at least one issue whose resolution will affect all or a significant number of the putative class members.'"  *Rather, Rule 23(a)(2) requires that all of the class member's claims depend on a common issue of law or fact whose resolution "will resolve an issue that is central to the validity of each one of the [class member's] claims in one stroke." [Dukes], 131 S.Ct. at 2551*
*The Court further clarified that a trial court's obligation to perform a "rigorous analysis" before concluding that a class has satisfied the requirements of Rule 23(a) "[f]requently ... will entail some overlap with the merits of the plaintiff's underlying claim."*

*Stukenberg*, 675 F.3d at 839–40 (internal citations omitted) (emphasis added).

12

The undersigned agrees that the more rigorous standard enunciated in *Dukes* is the proper standard to apply to the commonality factor, however, the undersigned finds the plaintiffs satisfy the more rigorous *Dukes* standard in this matter.   The central issue to the claims of the plaintiffs is the common question of whether Flowers misclassified them as independent contractors and impermissibly deducted from their wages as a result of the common practices, procedures, and policies of Flowers.   Each class member's claims arise out of Flowers' uniform policy of classifying their distributors as independent contractors and applying deductions and offsets for purported breaches of Flowers' policies and procedures in violation of state law.   Plaintiffs' Louisiana state law claims are unified by the legal theory that they are employees, rather than independent contractors, and that plaintiffs suffered the same penalties – including offset fines – for alleged breaches of their Distributor Agreements.   Flowers controls virtually all aspects of the product sales, the prices distributors can charge for the products, the distribution chain, and the actions of distribution employees.   This primary issue is common to each plaintiff asserting Louisiana state law claims, can be answered on a class-wide basis, and leads to other common questions of law and fact under Louisiana law.

13

Flowers argues the Court will be required to engage in individualized analyses to determine the propriety of the distributors as either employees or independent contractors and attempts to engage in an analysis of different factors that it deems necessary to consider under Louisiana law to determine independent contractor status.   As the plaintiffs point out, however, such an argument is inconsistent with the courts' rejection of employers' efforts to defeat certification where the employer has subjected all class members to a uniform classification for payment and tax purposes, and with Flowers' own policy and pattern of treating all distributors uniformly.   Indeed, Plaintiffs allege that Flowers utilized a uniform policy misclassifying distributors as independent contractors and treating them as employees by controlling the manner and means by which they performed their jobs, without analyzing factors to determine whether the distributors were, in fact, acting as independent contractors or employees from a legal or factual standpoint. At the time Flowers classified every employee in this manner, it did not engage in an individualized analysis of the particular circumstances surrounding each distributor's job.   Flowers cannot now rely on such an argument to defeat class certification of the plaintiffs' claims.

Additionally, while the manner in which distributors carry out their job responsibilities will necessarily differ from distributor to distributor, such

differences are not the focus of the inquiry before the Court.   Indeed, as the claimants point out, the question at this point is not whether the distributors are *actually* employees under either the FLSA or Rule 23.   That question must be determined later from the facts at a merits-based trial -- or after appropriate dispositive motions have been filed – by applying the multi-factor tests, under either the FLSA or Rule 23 state law.   Although Flowers points to several dissimilarities among the claimants, once the class is established, dispositive issues relating to those claimants can be more appropriately handled through motion practice, which will remove the individuals who are, in fact, dissimilar, before the class trial. Although the Supreme Court has directed courts to be "rigorous" in reviewing a motion for class certification, which "may entail some overlap with the merits of the plaintiff's underlying claim," courts should not "engage in free-ranging merits inquiries at the certification stage."   *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. at 466.

Here, common evidence exists as to the propriety of Defendant's uniform classification of all distributors as independent contractors, which will allow the court to determine whether Defendants' are liable for any violations of the LWPA related to overtime pay or unauthorized deductions.   The record before the Court shows that while distributor routes differ by size and customer mix, all distributors

share the same job responsibility of servicing retailers and restaurants in compliance with customer service requirements according to what Flowers refers to as "good industry practice."[1] "Good industry practice" is a term defined in the Distributor Agreement. (See e.g. Exhibits 1-3). It is often coupled with another defined term, "best efforts."  Both terms are used by Flowers to control the distributors and the manner in which they service their distributorships. The definition of "good industry practice" is defined in the Agreement as follows:

> Good Industry Practice: Shall mean the standards that have developed and are universally accepted and followed in the baking industry, including, but not limited to, maintaining an adequate and fresh supply of Products in all outlets, properly rotating all products, promptly removing all stale products; maintaining proper service and delivery to all Outlets requesting service except those proven consistently to be unprofitable, and maintaining all equipment in a sanitary condition and in good safe working order.[2]

Charles Rich, a Flowers executive, explained at his deposition:

> They've got to service their customers according to their customer service requirements.  If a customer says I want you off my floor by 6:00 a.m., Jamestown doesn't require the distributor to be off the floor by 6:00 a.m., Jamestown simply requires that a distributor meet his customer service agreement.  So Jamestown doesn't care what times he's off the floor as long as he's met his customer service requirements.[3]

---

[1] See, e.g., Deposition of Charles Palmer Rich, attached as Exh. 5 to plaintiffs' motion for certification, Doc. 299, at pp. 61-62; Flowers' "Franchisor's Assistance, Advertising, Computer Systems and Training," attached as Exh. 12 to plaintiff's motion, Doc. 299; Ex. 8, Ramon Depo., p. 175-178; Ex. 6, Rich II, p. 187.)

[2] See Doc. 299, Exhibit 1 at Section 2.5.

[3] See Deposition of Charles Rich, attached as Ex. 5 to Doc. 299, at pp. 61-62.

16

Plaintiffs argue the definition of "good industry practices" is vague. This argument is unconvincing, however, what is clear is that Flowers' management at the subsidiary level -- directors of distributor relations, vice-presidents of sales, and directors of sales -- decide whether the subjective requirements of these vaguely defined terms have been appropriately followed by a distributor, and that the *process* for evaluation is the same at each of the thirty-one subsidiaries, regardless of the distributor at issue. Only the conclusions vary due to the subjective nature of the evaluation. For example, Flowers reprimands distributors for out of code product and tracks stale percentage of product, and any distributor with over ten percent stale for more than 12 weeks is placed on a "watch list."[4] Flowers meets with these distributors and often instructs a company representative to ride along with the closely scrutinized distributor as a remedial measure.[5] In other cases, Flowers has sales management employees coach distributors on order placement to improve stale percentages.[6] If stale percentages exceed Flowers' limit, Flowers unilaterally imposes a deduction from the distributors' wages.

At this stage of the litigation, the issue with respect to, for example, stale items, is not whether an employee is properly charged for stale items, as this is an ultimate legal determination more properly decided at the merits stage of the

---

[4] See Doc. 299, Exh. 40.
[5] See Doc. 299, Exh. 40; Exh. 6, Deposition of Chris Rich at pp. 213-14.
[6] See Doc. 299, Exh. 40.

litigation.  Rather, the issue for purposes of class certification is that employees are <u>uniformly and in the same manner</u> penalized for stale items.  Thus, the manner in which employees are treated and reprimanded on this issue is the same, regardless of their route and who their customers are.  Because they are treated in a common manner, the analysis for the Court is the same, and this similarity lends itself to a certified proceeding.

Other facts are common to each plaintiff.  While Flowers classifies all distributors as independent contractors in their Distributor Agreements, it classifies the distributors as "statutory employees" pursuant to Section 3121(d)(3) of the Internal Revenue Code.  Additionally, Flowers pays FICA taxes on behalf of each distributor.  This common classification for tax purposes demonstrates the uniform policy or pattern of classifying all distributors in the same way to benefit Flowers.  These facts show that *Flowers* itself treats distributors as a class for multiple purposes.

Additionally, the state law claims of the plaintiffs present common questions of law and fact.  Assuming the court finds in plaintiffs' favor on the threshold issue of the misclassification issue, plaintiffs' additional LWPA claims are amenable to class-wide adjudication.  The LWPA provides that ". . . no person, acting either for himself or as agent or otherwise, shall assess any fines against his

employees or deduct any sum as fines from their wages."   La. Rev. Stat. §23:635. "fines."   "A fine, within the meaning of La. Rev. Stat. §23:635, is a pecuniary penalty imposed for the violation of some law, rule or regulation."   *Brown v. Navarre Chevrolet, Inc.*, 610 So.2d 170 (La. App. 3rd Cir.1992), *citing Stoll v. Goodnight Corp.*, 469 So.2d 1072 (La. App. 2nd Cir. 1985).

Louisiana courts have held that employer's unilateral, arbitrary, or unreasonable deduction of employees' wages is a fine which and violates La. Rev. Stat. §23:635.   *See, e.g.*, *Stegall, supra,* note 3*; Brown v. Navarre Chevrolet, Inc., App. 3 Cir.1992, 610 So.2d 165*; *Slaughter v. Bd. of Sup'rs of S. Univ. & Agr. & Mech. Coll.,* 76 So. 3d 438, 457 (La. App. 1st Cir. 8/2/11), *writt denied,* 77 So.3d 970 (La. 1/13/12); *Samson v. Apollo Res., Inc.,* 242 F.3d 629, 632 (5th Cir. 2001); *Beard v. Summit Inst. of Pulmonary Med. & Rehab., Inc.,* 707 So. 2d 1233, 1237(La. 3/4/98); *Moore v. Fleming Subway Restaurants, Inc.*,   680 So.2d 78 (La.App. 2nd Cir. 8/21/96).   "An employer may not legally require an employee to pay a 'fine' in the form of a financial penalty for an error or perceived breach of the employer's work rules or policies."   *Stegall, supra,* note 3.

In the instant case, the extensive discovery conducted shows that Flowers deducts distributors' wages for a variety of reasons, and each week unilaterally deducts fines, fees, and administrative costs from the distributors' settlement

19

checks.   Items such as handheld computer rent, warehouse rent, and other fixed periodic charges are determined and unilaterally imposed.   Flowers admittedly charges every distributor certain fines by deducting such fines from distributors' weekly settlement checks and admits to reducing distributors' settlement checks by applying these fines and deductions.[7]   The plaintiffs argue that each deduction by Flowers is in direct violation of La. Rev. Stat. §23:635, which bars the assessment and deduction of fines from employee wages.   Again, with respect to these deductions, the issue at this stage is not whether the deductions have been properly made, but rather, to the extent that this argument has merit, the analysis of each claim falls under La. Rev. Stat. §23:635 and presents common questions of law and fact.

Documents produced by Flowers in discovery shows the assessment of the following fines, fees and administrative costs, as follows:

- weekly settlement statement document for Chris J. Meche, for the week of December 28, 2014 to January 3, 2015, shows an administrative fee of $29.00 and a warehouse rent fee of $36.00.[8]

- weekly settlement statement for Cartrelle Deshon Williams, for the week of February 3, 2013 to February 9, 2013, shows an administrative fee of $24.00 and a warehouse rent fee of $32.00.[9]

---

[7] See Deposition of Henry Brock, Doc. 319, Exh. 13, pp. 132-38.
[8] See Doc. 299, Weekly Settlement Sheet for Chris Meche, Exh. 27.
[9] See Doc. 299, Weekly Settlement Sheet for Cartrelle Deshon Williams, Exh. 28.

- weekly settlement statement for Randall Hernandez, for the week of November 15, 2015 to November 21, 2015, shows an administrative fee of $29.00 and a warehouse rent fee of $37.00.[10]

- Jason Craven, Timothy Prejsach, and Gerald Breaux also testified that they were charged routine maintenance and warehouse fees, and each testified these fees were mandated by the Distributor Agreement that he signed.[11]

- Addendum to Distributor Agreement for Chris Meche, dated January 14, 1991, stating that the "Company shall charge, and Distributor shall pay, a fair market, reasonable administrative fee for these services [handheld computer and software], which shall be established from time to time by the Company."[12]

- Distributor Agreement of M. Louviere, containing a provision that allows for the imposition of "reasonable administrative fees" for the use of the handheld computer and software, as well as a warehouse fee.[13]

- Distributor Agreement of A. Richard, containing a provision that allows for the imposition of "reasonable administrative fees" for the use of the handheld computer and software, as well as a warehouse fee.[14]

- Distributor Agreement of D. Doucet, containing a provision that allows for the assessment of a warehouse fee.[15]

- Distributor Agreement of M. Gordon, containing a provision that allows for the imposition of "reasonable administrative fees" for the use of the handheld computer and software, as well as a warehouse fee.[16]

---

[10] See Doc. 319, Weekly Settlement Sheet for Randall Hernandez, Exh. 7.

[11] See Deposition of Jason Craven, Doc. 319, Exh. 22, pp. 69-70; Deposition of Timothy Michael Prejsach, Doc. 319, Exh. 28, pp. 150-51; Deposition of Gerald Breaux, Doc. 319, Exh. 29, pp. 54-55.

[12] See Addendum to Distributor Agreement, Chris Meche, Doc. 105, Exh. 3, pp. 291-92.

[13] See Distributor Agreement, M. Louviere, Doc. 105, Exh.6, pp. 1175-76.

[14] See Distributor Agreement, A. Richard, Doc. 105, Exh.7, p. 0006.

[15] See Distributor Agreement, D. Doucet, Doc. 105, Exh.8, p. 0052.

[16] See Distributor Agreement, M. Gordon, Doc. 105, Exh.9, pp. 0340-41.

- Distributor Agreement of F. Oliveaux, containing a provision that allows for the imposition of "reasonable administrative fees" for the use of the handheld computer and software, as well as a warehouse fee.[17]

- Distributor Agreement of T. Randels, containing a provision that allows for the imposition of "reasonable administrative fees" for the use of the handheld computer and software, as well as a warehouse fee.[18]

- Distributor Agreement of J. Smith, containing a provision that allows for the imposition of "reasonable administrative fees" for the use of the handheld computer and software, as well as a warehouse fee.[19]

- Distributor Agreement of S. Jones, containing a provision that allows for the imposition of "reasonable administrative fees" for the use of the handheld computer and software, as well as a warehouse fee.[20]

- Distributor Agreement of J. Holcomb, containing a provision that allows for the imposition of "reasonable administrative fees" for the use of the handheld computer and software, as well as a warehouse fee.[21]

- Distributor Agreement of M. Lynch, containing a provision that allows for the imposition of "reasonable administrative fees" for the use of the handheld computer and software, as well as a warehouse fee.[22]

- Distributor Agreement of J. Albritton, containing a provision that allows for the imposition of "reasonable administrative fees" for the use of the handheld computer and software, as well as a warehouse fee.[23]

- Distributor Agreement of C. Grigsby, containing a provision that allows for the imposition of "reasonable administrative fees" for the use of the handheld computer and software, as well as a warehouse fee.[24]

---

[17] See Distributor Agreement, F. Oliveaux, Doc. 105, Exh.10, p. 0725.
[18] See Distributor Agreement, T. Randels, Doc. 105, Exh.11, pp. 0929-0930.
[19] See Distributor Agreement, J. Smith, Doc. 105, Exh.12, pp. 1404-1405.
[20] See Distributor Agreement, S. Jones, Doc. 105, Exh.14, p. 2340.
[21] See Distributor Agreement, J. Holcomb, Doc. 105, Exh.15, pp. 2590-91.
[22] See Distributor Agreement, M. Lynch, Doc. 105, Exh.16, p. 2985.
[23] See Distributor Agreement, J. Albritton, Doc. 105, Exh.17, pp. 3160-61.
[24] See Distributor Agreement, C. Grigsby, Doc. 105, Exh.18, pp. 3393-94.

- Distributor Agreement of A. Works, containing a provision that allows for the imposition of "reasonable administrative fees" for the use of the handheld computer and software, as well as a warehouse fee.[25]

Several employees, including Chris Meche, Mark Louviere, Kevin Rabeaux, Derby Doucet, Sr., Darrell Richard, Steven Smith, Jr., Mack Gordon, Freddie Oliveaux, Jason Lee Albritton, Chad Holcomb, Austin Kyle Works, and Michael Lynch, submitted affidavits, wherein they attest that they paid administrative and warehouse fees to Flowers, which were deducted from their weekly settlement checks.[26]   These deductions are not negotiated and they appear in all of the Distributor Agreements that this Court scrutinized.   The foregoing evidences the common manner in which all distributors are charged fees, regardless of the facts and circumstances of their particular distributorships.

The undersigned notes that the test for commonality under Rule 23(a) is not demanding.   *See, e.g. Bywaters v. United States*, 196 F.R.D. 458, 466–67 (E.D. Tex. 2000), citing *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 625 (5th Cir. 1999).   Indeed, it is well established that the burden of demonstrating

---

[25] See Distributor Agreement, A. Works, Doc. 105, Exh.19, p. 4685.

[26] See Affidavit of Chris Meche, Doc. 105, Exh. 29; Affidavit of Mark Louviere, Doc. 105, Exh. 30; Affidavit of Kevin Rabeaux, Doc. 105, Exh. 31; Affidavit of Derby Doucet, Sr., Doc. 105, Exh. 32; Affidavit of Darrell Richard, Doc. 105, Exh. 33; Affidavit of Steven Smith, Jr., Doc. 105, Exh. 34; Affidavit of Mack Gordon, Doc. 105, Exh. 35; Affidavit of Freddie Oliveaux, Doc. 105, Exh. 36; Affidavit of Jason Leon Albritton, Doc. 105, Ech. 37; Affidavit of James Chad Holcomb, Doc. 105, Exh. 39; Affidavit of Austin Kyle Works, Doc. 105, Exh. 40; and Affidavit of Michael Lynch, Doc. 105, Exh. 41.

commonality under Rule 23(a) is far less stringent than the commonality requirement of Rule 23(b)(3). Commonality is established where "there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Mullen,* 186 F.3d at 625 (quoting *Lightbourn v. County of El Paso,* 118 F.3d 421, 426 (5th Cir.1997)).

Although not decided in the Fifth Circuit, the case of *Rehberg v. Flowers Baking Co. of Jamestown, LLC*, 2015 WL 1346125 (W.D. N.C. Mar. 23, 2015), is particularly instructive on the issue of commonality, as it involved Flowers distributors in North Carolina who urged almost identical claims against Flowers for misclassification of all distributors as independent contractors under the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen.Stat. §§95–25.1, *et seq*. In *Rehberg*, the court stated:

> Though Defendant does indeed cite differences between the employment relationships of various distributors, the differences are not so great as to not destroy commonality. While each distributor may have carried out the essential functions of his job slightly differently, such differences will always exist between people due to variations in personal style and circumstance. Here, all distributors were instructed to carry out their jobs subject to the Distributor Agreement, had substantially similar job duties, were subject to a common policy of being classified as independent contractors, and now claim violations of the NCWHA based on this classification. As such, the court believes that it will be able to determine whether Defendants' uniform policy of classifying Plaintiff and all putative class members as independent contractors, as opposed to employees, denied them any rights under North Carolina law. Accordingly, the court finds that for Plaintiff's misclassification claim, there is a

24

> question common to all putative class members that can resolved "in a single stroke" and that sufficient common evidence exists to satisfy the commonality element of Rule 23.

*Rehberg*, 2015 WL 1346125, at *8.

*Rehburgh* is notable because it is factually identical to the issues before this Court, involving the same employer and identical claims.  Like the plaintiffs in *Rehberg*, the distributors in the instant case may have carried out some of the essential functions of his job slightly differently.   However, all Flowers distributors were instructed to carry out their jobs subject to the Distributor Agreement, all had substantially similar job duties, and all were subject to a common policy of being classified as independent contractors, and now claim violations of the LWPA based on this classification.  Considering the foregoing and considering the discovery that has been produced in this matter and meticulously scrutinized by the undersigned, the undersigned finds the plaintiffs satisfy the commonality element in the instant matter.

### d.    Typicality

The typicality requirement is met where "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ.P. 23(a)(3).  As courts have noted, the typicality requirement tends to merge with commonality, "insofar as both 'serve as guideposts for determining whether

under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001), *abrogated on other grounds by M.D. ex rel. Stukenberg v. Perry,* 675 F.3d 832 (5th Cir. 2012). *See also Soutter v. Equifax Info. Servs.*, LLC, 498 F. App'x 260, 264 (4th Cir. 2012), *quoting General Tele. Co. of Southwest v. Falcon*, 457 U.S. 147, 158 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).   The Fifth Circuit has explained:

> . . . the test for typicality . . . focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent. Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.

*James*, 254 F.3d at 571.

Thus, the "typicality" requirement in the Fifth Circuit is satisfied even if there are factual distinctions between the claims of the class representatives and those of the class, differences in the amount of damages, or even the availability of certain defenses against a class representative.   *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.,* 851 F.Supp.2d 1040, 1052 (S.D. Tex.2012), *quoting James* 254 F.3d at 571); *In re Rodriguez*, 695 F.3d 360, *citing*

*Wal-Mart v. Dukes,* 131 S. Ct. 2541 (2011).  Most circuits have held that the existence of routine and standardized practices which give rise to numerous claims weighs in favor of finding typicality.  *See, Rehberg,* 2015 WL 1346125, at *14; *Mitchell-Tracy*, 237 F.R.D. at 557, *citing Talbott v. GC Services L.P.,* 191 F.R.D. 99 (W.D.Va.2000) (Fair Debt Collection Practices Act claim arising from the mailing of numerous standardized notices); *Brink v.  First Credit Resources,* 185 F.R.D. 567 (D.Ariz.1999); *Peoples v. Wendover Funding, Inc.,*179 F.R.D. at 498;*Williams v. Empire Funding Corp.,*183 F.R.D. 428 (E.D.Pa.1998) (claims under TILA involving standardized contracts and sales and referral practices); *Simon v. World Omni Leasing, Inc.,* 146 F.R.D. 197 (S.D.Ala.1992) (standardized car lease agreement).

Here, the putative class and plaintiffs' LWPA claims all derive from Flowers' standardized policy of classifying distributors as independent contractors. The common LWPA violation claims among the putative class and plaintiffs arise from Flowers' conduct that is common to all distributors.  Plaintiffs satisfy the typicality requirement because they and the putative class were all injured in the same way from the same course of conduct, and their claims are based on the same legal theory.

### e.   Adequacy

The adequacy standard of Rule 23(a)(4) requires that the representative parties "fairly and adequately protect the interests of the case."   Fed.R.Civ.P. 23(a)(4).   The purpose of this "adequacy" requirement is to uncover conflicts of interest between named plaintiffs and the class they seek to represent.   *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.,* 851 F.Supp.2d 1040, 1052 (S.D. Tex.2012), *citing Langbecker v. Elec. Data Sys.  Corp.,* 476 F.3d 299, 314-15 (5th Cir. 2007); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).   The Fifth Circuit views the adequacy element as containing three separate but related prongs: (1) zeal and competence of class counsel; (2) class representatives' willingness and ability to take an active role in and control litigation and to protect interests of absentees; and (3) risk of conflicts of interest between named plaintiffs and class they seek to represent.   *Slade v. Progressive Sec. Ins. Co.,* 856 F.3d 408 (5th Cir.2017).   Flowers bears the burden of proving that representation will be inadequate.   *Smallwood v. Pearl Brewing Co.,* 489 F.2d 579, 592 (5th Cir.1974), *citing Bernstein v. Levenson*, 437 F.2d 756, 757 (4th Cir.1971).

The undersigned finds the plaintiffs in this matter satisfy all three elements of the adequacy analysis.   Plaintiffs satisfy the first prong of the adequacy inquiry

as their interests are identical to those of the putative class.  Plaintiffs also satisfy the second prong of the adequacy inquiry because they have retained counsel who is knowledgeable and experienced in employment law litigation as well as prosecuting class action matters.  Plaintiffs' counsel have shown they will fairly and adequately represent the interests of the class.  These facts alone are sufficient to establish the adequacy of plaintiffs' legal representation.  In the absence of proof to the contrary, courts presume that class counsel meets the adequacy requirement.  *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.,* 851 F.Supp.2d 1040, 1052 (S.D. Tex.2012), *citing In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 308 (3rd Cir.1998).

In its Objections, Flowers objects to the undersigned's initial Report on this issue, arguing that there is potential conflict between those distributors who want to remain classified as independent contractors and those who want to be classified as employees.  Flowers' argument is misplaced.  Plaintiffs argue that this case presents no "conflicts of interest" between named plaintiffs and the other class members concerning the fact-finder's determination of their *retrospective* status, and that any disagreement as to whether class members would or would not prospectively prefer to *remain* employees of Flowers does not hint at a conflict sufficient to defeat adequacy.  The undersigned agrees.  Although unable to find a

case within the Fifth Circuit providing any specific guidance on this issue, the undersigned references *Norris-Wilson v. Delta-T Grp., Inc.*, 270 F.R.D. 596, 606 (S.D. Cal. 2010), which explains:

> But the conflicts that Rule 23(a)(4) is concerned about are conflicts between the class representatives and other members of the putative class, not between those who do and don't think a lawsuit is a good idea in the first place.   Just because potential class members disagree with the spirit of an action doesn't mean it shouldn't be certified. *See Smith v. Cardinal Logistics Mgmt. Corp.,* No. 07–2104, 2008 WL 4156364 at *7 (N.D.Cal. Sept.5, 2008). It will almost always be the case that some putative class members are happy with things as they are. DTG's reliance on *O'Neal v. Riceland Foods,* 684 F.2d 577 (8th Cir.1982), is improper. Class certification was denied in that case because the plaintiff brought a wrongful termination claim against her employer and sought to represent a class of people with failure-to-hire claims—a clear disconnect not present in this case.   *Id.* at 581 n. 2.

The undersigned finds *Norris-Wilson* instructive.   In the instant case, the focus is on the retrospective treatment of plaintiffs for employment classification purposes, not whether the claimants agree that a lawsuit is the preferred vehicle for resolving the dispute.   Any disagreement as to whether class members would prefer to remain employees of Flowers does not present a conflict sufficient to defeat adequacy.   Based on the foregoing, the undersigned concludes that there are no actual or potential conflicts of interest between plaintiffs and the putative class.

After review of the record in this matter and the briefs of the parties, the undersigned finds the adequacy requirement has been met and plaintiffs' counsel

has demonstrated their qualifications to be appointed class counsel pursuant to Fed. R. Civ. P. 23(g).   Considering the foregoing, the undersigned finds the plaintiffs in this matter satisfy all elements of the certification analysis under Rule 23(a).

### 2.     Analysis of Rule 23(b) Requirements

In addition to meeting the prerequisites of Rule 23(a), "the class action must fall within one of the three categories enumerated in Rule 23(b)."  *Stukenberg v. Perry,* 675 F.3d 832, 837 (5th Cir. 2012), *citing Maldonado v. Ochsner Clinic Found.,* 493 F.3d 521, 523 (5th Cir.2007).   Here, plaintiffs seek certification under Rule 23(b)(3), which is appropriate if the court finds: (1) that questions of law *or* fact common to class members predominate over individualized questions; and (2) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.   Fed. R. Civ. P. 23(b)(3).   The plaintiffs also seek injunctive and/or declaratory relief under Rule 23(b)(2).

### a.     Rule 23(b)(3)

In addition to satisfying the Rule 23(a) requirements, "[t]he proposed class must also satisfy the requirements of Rule 23(b)(1), (2), or (3)."   *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1057–58 (S.D. Tex. 2012), *citing In re Wilborn,* 609 F.3d 748, 755 (5th Cir.2010).   Under (b)(3), the plaintiffs must establish that "questions of law or fact common to

31

class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### i.   *Common issues predominate*

The first factor – whether questions of law or fact common to class members predominate over individualized questions – "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.,* 851 F.Supp.2d 1040, 1052 (S.D. Tex.2012), *quoting Amchem Prods.*, 521 U. S. at 623-24. The question of predominance is more demanding than the Rule 23(a) requirement of commonality. *In re Wilborn*, 609 F.3d 748, 755 (5th Cir. 2010). While commonality under Rule 23(a)(2) requires the presence of common questions of law and fact, Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." *Wilborn.*, 609 at 755. This factor requires the court to assess how the matter will be tried on the merits, which "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class." *Id.* Common questions predominate if the liability "issue is susceptible to generalized,

class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016); *Allison v. Citgo Petroleum Corp.,* 151 F. 3d 402, 427 (5th Cir. 1998); *Castro v. Collecto, Inc.,* 256 F.R.D. 534, 543 (W.D. Tex. 2009); *In re Enron Corp.,* 2006 WL 1662596, at *16 (S.D. Tex. June 7, 2006).   In *Tyson Foods*, the Supreme Court explained:

> The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.,* § 4:49, at 195–196. When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."

136 S. Ct. at 1045.

Here, the primary issue in this case is whether Flowers misclassified distributors as independent contractors under the LWPA.  This question is central to plaintiffs' liability argument and common to the entire putative class.  If Flowers misclassified plaintiffs, then the misclassification applies to every distributor making up the putative class, thus satisfying the predominance requirement.

Flowers argues the employment circumstances of each individual distributor – for example, whether they employed their own independent means while serving

their distributorship, whether they owned one or multiple territories and whether they personally serviced them, whether they hired employees or performed all of the work themselves, and how they scheduled their work, to name a few – make it impossible for the court to determine liability and/or damages on a class-wide basis. As noted previously, some of these dissimilarities are dispositive issues which, if handled properly through motion practice, will remove the individuals to which they apply before the class trial.  Additionally, the Fifth Circuit has held that the need for some individualized proof of damages after the liability stage "will not defeat class certification" where the computation of damages is largely a mechanical task.  *See Allison v. Citgo Petroleum Corp.,* 151 F. 3d 402, 427 (5th Cir. 1998); *Rodriguez v. Flowers Foods, Inc.,* 4:16-CV-245, 2016 WL 7210943, at *6 (S.D. Tex. Dec. 13, 2016); *Gomez v. American Garment Finishers Corp.,* 200 F.R.D. 579, 585 (W.D.Tex.2000); *Bing v. Roadway Express, Inc.,* 485 F.2d 441 (5th Cir. 1973).   Here, once liability is established, damages may be computed with a combination of Flowers' business records and class members' good-faith estimates of their work hours.   Individualized damages do not undermine the fact that common issues predominate.

    As the plaintiffs argue, the central and threshold question for each of the claims under Louisiana law is whether Flowers wrongly classifies its distributors

as independent contractors rather than as employees.    Plaintiffs argue this determination can be made on a class-wide basis with common proof.    Plaintiffs also argue that plaintiffs' damages can be proven by defendants' payroll and business records, and that the calculation of damages is largely a mechanical task in this case, with damages capable of computation because defendants employed a uniform policy of deducting workers' compensation premiums at the same rate from independent contractors.    Thus, plaintiffs claim that there is "nothing specific to any class members' claim that would warrant an upward or downward modification of the statutory damage award.   Indeed, based upon the evidence produced, it appears the computation of damages in this matter would be a largely mechanical task because of the manner in which the uniform deductions and penalties have been assessed.   For this reason, the undersigned concludes that the predominance factor has been satisfied in this case.

### ii.    *Superiority*

Regarding the superiority inquiry, the court must carefully consider the factors articulated in Fed.R.Civ.P. 23(b)(3)(A)-(D) and consider the alternatives to a class action.   *See also Amchem*, 521 U.S. at 615.   Those factors are: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning

the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.   Fed. R. Civ. P. 23(b)(3)(A)-(D).

Although not decided in the Fifth Circuit, the case of *Rehberg v. Flowers Baking Co. of Jamestown, LLC*, 2015 WL 1346125 (W.D. N.C. Mar. 23, 2015), is instructive on the issue of predominance and superiority.   In *Rehberg*, the court stated:

> Regarding the superiority inquiry, the court has carefully considered the factors articulated in Fed.R.Civ.P. 23(b)(3)(A)-(D) and considered the alternatives to a class action. Plaintiff argues that class treatment is a superior method for adjudicating each putative class member's claims for several reasons. First, it will allow class members to seek relief from Defendants' allegedly wrongful conduct that they would otherwise be unable to pursue because of financial limitations or fear of retaliation. Second, the relatively small amount of damages sought in this case provides little incentive for class members to pursue individual claims. Finally, allowing the action to proceed as a class action will resolve all issues in a single case and promote judicial economy. On all accounts, the court agrees and finds that a class action is indeed the superior method for proceeding in this matter. Though Defendants argue that the proposed class is unmanageable and that adjudicating all members' claims would require multiple individualized inquiries, the court has found otherwise, as explained throughout this Order. The court therefore finds that the superiority prong of Rule 23(b)(3) is satisfied.

2015 WL 1346125, at *12–13.

In this case, there has been no litigation already commenced by or against members of the class, and there are no difficulties likely to be encountered in the management of a class action in this Court.   Plaintiffs argue that class treatment is a superior method for adjudicating each putative class member's claims because it will allow class members to seek relief from defendants' allegedly wrongful conduct that they would otherwise be unable to pursue because of financial limitations or fear of retaliation.   They also argue that allowing the action to proceed as a class action will resolve all issues in a single case and promote judicial economy.   After a review of the evidence, the undersigned agrees that the superiority factor is satisfied, and the requirements of Rule 23(b)(3) are met.

### b.      Rule 23(b)(2)

Rule 23(b)(2) authorizes class treatment where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P. 23(b)(2). Certification under this provision is appropriate "only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 360, 131 S.Ct. 2541, 2557, 180 L.Ed.2d 374 (2011).   Thus, a Rule 23(b)(2) inquiry requires considering two factors: 1) whether the defendant's behavior is

generally applicable to the class as a whole, and 2) whether injunctive relief predominates over monetary relief. *Casa Orlando Apartments, Ltd. v. Fed. Nat. Mortg. Ass'n*, 624 F.3d 185, 198 (5th Cir. 2010), *citing Bolin v. Sears, Roebuck & Co.*, 231 F.3d 971, 975 (5th Cir. 2000).

"To qualify for class-wide injunctive relief, class members must have been harmed in essentially the same way...." *Casa Orlando Apartments*, 624 F.3d at 198–99, *citing Maldonado v. Ochsner,* 493 F.3d 521, 524 (5th Cir.2007).  This qualification differs from a predominance of common issues that Rule 23(b)(3) requires.  Instead of requiring common issues, 23(b)(2) requires common behavior by the defendant towards the class...." *Casa Orlando Apartments*, 624 F.3d at 198–99.  In *Bolin v. Sears,* the class consisted of consumers who purchased merchandise from Sears on credit, subsequently declared bankruptcy, and thereafter either made payments to Sears regarding a claimed security interest or pre-bankruptcy debt, had property repossessed or garnished, or incurred costs in connection with Sears's collection efforts. *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 972 (5th Cir. 2000).  The issue before the court on appeal was whether plaintiffs satisfied the requirements of Rule 23(b)(2).  In concluding that they did, explained:

> Sears argues that the plaintiffs allege only various illegal acts of debt collection, not actions affecting the class as a whole. Plaintiffs allege a "pattern or practice" by Sears. Such a "pattern or practice" must

38

consist of a uniform policy allegedly applied against the plaintiffs, not simply diverse acts in various circumstances. Certification is improper if the merits of the claim turns on the defendant's individual dealings with each plaintiff.

Here, while some of the challenged practices appear to present more of a uniform policy than others, several of the practices cited by Bolin, if proved, would present a case of conduct applicable to the class: Bolin alleges that the value chart, the credit offers, the practice of failing to file agreements with the bankruptcy court, and the form letters were promulgated by central authority and applied across the board. To the extent they are a centralized policy, they would be evidenced by Sears's policy manuals, customer accounts, and recovery records. These allegations are analogous to the reaffirmation filing issue in the prior class action, which Sears concedes was properly certified. Thus, the plaintiffs have alleged behavior generally applicable to the class.

*Bolin*, 231 F.3d at 975.   Thus, the Fifth Circuit found that defendant Sears's central policies regarding bankrupt credit card consumers were sufficient to allege behavior generally applicable to the class.   *Id.*

Similarly, in *Casa Orlando Apartments*, the court concluded the plaintiff class satisfied the requirements of Rule 23(b)(2) where it found defendant Fannie Mae "had standardized policies with regard to how it treated its multi-family mortgagors," noting "[t]he Regulatory Agreements that each mortgagor signed were very similar, if not identical, and Fannie Mae had uniform policies with regards to the investment of mortgagor funds."   624 F.3d at 198-99.   The court went on:

39

> Differences do exist among the mortgagors: some had Residual Funds and others did not; some invested part of their funds while others invested nothing; some communicated with Fannie Mae regarding their investments; and many no longer have mortgages serviced by Fannie Mae. But regardless of these differences, Fannie Mae's behavior and policy of investing the various funds is generally applicable to the class.

*Id.* at 199.

In the instant case, the undersigned concludes that Flowers has acted and continues to act on grounds "generally applicable to the class" by entering into standard agreements with each putative class member and enforcing standardized policies that control the manner and means by which all distributors perform their work.  Indeed, as can be seen from the discovery cited by the undersigned in this Report, across-the-board deductions from employees' wages are made for a variety of reasons, including deductions for handheld computer rent, warehouse rent, and other fixed periodic charges, and Flowers admittedly charges *every* distributor a myriad of fines and uses a *uniform policy* to apply these deductions.  The undersigned concludes that the foregoing facts satisfy this component of the Rule 23(b)(2) analysis.

The court also notes that the fact the plaintiff seeks monetary damages – in additional to declaratory and injunctive relief -- does not prevent certification under Rule 23(b)(2).  *See, e.g. Pender v. Bank of Am. Corp.,* 269 F.R.D. 589, 599

(W.D.N.C.2010) ("Rule 23(b)(2) can still be satisfied even where a declaratory judgment is 'merely a prelude to a request for [monetary relief],'" *quoting Berger v. Xerox Corp. Ret. Income Guarantee Plan,* 338 F.3d 755, 763 (7th Cir.2003) and holding that certification was appropriate where declaratory relief was sought in addition to monetary relief).

The Fifth Circuit clarified the inquiry in *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 413-15 (5th Cir. 1998), wherein it explained the standard for certification under Rule 23(b)(2) where monetary relief is sought in addition to injunctive/declaratory relief, as follows:

> We know, then, that monetary relief "predominates" under Rule 23(b)(2) when its presence in the litigation suggests that the procedural safeguards of notice and opt-out are necessary, that is, when the monetary relief being sought is less of a group remedy and instead depends more on the varying circumstances and merits of each potential class member's case.
>
> [ . . . ]
>
> Consistent with this analysis, we reach the following holding: monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief. *Accord Williams v. Owens–Illinois, Inc.,* 665 F.2d 918, 928–29 (9th Cir.), *cert. denied,* 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982). By incidental, we mean damages that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief. *See* Fed.R.Civ.P. 23(b)(2) (referring only to relief appropriate "with respect to the class as a whole"). Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established. *See Manual for Complex Litigation, supra,* at 348 (citing

41

*Simer v. Rios,* 661 F.2d 655 (7th Cir.1981)); *see also, e.g., Arnold v. United Artists Theatre Circuit, Inc.,* 158 F.R.D. 439 (N.D.Cal.1994) (defendant's liability entitled class to a statutorily mandated damage award). That is, the recovery of incidental damages should typically be concomitant with, not merely consequential to, class-wide injunctive or declaratory relief. Moreover, such damages should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances. Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations. Thus, incidental damages will, by definition, be more in the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class actions.

Our holding in this respect is not inconsistent with our cases permitting back pay under Title VII in (b)(2) class actions. In *Pettway,* for example, we noted that Rule 23(b)(2), by its own terms, does not preclude all claims for monetary relief. *See* 494 F.2d at 257. We construed (b)(2) to permit monetary relief when it was an equitable remedy, and the defendant's conduct made equitable remedies appropriate. *See id.* Back pay, of course, had long been recognized as an equitable remedy under Title VII. *See Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1125 (5th Cir.1969) ("[a] demand for back pay is not in the nature of damages, but rather is an integral part of the statutory equitable remedy").

Thus, where plaintiffs challenge their putative employer's practice of classifying them as independent contractors on the basis that the employer acted on grounds generally applicable to the class, certification under both Rules 23(b)(3) and 23(b)(2) is permissible even though the declaratory relief claim is a predicate to the damage claims, so long as the following relief would be the direct,

42

anticipated consequence of the declaration. *In re FedEx Ground Package Sys., Inc., Employment Practices Litig.*, 283 F.R.D. 427, 463 (N.D. Ind. 2012); *see also Pender v. Bank of Am. Corp.*, 269 F.R.D. 589, 599 (W.D.N.C. 2010) (holding certification under Rule 23(b)(2) is appropriate even where a declaratory judgment may be a prelude to a request for monetary relief); *See also, Rehberg v. Flowers Baking Co. of Jamestown, LLC,* 3:12-CV-00596-MOC, 2015 WL 1346125, at *14 (W.D.N.C. Mar. 24, 2015) (Class of Flowers' distributors certified under Rule 23(b)(2) and Rule 23(b)(3)).

In the instant case, the backpay that is requested by the plaintiffs are damages that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief.  These damages are those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established.  Therefore, the undersigned finds that the monetary relief requested by the plaintiff does not predominate and is merely incidental to the requested injunctive or declaratory relief.  Thus, the requirements for certification under Rule 23(b)(2) are also met.

### c.    Conclusion as to Rule 23 Class Certification

As explained in the above analysis, the undersigned finds that plaintiffs have

met their burden of showing that all requirements of Rule 23(a) are met and that class certification is appropriate pursuant to both Rule 23(b)(2) and Rule 23(b)(3). The undersigned therefore recommends that the Motion for Class Certification be GRANTED.[27]

## B.     Motion for Decertification

Section 207 of the FLSA requires employers to pay all covered employees at least one and a half times their regular rate of pay for hours worked in excess of forty hours per week. 29 U.S.C. §207(a)(1). The FLSA provides a right of action for employees against employers who violate this requirement, 29 U.S.C. §216. *See Vanzzini v. Action Meat Distributors, Inc.*, 995 F. Supp. 2d 703, 713 (S.D. Tex. 2014).   An employer that violates section 207 may be held liable for the unpaid overtime hours and "an additional equal amount as liquidated damages."   *Id.* at §216(b).   An employer must compensate employees for all work it suffers or permits.   29 U.S.C. §203(g). Management has a duty to "exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them." 29 C.F.R. §785.13.

---

[27] The Court notes, however, that "[a]n order that grants or denies certification may be altered or amended before final judgment." Fed.R.Civ. P. 23(c)(1)(C). *See also Gen. Tel.Co.of Sw. v. Falcon,* 457 U.S. 147 (1982)("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation.")

Section 216 of the FLSA provides that a person may maintain an action on "behalf of himself . . . and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. §216(b). "A collective action allows ... plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged ... activity." *Hoffmann–LaRoche v. Sperling*, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989); *see also Prickett v. DeKalb County*, 349 F.3d 1294, 1297 (11th Cir.2003) ("Congress' purpose in authorizing §216(b) class actions was to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer").

The FLSA does not define what it means for employees to be "similarly situated," nor has the Fifth Circuit defined the term. The Fifth Circuit has, however, upheld the use of a two-step ad hoc method for making this determination. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995) (refusing to specifically endorse a particular methodology for making a class certification decision under Section 216, but affirming the district court's

decertification decision based on the use of the two-part test); *see also Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10 Cir.2001); *Hipp v. Liberty* th *Nat. Life. Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir.2001).

This Court already allowed notice to be sent to potential class members under the "fairly lenient" step one standard. *See Mooney*, 54 F.3d at 1214. After discovery is largely completed, the Court at step two "makes a factual determination on the 'similarly situated' standard." *Id.* Courts use two methods to decide whether to authorize notice to similarly situated employees advising them of their opt-in rights: either the two-step *Lusardi* approach, or the Rule 23 class-action-based *Shushan* approach. *See Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987); *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D. Colo. 1990). Although the Fifth Circuit has declined to specifically adopt either test, both the Fifth Circuit and the Supreme Court have made statements implying that a Rule 23-type analysis is incompatible with FLSA collective actions. *See Austin v. Onward, LLC*, 161 F. Supp. 3d 457, 461 (S.D. Tex. 2015), *citing Genesis Healthcare Corp. v. Symczyk*, 133 S.Ct. 1523, 1529, 185 L.Ed.2d 636 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA"); *Donovan v. Univ. of Tex. at El Paso*, 643 F.2d 1201, 1206 (5th Cir.1981) ("The FLSA procedure, in effect, constitutes a congressionally developed

alternative to the F.R. Civ. P. 23 procedures"). Moreover, the majority of courts within this circuit have adopted the *Lusardi* two-stage approach. *See, e.g., Vanzzini v. Action Meat Distribs., Inc.*, 995 F.Supp.2d 703, 719 (S.D. Tex. 2014) (applying *Lusardi*); *Mateos v. Select Energy Servs.*, LLC, 977 F.Supp.2d 640, 643 (W.D. Tex. 2013) (accord); *Tice v. AOC Senior Home Health Corp.*, 826 F.Supp.2d 990, 994 (E.D. Tex. 2011) (accord); *Marshall v. Eyemasters of Tex., Ltd.*, 272 F.R.D. 447, 449 (N.D. Tex. 2011) (accord).

Courts have repeatedly stressed that plaintiffs must only be similarly – not identically – situated to proceed collectively. *See, e.g., Hipp*, 252 F.3d at 1217; Reyes, 2007 WL 101808, at *1; *Hill v. Muscogee County School Dist.*, 2005 WL 3526669, at *2 (M.D. Ga. 2005); *Basco v. Wal–Mart Stores, Inc.*, 2004 WL 1497709, at *5 (E.D. La. 2004); *Frank v. Capital Cities Communications, Inc.*, 1983 WL 643, at *2 (S.D.N.Y. Oct. 11, 1983). The decision whether to decertify a collective action is within the district court's discretion. *See, e.g., Mooney*, 54 F.3d at 1213 ("[T]he district court's application of the [legal] standard must be reviewed for abuse of discretion"); *Pendlebury v. Starbucks Coffee Co.*, 518 F.Supp.2d 1345, 1348–49 (S.D. Fla. 2007). At step two, courts generally consider the following factors when determining whether a lawsuit should proceed collectively: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the

47

various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *See, e.g., Mooney*, 54 F.3d at 1213 n. 7, 1215–16, citing *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 352 (D.N.J.1987)); *Thiessen*, 267 F.3d at 1105; *Anderson.*, 488 F.3d at 953; *Wilks v. Pep Boys*, 2006 WL 2821700, at *3 (M.D. Tenn. Sept. 26, 2006); *Basco*, 2004 WL 1497709, at *4.

### 1.    Factual and employment settings

In order to satisfy the first factor, courts have held that putative class members must show they were affected by a common policy, plan, pattern, or practice in order to proceed collectively under Section 216(b) of the FLSA. In *Aguirre v. SBC Communications, Inc.*, the district court stated that, at least at the first step, "[a] court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." 2006 WL 964554, at *5 (S.D. Tex. 2006), *citing England v. New Century Fin. Corp.*, 370 F.Supp.2d 504, 507 (M.D. La.2005). Indeed, courts have repeatedly stressed that "similarly situated does not mean identically situated." *Crain v. Helmerich & Payne Int'l Drilling Co.*, 1992 WL 91946, at *2 (E.D. La. Apr. 16, 1992); *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 535–36 (S.D. Tex. 2008). In *Falcon*, the court stated that "[a]t a

minimum, there must be "meaningful 'identifiable facts or legal nexus [that] bind the claims,' so that hearing the cases together furthers the purposes of section §216, is fair to both parties, and does not result in an unmanageable trial." 580 F. Supp. 2d at 535–36. Slight differences in job duties or functions do not run afoul of the similarly situated requirement." *Tolentino v. C&J Spec-Rent Serv., Inc.*, 716 F.Supp.2d 642, 652 (S. D. Tex. 2010).

Here, the plaintiff distributors signed the Distributor Agreement, which is essentially the same agreement for all distributors classifying them as independent contractors. The distributors all have substantially similar job duties, and all are subject to the same common classification by defendants as independent contractors, and thus, not entitled to overtime pay.[28]   In its motion for certification, the plaintiffs set forth the following similarities that they argue exist for each distributor who signs a Distributor Agreement:

> All Distributors work for Defendants pursuant to a substantially similar "Distributor Agreement" that outlines compensation and job performance expectations;

[28] Numerous Distributor Agreements were included in the record and have been examined by the undersigned.  All of the Distributor Agreements are essentially identical as to substance, with the only variances being in the style and format of the Agreements.  All of the Distributor Agreements are identical in classifying the distributors as independent contractors.  *See, e.g.,* Distributor Agreement of C. Meche, Doc. 105, Exh. 3, at pp. 273-74; Distributor Agreement of K. Rabeaux, Doc. 105, Exh. 4, at p. 293; and Distributor Agreement of A. Richard, Doc. 105, Exh. 7, at p. 8.

In addition to the Distributor Agreements cited here, plaintiffs have provided numerous additional Distributor Agreements in their exhibits; many of these Agreements are cited in Doc. 383, fn. 39.

All Distributors purchase from Defendants the right to sell and distribute certain products brands to customers within a specific geographic territory defined by the Defendants;

Defendants classifies all Distributors as independent contractors and "statutory employees" pursuant to Section 3121(d)(3) of the Internal Revenue Code;

Defendants pay a portion of the Social Security tax and Medicare tax owed by each Distributor and Defendants issue W-2 forms each year to each Distributor;

The Distributor Agreements contain a covenant not to compete directed to the Distributor;

All Distributors share the same primary job responsibility of servicing Defendants' customers in accordance with "good industry practice" as defined by the Defendants in the Distributor Agreement;

Defendants negotiate the price of the products directly with customers and sets the prices Distributors can charge for products;

Defendants pay Distributors a percentage rate based upon the amount of bakery products that Defendants' customers purchase and sell;

Distributors are required to cover all costs associated with the delivery of the bakery products to customers, including delivery vehicles, gas and some equipment;

Defendants subsidize the Distributor's costs to have a Flowers employee operate his or her route while the distributor takes a vacation or personal time;

The Distributor Agreement provides for an indefinite period of employment;

All Distributors work in excess of 40 hours per week;

No Distributor has received any premium overtime pay for hours worked in excess of 40 hours per week;

The main job duty of a Distributor is to deliver Defendants' products to Defendants customers;

Distributors arrive at Defendants' warehouses early in the morning to load their delivery trucks with Flowers Foods products;
After loading their trucks, Distributors drive to Defendants' various customers on a predetermined route and stock customer's shelves with the product and remove stale product from the store;

Plaintiffs repeat this process every day, five days a week;

On the other two days of the week, Distributors make pull up calls to stores to restock and organize shelves;

Distributors may also be called upon to perform call backs to deliver fresh products to stores outside the usual delivery period;

Distributors are required to use Defendants' hand held computer and utilize Defendants' computer system, which Defendants provide;

The hand held computer system tells Distributors the price they must charge for the products, the quantity to deliver, whether the Distributor makes his required stops, historical sales and similar information;

Defendants monitor Distributors using the hand held computer network;

The information is maintained in a central computer system controlled by Defendants;

Distributors also use the hand held system to place orders for products from Defendants;

Defendants reserve the right to change the orders placed by Distributors without their consent and the Defendants have historically made changes to the orders placed by Distributors without their consent;

All Distributors pay an administrative fee and warehouse fee to Defendants which is deducted from their weekly settlement checks;

Defendants negotiate the price of the products directly with the customers and set the prices Distributors can charge for products;

Distributors must adhere to all promotions and feature pricing set by Defendants with respect to all major and chain accounts located within its territory;

Defendants negotiate directly with customers to determine which products will be sold, how much shelf space is allocated to each product, sales or promotional prices and terms of payment;

Defendants hold all Distributors to the same performance standards and control compliance by the issuance of 10 day letters and other threats for non-compliance;

All Distributors are required to follow the same protocol when delivering to Defendants' customers;

Defendants retain the right to terminate a Distributor's contract if he or she does not satisfy Defendants' performance expectations;

Flowers requires mandatory compliance with all promotions and feature pricing with respect to major and chain accounts, without consulting with distributors beforehand;

Distributors are required to service all outlets and stops in-territory, whether the distributor wants to or not, and whether the stop is profitable or not;

If a distributor desires to use advertising materials not supplied by Flowers, they must first obtain Flowers' express approval and permission;

Distributors must first obtain the prior written approval of Flowers before selling any rights in their respective territory(ies);

Flowers retains the right of first refusal to repurchase the rights in a territory. This effectively eliminates the Distributors' ability to determine the amount of profit they can make upon the sale of "his/her" business, impacting a distributors' ability to sell their territory to a third-party purchaser;

Distributors are prohibited from carrying or distributing any products that Flowers deems competitive;

Distributors can distribute non-competitive products, but Flowers ultimately has discretion on what is deemed competitive or not;

Flowers imposes restrictions on the sale and resale of stale products that distributors have purchased through them;

The Distribution Agreement includes a Covenant Not to Compete, strongly evidencing an employer/employee relationship between Flowers and its distributors;

The undersigned has painstakingly scoured the record for evidence that these similarities do not, in fact, exist, but was unable to find any.  Importantly, the undersigned does not decide today whether the foregoing facts prove the claimant's claims; rather, the inquiry today is whether there are sufficiently similar factual scenarios among the class members that favor certifying the class for trial purposes.  Additionally, despite being classified as independent contractors in their Distributor Agreements, Flowers classifies all distributors as "statutory employees" pursuant to Section 3121(d)(3) of the Internal Revenue Code and pays FICA taxes on behalf of each distributor. This common classification for tax purposes demonstrates the uniform policy or pattern of classifying all distributors in the

same way to benefit Flowers.  As has been set forth herein, it is clear that the manner in which all distributors were to perform their jobs was uniform with respect to all distributors.  Flowers argues that distributors service their distributorships in different ways, and that these differences make certification inappropriate.  Flowers points to the fact that some operate their businesses through independent corporations while others don't; some own multiple territories and don't personally service them; some hire others, who perform the work for them; some sell non-Flowers products while others don't; some operate multiple outside businesses as a way to increase their overall profits while others don't.  However, while it is clear that distributors are given some leeway as the manner in which they service their distributorships, all are expected to follow the same guidelines as it pertains to Flowers products, whether they do that work themselves or contract with others to do it for them.  Flowers controls the distributorship arrangements, from customers to be serviced, to product placement, to the freshness of products on the shelf.  Distributor-wide penalties apply to all who do not comply.

Based on the evidence adduced through discovery, which this Court has reviewed in exhaustive detail, the undersigned finds the plaintiffs have provided sufficient evidence of a company-wide policy which may violate the FLSA.  *See*

*Nerland v. Caribou Coffee Co.*, 564 F.Supp.2d 1010, 1020 (D.Minn. 2007) (holding that evidence of a common policy of uniformly classifying employees as exempt and declining to pay overtime compensation where plaintiffs indicated they worked in excess of 40 hours per week "supports a finding of sufficient commonality between and among the plaintiffs to support collective adjudication of their misclassification claims.").

The crux of the issue before the undersigned on the issue of decertification is whether common evidence exists to allow the court to assess whether all plaintiffs are independent contractors, or whether the evidence as to each distributor is too widely varying, which would require individualized inquiries for each plaintiff. To determine whether a worker is an employee or an independent contractor under the FLSA, "a court considers the 'economic realities' of the relationship between the worker and the putative employer." *Christianson v. Newpark Drilling Fluids, LLC*, 2015 WL 1268259 (S.D.Tex. Mar. 18, 2015), *citing Thibault v. Bellsouth Telecomms., Inc.*, 612 F.3d 843, 848 (5 Cir. 2010). For purposes of this inquiry, the court will consider five factors: "(1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in

performing the job; and (5) the permanency of the relationship. *Id. Christianson*, 2015 WL 1268259, at *3, *citing Thibault*, 612 F.3d at 848. No single factor is determinative." *Id.* These factors are non-exhaustive and are, instead, tools "used to gauge the economic dependence of the alleged employee," and they "must be applied with this ultimate concept in mind." *Id.* "The determination of whether an individual is an employee or independent contractor is highly dependent on the particular situation presented."

The Flowers defendants contend that decertification is appropriate because significant material differences exist between the distributors on virtually all of the factors under the economic realities test and that such differences require individualized inquiries. Specifically, defendants argue that the record shows material differences exist between plaintiffs as to: (1) the level of control they were subject to by defendants; (2) the exercise of entrepreneurial business opportunities; (3) the level of investment and practice of hiring helpers; (4) degree of skill; and (5) duration of relationship with defendants. As in the case of *Rehberg v. Flowers*, the defendants in the instant matter argue that the degree to which various distributors serviced national accounts (the accounts that are subject to greater control by defendants) varies so widely as to each distributor that the court would be required to undergo individualized inquiries for each one.

After a review of the record before the court, the undersigned finds that significant common evidence exists here to enable the court to determine, on a collective basis, whether all distributors are employees or independent contractors. Though defendants do indeed point to factual differences between the distributors, "[a] collective action does not necessitate that there be no differences among class members, nor does it prohibit individualized inquiry in connection with fashioning the specific relief or damages to be awarded to each class member," but rather, "[t]he court should determine whether there is a meaningful nexus that binds Plaintiffs' claims together and that the similarities in their claims outweigh their differences." *Butler v. Direct SAT USA, LLC*, 2014 WL 4684337, at *7 (D.Md. Sept.18, 2014) (internal quotations and citations omitted). Here, the court finds that the similarities between the plaintiffs' claims far outweigh their differences. The undersigned adopts the rationale of the court in *Rehberg* on this point, which explained:

> As explained in more detail in the Rule 23 commonality analysis, the court finds that sufficient common evidence exists as to every factor that the court must assess under the economic realities test. Defendants exaggerate isolated differences among the distributors and ignore the larger picture of the issue at hand—that all distributors are subject to [d]efendants' uniform policies. Given that [d]efendants have a well-established company policy of classifying all distributors as independent contractors, the court is less concerned by the variations in Plaintiffs' employment circumstances. The court also notes that [d]efendants, who now argue that determining independent contractor status requires fact-intensive individualized inquiries, apparently had

no difficulty in classifying all distributors as independent contractors when asking them to sign Distributor Agreements. See *Nerland v. Caribou Coffee Co.*, 564 F.Supp.2d 1010, 1023 (D.Minn.2007) (finding that employer "Caribou has an internal company policy and practice of viewing its store managers as similarly situated for the purposes of making the FLSA exemption determination, and that this policy is applied uniformly to all Caribou store managers," thus making it "disingenuous for Caribou, on one hand, to collectively and generally decide that all store managers are exempt from overtime compensation without any individualized inquiry, while on the other hand, claiming the plaintiffs cannot proceed collectively to challenge the exemption."). (some internal citations omitted).

Based on the foregoing, the undersigned concludes that common evidence of plaintiff's factual and employment settings militate in favor of a finding that all distributors are "similarly situated" for the purposes of the FLSA.

### 2. Individualized defenses

"The individualized defenses factor assesses whether potential defenses pertain to the plaintiff class or whether the potential defenses require proof of individualized facts at trial." *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D.Md.2007). With regard to this factor, courts are concerned with whether representative evidence can be used to make class-wide determinations and the extent to which resolution "requires such individualized inquiries that the case cannot proceed collectively." *Vanzzini v. Action Meat Distributors, Inc.*, 995 F. Supp. 2d 703, 721 (S.D. Tex. 2014), *citing Roussell v. Brinker Int'l, Inc.*, 2008 WL 2714079, at *21 (S.D.Tex. July 9, 2008), *citing Johnson v. Big Lots Stores,*

*Inc.*, 561 F.Supp.2d 567, 585–87 (E.D.La.2008). However, "[j]ust because the inquiry [under the asserted defense] is fact-intensive does not preclude a collective action where plaintiffs share common job traits." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1263 (11ᵗʰ Cir.2008). The presence of defenses that require individualized inquiries does not necessarily require decertification if common issues and facts predominate, and the court finds that other factors indicate that plaintiffs are similarly situated and proceeding as a collective action would be appropriate. *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1107 (10 Cir.2001) (finding that the existence of highly individualized defenses did not outweigh the benefits of proceeding as a class action).

In the instant matter, the undersigned is not convinced that defendants' defenses are so individualized that collective adjudication of this claim is unworkable. Defendants raise a number of facts that they argue raise defenses that are not common to all plaintiffs, and essentially argue that individual "mini-trials" will be needed to determine whether plaintiffs can prove their claims under the FLSA. The undersigned agrees with the plaintiffs, however, that any differences in particular defenses can be adequately raised at a trial involving representative testimony. Courts have allowed the use of representative testimony in cases involving allegations of unpaid overtime. *See, e.g., Falcon v. Starbucks Corp.*, 580

F. Supp. 2d 528, 540 (S.D. Tex. 2008), *citing Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946); *Schultz v. Capital Intern. Sec., Inc.*, 466 F.3d 298, 310 (4th Cir.2006); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 88 (2nd Cir.2003) ("[N]ot all employees need testify in order to prove FLSA violations or recoup back-wages"); *Reich v. Gateway Press*, 13 F.3d 685, 701–02 (3rd Cir.1994) ("Courts commonly allow representative employees to prove violations with respect to all employees."); *Brennan v. General Motors Acceptance Corp.*, 482 F.2d 825, 829 (5th Cir.1973) (allowing representative testimony in a case involving unpaid overtime); *Thiebes v. Wal–Mart Stores, Inc.*, 2004 WL 1688544, at *1 (D.Or. July 26, 2004); *National Electro–Coatings, Inc. v. Brock*, 1988 WL 125784, at *8 (N.D.Ohio July 13, 1988) ("Courts have consistently allowed, or even required, a small number of employees to testify to establish a pattern of violations for a larger number of workers.").

The undersigned similarly finds that defendants will be allowed to raise all of their asserted defenses by examining representative plaintiffs and presenting their own evidence at trial.

With respect to its decertification motion, Flowers relies heavily on *Clay v. New Tech Global Ventures*, 2019 WL 1028532 (W.D. La. Mar. 4, 2019). *Clay* is significantly factually distinguishable from the instant case, however, in that *Clay*

involved only three named plaintiffs and six opt-ins for a total of nine members of the FLSA collective action, a factor which almost certainly militated in favor of decertification.   With respect to the issue of class size, the undersigned considered a similar argument in a case involving eight claimants and denied a motion to decertify the FLSA class, noting:

> The Court fails to understand how Defendant's argument would lower the Plaintiffs' costs or simplify the proceedings. This case was filed almost four years ago, discovery is virtually complete on the eight remaining plaintiffs and to decertify the class at this time would require refiling, joinder or consolidation, and additional pleadings. Contrary to the reasoning under § 216 of the FLSA, decertifying this case would instead potentially require the parties and the Court to have multiple trials dealing with the same issues. 'Congress' purpose in authorizing§ 216(b)class actions was to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer.

*Moresi v. Resource Energy Ventures*, 2019 WL 2565634 (W.D. La. June 18, 2019).  In the instant case, the undersigned must consider the claims of the *98 members* of this FLSA collective action, as opposed to the eight claimants in *Moresi* and the nine claimants in *Clay*.   Therefore, the *Clay* decision, while instructive, is not binding on this Court, and, given the disparate factual scenarios, is not controlling when considering the issue of decertification.

Considering the foregoing, the undersigned does not find that this factor weighs in favor of decertification.

### 3.  Fairness and Procedural Considerations

After reviewing the entirety of the record and the briefs and arguments of the parties, the undersigned finds that fairness considerations militate in favor of allowing this lawsuit to proceed collectively. Decertifying this class would be contrary to both of the purposes of Section 216 of the FLSA. First, judicial economy favors collective adjudication of the plaintiffs' claims, and it would not be in the interest of judicial economy to require the claims to be adjudicated in individual trials. Furthermore, the court echos the district court in *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 541 (S.D. Tex. 2008), which stated:

> [T]he FLSA is a remedial statute, *see, e.g., Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 329 (5th Cir.1993) (recognizing FLSA's remedial purposes); *Prickett*, 349 F.3d at 1296 ("FLSA is a remedial statute that has been construed liberally to apply to the furthest reaches consistent with congressional direction." (internal citations removed)), and the Supreme Court has acknowledged that Congress intended to give "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources," *Hoffmann*, 493 U.S. at 170, 110 S.Ct. 482. As the district court in *Bradford v. Bed Bath and Beyond* noted, plaintiffs can "hardly be expected to pursue these small claims individually, so there is little likelihood that their rights will be vindicated in the absence of a collective action." 184   F.Supp.2d 1342, 1351 (N.D.Ga.2002); *see also Pendlebury*, 518 F.Supp.2d at 1363
> (noting that "Defendant's suggestion that few Plaintiffs would re-file is the precise reason Congress authorized class action treatment for these types of cases."). Although the remedial nature of the FLSA, standing alone, does not justify allowing a case to proceed collectively, it does at least suggest that a close call as to whether Plaintiffs are similarly situated should be resolved in favor of certification.

Considering the remedial nature of the FLSA and the inherent fairness of allowing distributors who have been similarly classified by Flowers as a group, the undersigned concludes that fairness considerations support a decision to not decertify this action.

### III.   CONCLUSION

Considering the foregoing and based on an exhaustive review of the record and the extensive briefing of the parties, the undersigned recommends that the Motion for Class Certification [Doc. 299] be GRANTED and the Motion for Decertification [Doc. 310] be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual

findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5 th Cir.1996).

      Signed at Lafayette, Louisiana, this 6th day of November, 2020.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**